# Tucker Ellis | LLP

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

August 27, 2018

DIRECT DIAL 213.430.3375 | ronie.schmelz@tuckerellis.com

**VIA ECF**

The Honorable Henry Pitman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Parker v. United Industries Corp.*, Case No. 17-cv-05353
    Discovery Dispute Letter re: Document Production Deficiencies

Dear Magistrate Judge Pitman:

  This firm represents Defendant United Industries Corporation in the above-captioned matter and we write in response to Plaintiff's August 10, 2018 letter requesting a pre-motion conference to address alleged deficiencies in Defendant's production of documents ("the Letter") (Doc. 26). The issues presented in the Letter are set for hearing on September 27, 2018. Plaintiff's Letter presents a one-sided characterization of the parties' discussion of the issues raised therein. To provide greater context, the parties' correspondence relating to these issues are attached hereto as Exhibits A and B and addressed herein.

  The documents Plaintiff challenges boil down to a very small percentage of the nearly 40,000 pages produced by Defendant. Of those, the vast majority are entirely irrelevant. We believe the parties can resolve the other issues raised by Plaintiff. Thus, for the reasons discussed below, Defendant respectfully submits that the Court should decline to compel the relief Plaintiff seeks.

  **1. Plaintiff's Request to Compel Production of Withheld Product Testing**

  Plaintiff agrees the "gravamen of this case" concerns his allegations that Cutter Natural Insect Repellent "is ineffective to repel mosquitos and worthless." Defendant has produced documents relevant to efficacy testing. Now, however, Plaintiff argues that he is entitled to *all* testing-related documents without limit, even if the testing has nothing to do with efficacy of Cutter Natural Insect Repellent. This last-minute attempt to expand Plaintiff's claims beyond the efficacy of Cutter Natural Insect Repellent through discovery is contrary to the federal rules. *See Shott v. Rush Univ. Med. Ctr.*, No. 11 C 50252, 2015 WL 138098, at *5 (N.D. Ill. Jan. 7, 2015) ("The primary purpose of the discovery rules in the Federal Rules of Civil Procedure is to avoid litigation by surprise.") (citing *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947)).

  Defendant has always objected to Plaintiff's Request for Production ("RFP") No. 5 relating to product testing as "overly broad, unduly burdensome, and seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Notwithstanding, Defendant agreed to provide and has produced responsive documents, which are those that relate to efficacy testing pertaining to Cutter Natural Insect Repellent. Plaintiff never made a showing as to why testing documents unrelated to efficacy are relevant to his claims or calculated to lead to the

# Tucker
# Ellis | LLP

The Honorable Henry Pitman
August 27, 2018
Page 2

discovery of admissible evidence. The court's discussion in *Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, No. 02Civ.2605(AGS), 2002 WL 1808419 (S.D.N.Y. Aug. 7, 2002) is on point:

> Orion's Document Requests No. 39 and 40 seek all documents that refer to any analysis or test concerning any of the Asserted Patents or any product that Funai alleges to infringe any claim of any Asserted Patent. . . .
>
> Both of these requests are overly broad as written. ***To the extent that they seek documents pertaining to testing and analysis of products that are not related to accused Orion products or to the extent that they seek documents pertaining to testing of accused products regarding aspects not covered by the claims, they are overbroad.*** Since Orion has failed to show the relevance of this information, Orion's motion to compel is denied and Funai need not produce more than it has agreed to.

*Id.* at *7 (emphasis added).

On this same basis, this Court should deny any request to order Defendant to compel any documents on the following categories:

- <u>2017 Efficacy Testing</u> – As Defendant explained in its August 1, 2018 letter to Plaintiff's counsel (Exhibit B), this testing refers to *nonresponsive products*.

- <u>Brazil Repellency Testing</u> – The documents Plaintiff references do not involve efficacy testing. In fact, the word "efficacy" does not even appear in the document Plaintiff cites.

- <u>Unspecified 2013 Testing</u> – The e-mail Plaintiff cites does not state when or even *if* this testing even occurred. *See MGA Entertainment, Inc. v. National Prods., Ltd.*, No. CV 10-07083 JAK (SSx), 2011 WL 4550287, at *1-2 (C.D. Cal. Oct. 3, 20133) ("A court cannot order a party to produce documents that do not exist."). The Parties' agreed-upon search terms did not return any hits related to 2013 efficacy testing.

- <u>Eurofins Testing</u> – Defendant produced responsive Eurofins testing documents and, although not required to do so, provided Plaintiff with specific Bates numbers for these documents.

- <u>Unspecified 2011 Efficacy Testing</u> – Defendant produced 2011 efficacy testing documents and, although not required to do so, provided Plaintiff with specific Bates numbers for these documents.

In short, Plaintiff already received documents responsive to his requests that relate to his claims. This Court should not authorize Plaintiff to engage in a limitless fishing expedition into other products and issues not at issue in his Complaint.

**Tucker**
**Ellis** | LLP

The Honorable Henry Pitman
August 27, 2018
Page 3

2.   **Plaintiff's Request to Compel Production of Missing Sales Data**

As Defendant's counsel explained in its August 1, 2018 letter to Plaintiff's counsel (Exhibit B), Defendant produced documents reflecting nationwide sales, including third-party data (Nielsen), data received from retailers, and some 600 electronically stored information ("ESI") documents.

During the e-discovery process and pursuant to the parties' Stipulated ESI and Hard Copy Protocol ("the ESI Protocol") (Doc. 16), the parties agreed on search terms pursuant to Section B(5) of the ESI Protocol. Defendant produced documents that responded to these search terms without restricting, redacting, or withholding any sales data related to Cutter Natural Insect Repellent, from July 2013 through 2017, the relevant time period in this action. Defendant has discharged its responsibilities under the ESI Protocol, which also provides that "[a] party's failure to meet and confer or to make a timely request for different or additional searches as described in this paragraph shall waive that party's right to object to the sufficiency of the searches actually conducted." At no time, including in the four months since the parties agreed on the ESI Protocol or the two months since Defendant's production, did Plaintiff ever request that Defendant undertake any alternative search, nor did Plaintiff ever suggest the parties' agreed-upon search terms were insufficient or otherwise inadequate. Any such request at this late juncture is untimely.

Notwithstanding, Defendant's counsel offered during the parties' August 8, 2018 meet-and-confer teleconference to look into whether additional sales data is available if Plaintiff identifies with specificity the aspects of the data sets he believes are "incomplete." Plaintiff has not provided such information and Defendant is in no position to *guess* what data Plaintiff believes is missing.

3.   **Plaintiff's Request to Compel Production of Improperly Redacted Documents**

Defendant has produced nearly 40,000 pages of documents. The vast majority of the documents have no redactions. Plaintiff disputes some 400 documents that feature some redactions, which largely fall into two camps:

- Documents that were redacted in part because they feature a small amount of information responsive to Cutter Natural Insect Repellent, but many of which contain large amounts of commercially sensitive, proprietary, and forward-looking information regarding Defendant's other products; and

- Documents that were redacted in whole because they are *entirely* unresponsive, but were produced as "family members" to a responsive, non-privileged document.

Redaction of the first category is appropriate because the documents at issue—many of them large spreadsheets containing information about Defendant's entire line of products, which cross multiple different industries—contain a fractional amount of relevant information compared to the overwhelming volume of commercially sensitive but *irrelevant* content. In some cases, these spreadsheets include hundreds of pages about Defendant's other products but only a few cells of information regarding Cutter Natural Insect Repellent. Redaction of this irrelevant information is consistent with the approach adopted by countless courts. *See, e.g., Bear Creek Cranberry Co. v. Cliffstar Corp.*, No. 10-CV-00770, 2011 WL 2882078, at *3 (W.D.N.Y. July 15, 2011) ("[C]ourts have found redaction appropriate where the information redacted was not relevant to the issues in the case"); *Schiller v. City of New York*, Nos. 04Civ.7922, 04Civ.7921, 05Civ.8453, 2006 WL 3592547,

CHICAGO   CLEVELAND   COLUMBUS   HOUSTON   LOS ANGELES   SAN FRANCISCO   ST. LOUIS   |   tuckerellis.com

**Tucker**
**Ellis** | LLP

at *7 (denying motion to compel production of unredacted minutes because "[t]he redacted information . . . is not relevant to any claim or defense in this litigation.").

Redaction of the second category is appropriate because these documents have nothing to do with any claim or defense in the litigation. It is the idiosyncratic nature of the ESI Protocol agreed to by the parties, which maintains the "parent-child relationship" between emails and their attachments without regard to relevancy, that has resulted in the production of otherwise irrelevant documents. *See* ESI Protocol, Doc. 16., Attachment A, ¶ A.7 ("Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved."). If one member of the document "family" is relevant, then the entire family of documents was produced. So if an e-mail contained a series of attachments related to a variety of products—but only one of those pertained to Cutter Natural Insect Repellent—then the entire family was produced. In such cases, Defendant redacted irrelevant other-product documents that contain commercially sensitive or proprietary information. The parties' agreement to produce in "families" does not convert a completely irrelevant document into one that must be produced in un-redacted form in this action.

Defendants will have a complete file of the redacted documents available during the September 27, 2018 conference for this Court to review *in camera* if it so desires.

4.   **Plaintiff's Request to Compel Documents Improperly Withheld on Basis of Privilege**

In its August 1, 2018 letter, Defendant addressed Plaintiff's challenge to two categories of documents listed on the Privilege Log, i.e., attachments to email correspondence withheld under the attorney work-product privilege, and third-party communications withheld on the basis of attorney-client privilege. *See* Exhibit B. As explained above, the parties agreed to maintain the "family" relationship between e-mails and attachments. During a January 18, 2018 meet-and-confer teleconference, the parties agreed to maintain this relationship for privileged communications as well. Consequently, some entries on the Privilege Log—including the ones Plaintiff challenges—refer to documents that were withheld because they are family members of privileged communications.

As noted in its August 1, 2018, the vast majority of non-privileged "family" documents withheld—if not all of the documents that Plaintiff identifies—were produced elsewhere in the Defendant's production; a fact Plaintiff ignores. The Consumer Reports' article and Stacy D. Rodriguez article, both of which the Letter seeks to compel, are, moreover, cited in Plaintiff's Complaint and publicly available. There is no reasonable basis to compel their further production.

Nor is there any basis to compel the production of the third-party communications Plaintiff challenges. Defendant withheld these documents too because they are "family" attachments to privileged communications, not because Defendant claims these documents are independently privileged. If responsive, they were produced elsewhere. Some of these challenged communications even originated from Plaintiff's counsel—as they acknowledge in the July 23, 2018 letter attached as Exhibit A—and so Plaintiff's counsel is already in possession of those emails.

Many of the documents Plaintiff seeks to compel are irrelevant to this action. This too is a product of the parties' agreement to maintain the "family" relationship between emails and attachments. If such "family-member" documents were irrelevant to the issues in this litigation, Defendant did not, produce them. If the Court has any concerns about Defendant's withholding of

CHICAGO   CLEVELAND   COLUMBUS   HOUSTON   LOS ANGELES   SAN FRANCISCO   ST. LOUIS   |   tuckerellis.com

**Tucker Ellis | LLP**

The Honorable Henry Pitman
August 27, 2018
Page 5

irrelevant documents, Defendant respectfully proposes the Court review these irrelevant documents in camera to confirm there is no basis for their production.

Nevertheless, following the parties' meet-and-confer call on August 8, 2018, Defendants agreed to produce—and have now produced—those documents that were classified as "non-privileged" in the Privilege Log but were initially withheld as "family members" of privileged communications.

For all of the foregoing reasons, Defendant respectfully requests the Court deny the relief sought in Plaintiff's Letter.

Respectfully Submitted,

*/s/ Ronie M. Schmelz*
Ronie M. Schmelz
*Counsel for United Industries Corporation*

cc:   All counsel of record (VIA ECF)

CHICAGO  CLEVELAND  COLUMBUS  HOUSTON  LOS ANGELES  SAN FRANCISCO  ST. LOUIS  |  tuckerellis.com

014850\000033\3870032.2

# EXHIBIT A

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

YITZCHAK KOPEL
Tel: 646.837.7127
Fax: 212.989.9163
ykopel@bursor.com

July 23, 2018

*Via Email*

Ronie M. Schmelz
Tucker Ellis LLP
515 South Flower Street
Los Angeles, CA 90071
Ronie.schmelz@tuckerellis.com

Re:   *Parker v. United Industries Corp.*, Case No. 17-cv-05353, Discovery Dispute Letter re: Document Production Deficiencies

Dear Ronie:

We have completed review of Defendant's document production and have identified the following initial issues. Please confirm by no later than **July 30, 2018** that your client will remedy these deficiencies. They are as follows:

1.  **Documents Improperly Withheld**
    - Brazil Testing. Several documents in the production reference efficacy testing conducted in Brazil sometime in 2016. *See, e.g.*, 007452 (shows that Cutter Natural was sent for efficacy testing in Brazil). This testing along with any supporting documents, communications, results, and analysis must be produced.

    - Study About Cutter Natural. An email to Carli Suz from Juan Rondon says he is "writing with regard to the study attached, about Cutter Natural." *See* 007986, 008038. This attachment must be produced.

    - Repellents A & U Study. Numerous references are made to this study. *See, e.g.*, 009322. These results were not produced.

    - United Industries Pest Control Study. Document number 010044 makes reference to a PowerPoint titled "United Industries Pest Control Study 5.10.12." This document was not produced. Please confirm you will produce this document.

    - Unspecified 2013 Testing. Document No. 012333 is an April 2013 email from Ryan Eilermann to Keri Weeter. In the email, Ryan informs Keri that "we are going to do some testing" with respect to how a competing product compares to

> Cutter Natural. To the extent this testing occurred, any supporting documents, communications, results, and analysis must be produced.
>
> - Eurofins Testing. Document No. 029809 references testing performed by Eurofins on Cutter Natural Insect Repellent. To the extent this testing occurred, any supporting documents, communications, results, and analysis must be produced.
>
> - Unspecified 2011 Efficacy Testing. Document No. 034225 states that with respect to Cutter Natural, "[e]fficacy testing planned for late January." To the extent this testing occurred, any supporting documents, communications, results, and analysis must be produced. Please confirm you will produce by July 26 or we will bring this to Judge Pittman's attention.
>
> - Ron Cardoza, Daniel Forey. On April 18, 2018, Michael Ruttinger circulated an ESI search term chart reflecting hit counts of proposed search terms. Search term No. 11 included the terms "Cardoza," "Forey," and "Bio Research." The chart shows that 180 unique documents were captured by this search. However, only 18 documents were produced, and only one of which was an email to Ron Cardoza asking for the contact information of Forey. No other communications with either individual were produced. Nor does your privilege log reflect a single communication with either Cardoza or Forey. Please explain why the production as limited to these 18 documents.
>
> - 2017 Efficacy Testing. Multiple emails in the production refer to "efficacy" and "natural aerosols testing" in Kathy Cearnal's office. *See, e.g.*, 007318, 007330. To the extent this testing occurred, any supporting documents, communications, results, and analysis must be produced. Please confirm you will produce.

2. **Missing Sales Data**
   - Amazon. Numerous documents throughout the production confirm that the Product was sold online through www.amazon.com. *See, e.g.*, 006082, 006299. The sales data you previously produced does not include any sales from www.amazon.com. Please confirm you will produce <u>all online sales data</u>.

   - Non-Nielsen Sales Data. Hundreds of documents throughout the production reflect sales and orders of Cutter Natural to stores that were not included in the sales information you provided. For instance, 01442 identifies 2,100 stores that do not participate in Nielsen that offer Cutter Natural for sale. Other documents show product sales from Kroger, Publix, Piggly Wiggly, Hyvee, Costco, and BJ's, among many others. Please confirm that you will produce all sales data in your possession, both Nielsen and non-Nielsen.

BURSOR&FISHER
P.A.
PAGE 3

- Wholesale Data. Plaintiff has requested wholesale data including but not limited to units sold, dollars, state-by-state sales, and retailers. The information you have provided thus far is incomplete.

3. **Improper Redactions**
    - You have produced to us several thousand entirely redacted pages. Because of this, Plaintiff has no way of determining the legitimacy of these redactions, nor what the document is that is being redacted. For instance, you produced a document beginning with Bates No. 016642 that is 172 pages, all of which are entirely redacted. A document beginning with Bates No. 018345 is 385 pages, all of which are entirely redacted. This is followed up by document bearing Bates No. 18732, a 340-page document, entirety redacted. There are numerous instances throughout the production where hundreds, if not thousands, of consecutive pages are redacted. That is improper. *See also* Bates No. 021126 (138 pages completely redacted); Bates No. 022196 (231 pages completely redacted); 024798 (320 pages completely redacted); Bates No. 25216 (415 pages completely redacted); Bates No. 25632 (345 pages completely redacted). A more fulsome list of improper redactions is attached as **Exhibit A**. You have also produced several documents that are not in legible format. Those are also reflected in **Exhibit A**.

4. **Privilege Log**
    - No Bates Numbers. As mentioned above, you have redacted several thousand pages of produced documents. None of the documents appear on this Privilege Log. Furthermore, none of the entries on the Privilege Log currently have corresponding Bates numbers. Please confirm that you will (a) add every redacted document to the Privilege Log, and (b) revise the Privilege Log to reflect Bates numbers for every document, whether withheld or redacted.

    - Not Privileged. Dozens of entries are labeled "not privileged" under the "Privilege Type" field. Please produce all documents marked "not privileged" immediately.

    - Work Product Assertions Unrelated to Litigation. Here, Plaintiff sent Defendant a demand letter dated July 5, 2017. Yet you have asserted the work product doctrine for documents created prior to this date. That is plainly improper. *See, e.g.*, Page 3 of Privilege Log (document authored by Consumer Reports created in 2016); Page 4 (document authored by Stacy D. Rodriguez created in 2015); Page 5 (documents authored by unknown created in May 2010 and April 2012, respectively, duplicate 2016 Consumer Reports entry); Page 11 (3 documents with unknown date and unknown author); Page 12 (two May 23, 2016 documents authored by David Glendening); Page 13 (May 24, 2016 document authored by James Hemmings); Page 17 (document authored by unknown created in 2011,

document authored by John Palithorp created May 23, 2016); Page 18 (undated document from unknown author without a recipient).

- <u>Yitzchak Kopel As Author.</u>  I appear as an Author on the Privilege Log at least 10 separate times.  This is improper.

- <u>Consumer Reports.</u>  "Consumer Reports" is listed as an author for several entries on the Privilege Log.  Assertions of privilege are therefore improper.

- <u>Non-Lawyer Communications.</u>  Page 20 of the Privilege Log lists "Robert Dickey" as an author of an email to Kathy Cearnal.  Although the email purports to transmit "legal advice from Mike Pfefferkorn regarding draft agreement," this email was sent before Defendant received Plaintiff's demand letter.  Your assertion of attorney-client communication is therefore improper.

- <u>Janeen Interlandi.</u>  "Janeen Interlandi" is listed as an author for several entries on the Privilege Log.  Janeen Interlandi is a writer for the New York Times, not a client of yours.

- <u>Thomas Buco, Excellentia.</u>  "Thomas Buco, Excellentia" is listed as an author on the Privilege Log.  The recipient is "Joel Rotramel, Brenntag Mid-South." Neither of these people are Defendant's employees, nor are they attorneys.  Thus, any assertion of privilege over this communication is improper.

- <u>Other Third-Party Communications.</u>  Page 11 of the Privilege Log lists "PBI-Gordon Corporation" and "Dow Agrosciences LLC" as authors.  Page 20 lists "Keynote Consulting" as an author.  Also, Page 22 of the Privilege Log lists various third parties as authors, including "Jane Hayden," "Daron Davis," "Brent D. Flickinger."  These communications are not privileged.  Plaintiffs demand the production of all responsive documents involving these entities that have been withheld.

- <u>Unknown.</u>  Numerous entries on the privilege log identify "unknown" as the author and "not applicable" as the recipient.  A communication cannot be privileged if it is not a communication to begin with.  This occurs once on page 1 of the Privilege Log, 3 times on page 2, 5 times on page 3, 6 times on page 5, 2 times on page 6, 4 times on page 7, 7 times on page 8, 4 times on page 9, 7 times on page 10, 8 times on page 11, 2 times on page 12, 4 times on page 14, 7 times on page 15, once on page 16, twice on page 17, 4 times on page 18, once on page 19, twice on page 20, 6 times on page 21, 6 times on page 22, and 4 times on page 25.  Of the 4 entries on page 25, two of the "unknown" entries are dated May 21, 2010 and April 4, 2012 yet cite "work product" as the privilege type.  An assertion based on work product from 7 and 5 years prior to Plaintiff's complaint being filed is plainly improper.

- <u>Duplicate Entries.</u>  Numerous entries throughout the Privilege Log are duplicate entries.  Please confirm you will re-produce the Privilege Log without duplicate entries.

If you contend we are mistaken about anything listed above, please let me know.  I am available to discuss these issues by email and/or telephone.

Very truly yours,

*[signature]*

Yitzchak Kopel

CC:   All counsel of record (via ECF)

# EXHIBIT B

# Tucker Ellis | LLP

August 1, 2018        DIRECT DIAL  216.696.4456 | michael.ruttinger@tuckerellis.com

**Via Email**

Yitzchak Kopel
Bursor & Fisher P.A.
888 Seventh Avenue
New York, NY 10019
ykopel@bursor.com

*Re: Parker v. United Industries Corp.*, Case No. 17-cv-05353, Discovery Dispute Letter re: Document Production Deficiencies

Dear Mr. Kopel:

    I write in response to your July 23, 2018 letter in which you identify alleged deficiencies with respect to Defendant United Industries Corporation's production of documents, which was completed on June 11, 2018. Below we address the four categories of alleged deficiencies that you identified in your letter.

1. **Documents Improperly Withheld**

    We have reviewed the documents you identified in this section of your July 23, 2018 letter and respond as follows:

- <u>Brazil Testing</u> – The document identified does not reference efficacy testing.

- <u>Study About Cutter Natural</u> – This study was produced as an attachment to the original e-mail. The two documents identified are replies to the original email, and therefore would not have contained the original attachment.

- <u>Repellents A & U Study</u> – The results from this study were produced several times under the title "Awareness, Attitude and Usage Tracking Final Report."

- <u>United Industries Pest Control Study</u> – The attachment referenced was produced.

- <u>Unspecified 2013 Testing</u> – The document identified does not contain the quote cited. Responsive, non-privileged documents regarding efficacy testing of the product at issue have been produced.

- <u>Eurofins Testing</u> – The production included documents related to Eurofins testing to the extent responsive.

**Tucker**
**Ellis** | LLP

- <u>Unspecified 2011 Efficacy Testing</u> – Responsive, non-privileged documents regarding efficacy testing of the product at issue have been produced. <u>Ron Cardoza, Daniel Forey</u> – We have produced the responsive, non-privileged documents related to Ron Cardoza and Daniel Forey. As the Stipulated ESI and Hard Copy Protocol explains at Section (B)(5)(b), "a 'hit' on a search term or the fact that any electronic file has been identified in agreed-upon searches is not the sole factor in determining whether ESI is responsive to a Party's request for production" and "the producing party is not required to produce ESI containing a 'hit' or search term if the document is not otherwise responsive, is protected from disclosure by applicable privilege or immunity, governed by any applicable privacy laws or regulations, or that the Protective Order entered in this Action allows to be withheld."

- <u>2017 Efficacy Testing</u> – The documents identified potentially refer to nonresponsive products. To the extent Plaintiff seeks explanation of or more specific details regarding the information contained in the documents produced, this is more appropriate for deposition.

2.   **Missing Sales Data**

In your letter, you identify three segments of sales data that you characterize as missing, including sales data related to sales through www.amazon.com, non-Nielsen sales data, and wholesale data.

On March 14, 2018 we provided you with two spreadsheets of data, one of which contained Nielsen sales data and the other which contained sales data from retailers who do not report through Nielsen (The Home Depot, Lowes, and Wal-Mart). We produced this information in good faith before completion of e-discovery so that you could begin your review; it was never intended to be a complete production of sales data, some of which was not available in readily retrievable form. The complete production of sales data was to occur through the e-discovery process, which was conducted pursuant to the Parties' Stipulated ESI and Hard Copy Protocol (Doc. 16), which was filed on February 23, 2018.

On April 20, 2018, we reached agreement on the search terms to be run pursuant to Section B(5) of the ESI Protocol. These terms encompassed search term #4, which specifically targeted all types of sales data, including Nielsen data, IRI data, and other sales data not reported through Nielsen. We ran these terms as agreed and did not restrict, redact, or withhold any sales data related to Cutter Natural Insect Repellent from the relevant time period of 2014 through 2017. Consequently, you should now have all relevant sales data. If you believe that our document production completed on June 11, 2018 omits responsive sales data to which you are entitled, we request that you review those documents and identify with specificity what information—if any—you believe to be missing.

**Tucker**
**Ellis** | LLP

3.  **Improper Redactions**

Your July 23, 2018 letter includes a lengthy appendix of more than 200 documents that you claim have been flagged for reasons ranging from improper redactions to legibility concerns. We are continuing to review this list and will respond with greater specificity as to these documents once we have completed our review. At that time we will address whether we will produce any documents that we agree to have been improperly redacted or which are illegible.

Generally, however, these documents appear to fall into four categories, which we address below in an attempt to begin a good-faith dialogue about these categories:

First, you have noted that some of these documents are redacted in their entirety. To the extent this is true, it is likely a product of the fact that documents have been produced in families and, per the ESI Protocol, family members have not been separated for purposes of review and production. As a result, some families—such as emails with attachments—may have included family members that were both non-responsive in their entirety and contain commercially sensitive or proprietary information that is not relevant to this action. In such cases, Defendant may have redacted the entire document.

Second, some documents have been heavily redacted, but contain un-redacted information related to Cutter Natural Insect Repellent. As we discussed during previous meet-and-confer conversations on the topic of redactions, Defendant intended to redact information if and only if it contains commercially sensitive or proprietary non-responsive information related to matters, products, or potential products *other than* Cutter Natural Insect Repellent. We have not redacted any information related to Cutter Natural Insect Repellent, which is the only product related to this litigation, even if we felt that it is commercially sensitive or proprietary non-responsive.

Third, you identify some documents as "illegible." We are continuing to review these documents, but note that many of what you have identified as "illegible" documents are not so. Documents in this category include .htm documents that contain no information, "blank" email messages, or email messages in which embedded boxes appear empty. We believe that in most (if not all) instances, these are the product of the Parties following the Stipulated ESI and Hard Copy Protocol. For example, where an attachment to an email may have been embedded in the original message, Section (A)(7) of the Protocol provides that the ESI attachment shall be produced as an independent file immediately following the parent email or record. Other of the documents you identify may be illegible because they contain structural files, such as .CCS, .XSL, .XML, or .DTD files, which per Section (A)(2)(e) of the Protocol are presumptively inaccessible and not discoverable.

Fourth, you have identified some documents—PowerPoint files, for example—that appear to contain comments that are not accessible because the file has been produced in a .pdf format. Defendant will review these files and, if appropriate, may produce them to you in Native Format pursuant to Section (A)(4) of the ESI Protocol.

4.  **Privilege Log**

**Tucker**
**Ellis** | LLP

August 1, 2018
Page 4

You have identified three broad categories of alleged deficiencies with respect to the Privilege Log produced by Defendant on June 8, 2018, and revised on June 22, 2018.

First, you have requested that Defendant (1) add every redacted document produced by Defendant to the Privilege Log and (2) revise the Privilege Log to reflect Bates numbers for every document, whether withheld or redacted. Documents that have been redacted because they contain non-responsive, but commercially sensitive or proprietary information, should not be included in a Privilege Log. Defendant has not redacted any documents for privilege, and therefore these have no place in the Privilege Log. As to your request for Bates numbers, we are not aware of any authority requiring a party to Bates-label documents that have been identified on a privilege log and are not being produced. If you are aware of any such rule, we invite you to share that with us. Otherwise, we do not intend to revise the log to reflect bates numbers for all documents listed.

Second, you have requested that Defendant produce several categories of documents that appear on the Privilege Log, but to which you contend no privilege applies. These include:

- Not Privileged

- Work Product Assertions Unrelated to Litigation

- Yitzchak Kopel As Author

- Consumer Reports

- Non-Lawyer Communications

- Janeen Interlandi

- Thomas Buco, Excellentia

- Other Third-Party Communications

- Unknown

The inclusion of each of the above categories in the Privilege Log is explained by the fact that Defendant, as contemplated by the ESI Protocol, produced documents in *families*. When the Parties discussed the ESI Protocol during a telephonic meet-and-confer conference on January 18, 2018, we specifically discussed that documents would be produced in families, which would not be broken apart for purposes of production. This is reflected in Attachment A, ¶ A7 of the ESI Protocol. Further, we specifically discussed that families would be maintained for privileged documents as well, at which time the Parties agreed that family members would be withheld regardless of whether they were independently privileged. Thus the privilege log may identify documents that would not have been privileged on their own, but which are privileged insofar as they were attached to a privileged communication. For example, documents marked "Yitzchak Kopel As Author" may include, for example, the Complaint filed in this case, which has been

**Tucker Ellis | LLP**

August 1, 2018
Page 5

included in the Privilege Log because it was attached to an attorney-client communication. As another example, family member documents unrelated to litigation (the 2016 Consumer Reports document, for example) that were attached to another document, such as an email protected by the work-product privilege, have been identified on the Privilege Log.

Third, you have requested that Defendant re-produce the Privilege Log without duplicate entries. To the extent duplicate entries exist, we believe they can be easily filtered out by reviewing counsel and decline to re-produce the log to address this unless you identify authority requiring Defendant to do so.

\* \* \*

As stated above, we will continue to look into those items we have specifically noted above. To the extent any additional information needs to be produced in connection with those issues, Defendant reserves its right to supplement in accordance with the applicable Rules of Civil Procedure. We are available and willing to discuss any of the above issues via email and/or telephone and suggest that the Parties schedule a meet-and-confer conference to narrow any further disputes regarding the same before seeking guidance from the Court, if necessary.

Respectfully,

/s/ Michael J. Ruttinger
Michael J. Ruttinger
*Counsel for United Industries Corporation*