**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS PARKER, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>     v.<br><br>UNITED INDUSTRIES CORPORATION,<br><br><br>                    Defendant. | Civil Action No. 1:17-cv-05353-GBD-HBP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**

Dated:  February 19, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
           ykopel@bursor.com
           aleslie@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF COMMON FACTS ................................................................. 2

    A. Defendant Manufactures And Distributes Cutter Natural ...................... 2

    B. Cutter Natural's Label Promises That It Repels Mosquitoes For Two Hours ................................................................................................ 3

    C. Four Laboratory Studies Show That Cutter Natural Is Ineffective ......... 4

    D. Even Defendant's Flawed And Unreliable Tests Show That Cutter Natural Does Not "Repel Mosquitoes For Hours" ................................... 6

        1. Travis Wood's Testing of Cutter Natural ..................................... 6

        2. Bio Research's Testing of Cutter Natural ..................................... 9

    E. Defendant Ignored Repeated Complaints That Cutter Natural Did Not Work ............................................................................................... 10

        1. Consumer Complaints ................................................................. 11

        2. ABC News Requested Comment On The Product's Ineffectiveness .......................................................................... 12

        3. Defendant Knew That Cutter Natural Failed Consumer Reports Testing ........................................................................... 12

        4. Defendant Knew That Cutter Natural Failed The New Mexico State University Study ..................................................... 13

III. THE LEGAL STANDARD FOR CLASS CERTIFICATION ........................ 13

IV. THE REQUIREMENTS OF RULE 23(A) ARE READILY MET ................. 14

    A. Numerosity ............................................................................................. 14

    B. Commonality .......................................................................................... 14

    C. Typicality ............................................................................................... 15

    D. Plaintiff Will Adequately Represent The Class Members ..................... 16

        1. Plaintiff's Interests Do Not Conflict With Class Members' ...... 16

        2. Plaintiff's Counsel Are Qualified .............................................. 17

    E. The Classes Are Ascertainable .............................................................. 17

V. THE PROPOSED CLASSES SATISFY RULE 23(B)(3) ............................... 18

    A. Common Questions Of Law Or Fact Predominate ................................ 18

        1. Common Questions Of Fact Predominate ................................... 18

      2.      Common Issues Predominate For A Nationwide Fraud Class...................19

      3.      Common Issues Of Law Predominate For A 25-State Breach Of Express Warranty Class...........................................................20

      4.      Common Questions of Law Predominate as to Plaintiff's Claims Under New York Gen. Bus. Law ("GBL") §§ 349 & 350............................................................................22

      5.      Common Questions Predominate as to Plaintiff's Claim for Unjust Enrichment ............................................................23

      6.      Damages Are Measurable On A Classwide Basis ....................................23

   B.     Class Litigation Is Superior To Other Methods Of Adjudication........................ 24

VI.     THE CLASS SHOULD ALSO BE CERTIFIED UNDER RULE 23(B)(2) ................... 25

VII.    CONCLUSION........................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*AmchemProds., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................ 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)...................................................................... 18

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015)........................................................ 24

*Civic Ass'n of the Deaf v. Giuliani*,
  915 F. Supp. 622 (S.D.N.Y. 1996) ................................................... 14

*Consol. Rail Corp. v. Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................... 14

*Cortigiano v. Oceanview Manor Home for Adults*,
  227 F.R.D. 194 (E.D.N.Y. 2005)...................................................... 14

*Ebin v. Kangadis Family Management LLC*,
  45 F. Supp. 3d 395 (S.D.N.Y. 2014) ........................................... 19, 20

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014)......................................... 17, 19, 20, 21

*Fogarazzao v. Lehman Bros., Inc.*,
  232 F.R.D. 176 (S.D.N.Y. 2005)...................................................... 15

*Gorat v. Capala Bros., Inc.*,
  257 F.R.D. 353 (E.D.N.Y. 2009)...................................................... 14

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ............................................................. 15

*Guido v. L'Oreal, USA, Inc.*,
  284 F.R.D. 468 (C.D. Cal. 2012)...................................................... 22

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017)..................... 15, 17, 19, 20, 21

*In re Amla Litig.*,
  320 F. Supp. 3d 578 (S.D.N.Y. 2018) .............................................. 24

iii

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ................................... 16, 17, 18, 23

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) ........................................................................... 20

*In re Petrobas, Sec.*,
    862 F.3d 250 (2d. Cir. 2017) ................................................................................ 17

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................................... 17

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ........................................................................... 19, 20

*In Re Visa Check / MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................................. 13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................................. 25

*Jermyn v. Best Buy Stores, L.P.*,
    356 F.R.D. 418 (S.D.N.Y. 2009) .......................................................................... 22

*Koch v. Ackert, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ........................................................................................... 22

*Kraft v. Staten Island Boat Sales, Inc.*,
    715 F. Supp. 2d 464 (S.D.N.Y. 2010) .................................................................. 21

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................................... 24

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ........................................................................................... 23

*Mariso A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................................. 14

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ................................................................................. 22

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ............................................................................... 19

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    32 F.3d 690 (2d Cir. 1994) ................................................................................... 22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ............................................................................................. 22

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 13

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d. Cir 2015) ................................................................................. 18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................................. 15

*Rodriguez v. It's Just Lunch, Intern.*,
   300 F.R.D. 125 (S.D.N.Y. 2014) ................................................................ 19, 20, 23

*Seijas v. Repub. of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ........................................................................... 23, 25

*Spencer v. Hartford Fin. Svc. Grp. Inc.*,
   256 F.R.D. 284 (D. Conn. 2009) ........................................................................... 20

*Steigerwald v. BHH, LLC*,
   2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ........................................................ 19

*Steinberg v. Nationwide Mut. Insur. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ............................................................................. 21

*Sykes v. Mel Harris & Assocs. LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ........................................................................... 25

*Sykes v. Mel S. Harris & Assocs.*,
   780 F.3d 70 (2d Cir. 2015) ................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................. 13, 14, 15

**STATUTES**

N.Y.U.C.C. § 2–313(1)(a) ....................................................................................... 20

New York Gen. Bus. Law § 349 ...................................................................... passim

New York Gen. Bus. Law § 350 ...................................................................... passim

**RULES**

Fed. R. Civ. P. 23 ................................................................................................... 15

Fed. R. Civ. P. 23(a) ............................................................................................. 14

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 14

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 15

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 25

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 18, 25

## I.     INTRODUCTION

The labeling of Cutter Natural Insect Repellent ("Cutter Natural" or the "Product") represents that it (1) is an "insect repellent," (2) "repels mosquitos for hours;" (3) "keeps mosquitos away from you and your family for up to two hours;" and (4) should be reapplied "every two hours or as needed."  As detailed herein, common evidence will show that each of these representations is false and misleading because Cutter Natural is ineffective and worthless. Because these representations were made to all class members, the veracity of the statements is an issue common to the class.

Plaintiff accordingly seeks certification of four classes:  a nationwide class asserting a claim for fraud, a multi-state class asserting a claim for breach of express warranty, a New York-only class asserting claims under New York's consumer protection laws (N.Y. G.B.L. §§ 349 & 350), and a New York-only class asserting a claim for unjust enrichment.  The proposed class definitions are as follows:

> **Nationwide Fraud Class**:  "[A]ll persons who purchased one or more units of Cutter Natural Insect Repellent, excluding persons who purchased for purpose of resale: (1) in the states of Alabama, Kansas, Louisiana, Montana, Oklahoma, Oregon, Pennsylvania, Virginia, and West Virginia from July 15, 2015 through the date of class notice; (2) in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, North Carolina, South Carolina, Tennessee, Utah, Washington and Wisconsin from July 15, 2014 through the date of class notice; (3) in the states of Florida, Georgia, Nebraska, New Mexico, Ohio, Texas, and Wyoming from July 15, 2013 through the date of class notice; (4) in the states of Illinois, Iowa, Kentucky, and Missouri from July 15, 2012 through the date of class notice; and (5) in the states of Alaska, Hawaii, Indiana, Maine, Michigan, Minnesota, New Jersey, New York, North Dakota, Rhode Island, South Dakota and Vermont from July 15, 2011 through the date of class notice."

> **Multistate Breach of Express Warranty Class**:  "[A]ll persons who purchased one or more units of Cutter Natural Insect

1

Repellent, excluding persons who purchased for purpose of resale: (1) in the states of Alaska, California, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from July 15, 2013 through the date of class notice; and (2) in the state of Colorado from July 15, 2014 through the date of class notice."

**New York GBL Class**: "[A]ll persons who purchased one or more units of Cutter Natural Insect Repellent, excluding persons who purchased for purpose of resale, in the state of New York from July 15, 2014 through the date of class notice."

**New York Unjust Enrichment Class:** "[A]ll persons who purchased one or more units of Cutter Natural Insect Repellent, excluding persons who purchased for purpose of resale, in the state of New York from July 15, 2011 through the date of class notice."

These classes substantially mirror the classes certified by Judge Pauley in *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), a case in which the plaintiffs alleged that pest repeller devices were ineffective. There, Judge Pauley recognized that common issues predominated because "the only thing for which a reasonable consumer would ever purchase the pest repeller [is] to repel pests." *Id.* at *7. The same is true here. Cutter Natural has one purpose – to repel mosquitoes. But as detailed below, common evidence shows that it does not work. Class treatment is therefore appropriate.

## II.    SUMMARY OF COMMON FACTS

### A.    Defendant Manufactures And Distributes Cutter Natural

Defendant United Industries Corporation, also known as "Spectrum Brands," manufactures two varieties of Cutter Natural: a pump bottle and an aerosol spray. Kopel Decl. Ex. 2,[1] Wood Dep. at 38:14-20. ████████████████████████

---

[1] Citations to exhibits of the Declaration of Yitzchak Kopel are hereafter referenced simply as "Ex. XX."

2

██████████████████████████████████ Ex. 3, Cearnal Dep. at 178:1-179:23.

The labels for both products represent that Cutter Natural (1) is an "insect repellent," (2) "repels mosquitos for hours;" (3) "keeps mosquitos away from you and your family for up to two hours;" and (4) should be reapplied "every two hours or as needed."  Ex. 5, Schwallie Dep. at 26:22-30:15.  Every unit of Cutter Natural ever sold bore these representations.  *Id.*

███████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

The one and only purpose of Cutter Natural is unambiguously to repel mosquitos.  Defendant's employees, including its corporate representative, explained this at their depositions.  *See* Ex. 2, Wood Dep. at 40:16-22 ("Q:  Okay, so would you agree that the function of this product was to be a mosquito repellent?  A:  Yes.  Q:  Can you think of any reason someone might buy this product other than for protection against mosquitoes?  A:  Not that I can think of."); Ex. 5, Schwallie Dep. at 19:20-20:6 ("Q:  So would it be accurate to say that its core purpose or function is to repel mosquitoes?  A:  That's correct.  Q:  If … this product did not repel mosquitoes, would there be any reason to buy it?  A:  Um, the purpose is to repel mosquitoes, so if it did not repel mosquitoes, no, it would not exist.").

**B.      Cutter Natural's Label Promises That It Repels Mosquitoes For Two Hours**

As acknowledged by Defendant's own employees, Cutter Natural's packaging expressly

warrants that the product provides two hours of protection against mosquitos:

> Q:      Now … it says, "Repels mosquitoes for hours."  Do you
>          see that?
>
> A:      Yes.
>
> …
>
> Q:      Now, the word "hours" has an "s" at the end of it correct?
>
> A:      Yes.
>
> Q:      Would you agree with me that … indicates multiple, as in
>          two or more hours?
>
> A:      Yes.

Ex. 2, Wood Dep. at 42:4-43:4; *see also* Ex. 5, Schwallie Dep. at 24:5-12 ("Q:  … Going back to

the "Repels mosquitoes for hours" claim, would you agree that it's a representation about the

product?  A:  Yes.  Q:  And that it's a promise essentially, about one of the product's

characteristics; correct?  A:  Yes.").

██████████████████████████████████████████████████

██████  Ex. 10.  As Defendant's former Senior Biologist explained, the vague "or as needed"

portion of this instruction does *not* communicate a need to reapply the product more frequently

than every two hours.  Ex. 2, Wood Dep. at 45:1-5 ("Q:  Is there any circumstance in which these

instructions would alert you for the need to apply it for a shorter duration than two hours?  A:

For me personally, no.").  Despite this, as detailed below, four laboratory tests show that Cutter

Natural provides zero meaningful protection from mosquitoes.  ██████████████████████

████████████████████████████████████████████

**C.      Four Laboratory Studies Show That Cutter Natural Is Ineffective**

As set forth in detail in the declaration of Plaintiff's mosquito expert, Dr. Scott W.

Gordon, BCE, COL (USA ret), four laboratory studies show that Cutter Natural is ineffective.

First, Dr. Gordon oversaw two forms of laboratory testing on the product:  arm-in-cage ("AIC") tests and Biogents cage ("BGC") tests.  Gordon Decl. ¶¶ 23.  Both tests used commonly accepted methodologies:  the AIC tests followed the protocol set forth by the World Health Organization ("WHO") in 2009, and the BGC tests followed the protocol set forth in a peer-reviewed journal article.  *Id.* ¶¶ 24-27 & 28-30.  For both the AIC and BGC tests, Cutter Natural was tested on 6 volunteers (3 males and 3 females) against female yellow-fever mosquitoes (*Aedes aegypti*) and southern house mosquitoes (*Culex quinquefasciatus*).  These are two common species of mosquitoes in the United States, and both are known as carriers for a number of potentially deadly diseases.  *Id.* ¶ 24.  The results show that Cutter Natural does not work.  Against *Culex* mosquitoes, the AIC and BGC tests showed an **average complete protection time of 2.5 and 12.5 minutes**, respectively, when used as directed.  *Id.* ¶¶ 31-34.  Against *Aedes* mosquitoes, the tests showed **average complete protection times of 0 and 10 minutes** respectively.  *Id.*

Cutter Natural also flunked a study performed by another independent laboratory, i2L Research USA, Inc. in Baltimore, MD.  *Id.* ¶ 35.  i2L conducted AIC tests on Cutter Natural in accordance with the guidelines set forth by the EPA (2010) for AIC testing.  *Id.* ¶ 36.  Like the Biogents testing, i2L tested the product against *Aedes aegypti* and *Culex quinquefasciatus* mosquitoes.  For all four subjects tested, and against both species of mosquitoes, bites occurred in the first exposure period, 30 minutes following application of the product.  **The product failed during the initial exposure period in all 8 tests conducted.**  *Id.* ¶¶ 37-40.

Finally, the same results were seen in a study conducted by New Mexico State University, which appeared in a peer-reviewed journal publication.  *Id.* ¶ 43.  There, the study, which aimed to "test the efficacy of eight commercially available mosquito repellent products," including Cutter Natural, *id.* ¶ 44, found that Cutter Natural **"produced no significant**

**reduction in attraction," "did not work in either species [of mosquitoes tested], and**

**"produced little or no repellency effect."** *Id.* ¶ 48.

Based on the above, and as set forth in the declaration, Dr. Gordon stated:

> I conclude that Cutter Natural is ineffective in providing bite protection against, and repelling, mosquitoes. In my expert opinion, Cutter Natural has no value as a mosquito repellent and should not be relied upon by anyone for protection against mosquito bites or protection from mosquito-borne diseases.

*Id.* ¶ 2.

**D.     Even Defendant's Flawed And Unreliable Tests Show That Cutter Natural Does Not "Repel Mosquitoes For Hours"**

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

**1.     Travis Wood's Testing of Cutter Natural**

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

6



As Plaintiff's expert, Dr. Gordon, explains, "[b]ecause these tests were not performed on a representative sample of the population of consumers, reliable conclusions as to the product's expected total protection time cannot be drawn for individuals other than, perhaps, Mr. Wood himself."  Gordon Decl. ¶ 68.  Mr. Wood agrees:

> Q:    So when it came to your test[s], would you say that they are
>       not necessarily indicative of how … this product might
>       perform for the general public?
>
> A:    That's certainly possible, yes.
>
> Q:    Because it simply wasn't tested on enough different people;
>       correct?
>
> A:    That's correct.  …

Ex. 2, Wood Dep. at 63:8-17.

But even putting reliability issues aside, these tests did not show two hours of protection time.

---

2 These tests also suffered from a larger variety of issues rendering them unreliable as set for in ¶¶ 64-71 of Dr. Gordon's Decl.

7

Q:   And … the[] instructions for reapplication exceed the average protection time that you found for this product as against *Aedes aegypti* mosquitoes; correct? ….

A:   Yes.  In terms of our in-house efficacy testing, it does exceed.

Ex. 2, Wood Dep. at 87:17-88:17.



The fact that Defendant had no reliable testing of the product against *Aedes* mosquitoes,

and the limited testing that it had showed that the product *failed* to meet the labeling claims and

instructions for use, is highly significant.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████

**2.     Bio Research's Testing of Cutter Natural**

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

**E.    Defendant Ignored Repeated Complaints That Cutter Natural Did Not Work**

Defendant knew that Cutter Natural did not work, and not just because of its failed tests.

As discussed below, Defendant was repeatedly notified that Cutter Natural did not work.

10

### 1.      Consumer Complaints

Since Cutter Natural's launch, Defendant repeatedly received complaints from consumers

that the product did not work.  Some examples include:



Ex. 23.  Although the complaints are too numerous to be listed in this brief, dozens of similar

complaints are appended as Exhibit 23 to the accompanying Kopel Declaration. ███████



Ex. 5, Schwallie Dep. at 95:16-96:5.

**2.     ABC News Requested Comment On The Product's Ineffectiveness**

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████

██    ████████████████████████████████

██████████████████████████████████

████████████████████████████████████

███████████

██    █████████████████████

Ex. 5, Schwallie Dep. at 102:4-11.

**3.     Defendant Knew That Cutter Natural Failed Consumer Reports Testing**

In 2015, Consumer Reports published the results of its own AIC testing on Cutter

Natural, which concluded that "exhibited poor performance at repelling mosquitoes."  Exs. 15 &

16. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

██    ███████████████████████████████████
    █████████████████████████

██    ████████

██    ███████████████████████████████████████
    █████████████

██    ████████████

██    ███████████████████████████████
    ██████████████████████████████
    ██████████████████████████████

██    ████████████

12

*Id.* at 222:5-18.

### 4. Defendant Knew That Cutter Natural Failed The New Mexico State University Study

Defendant also knew about the NMSU Study discussed *supra* § II.C, which found that

Cutter Natural "produced little or no repellency effect." ███████████████

████████████████████████████

   ██     ████████████████████████

         ██████

   ██     ██

   ██     ████████████████████████████

   ██     ██

*Id.* at 219:5-12.

## III. THE LEGAL STANDARD FOR CLASS CERTIFICATION

Class actions are an essential tool for adjudicating cases involving many small claims that are not economically feasible to prosecute individually. In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *AmchemProds., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the categories provided in Rule 23(b). *See In Re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). The Court must conduct a "rigorous analysis," which may require it to "probe behind the pleadings before coming to rest

on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

However, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than

restrictive construction.'" *Gorat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)

(quoting *Mariso A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Indeed, "it seems beyond

peradventure that the Second Circuit's general preference is for granting rather than denying

class certification." *Id.* at 361-62 (quoting *Cortigiano v. Oceanview Manor Home for Adults*,

227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

## IV.     THE REQUIREMENTS OF RULE 23(a) ARE READILY MET

Rule 23(a) sets forth four prerequisites for certification:  numerosity, commonality,

typicality, and adequacy.  Fed. R. Civ. P. 23(a).

### A.     Numerosity

A presumption of numerosity attaches to classes of more than 40 in the Second Circuit.

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  ██████████████

████████████████████████████████████████████████████

### B.     Commonality

Commonality is met "if there are questions of law or fact common to the class."  Fed. R.

Civ. P. 23(a)(2).  In other words, Plaintiff's and Class members' claims "depend on a common

contention," "capable of class-wide resolution … meaning that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Dukes*, 131 S. Ct. at 2551.  "Commonality does not mandate that all class members make

identical claims and arguments."  *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633

(S.D.N.Y. 1996).  The commonality requirement is met where the individual circumstances of

class members differ, but "their injuries derive from a unitary course of conduct by a single

system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).  In fact, "[e]ven a single

question of law or fact common to the members of the class will satisfy the commonality

requirement." *Dukes*, 131 S. Ct. at 2562.

Here, Plaintiff and class members were defrauded in the same exact way – they were sold

a mosquito repellent that did not repel mosquitoes.  All Class Members were shown the same

misrepresentations on Cutter Natural's label and suffered the same economic harm, namely, the

purchase price of the Product.  Commonality is therefore satisfied.  *See Hart*, 2017 WL 2912519,

at *6 ("Here, the putative class members relied on the same alleged misrepresentations of fact

regarding the efficacy of the pest repeller, and suffered the same economic harm.").

### C.    Typicality

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class.  Fed. R. Civ. P.

23(a)(3).  "The typicality requirement is not demanding."  *Fogarazzao v. Lehman Bros., Inc.*,

232 F.R.D. 176, 180 (S.D.N.Y. 2005) (internal quotations omitted).  Typicality is satisfied "when

each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931,

936 (2d Cir. 1993).  "When it is alleged that the same unlawful conduct was directed at or

affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations in the fact patterns underlying

individual claims."  *Id.* at 936-37; *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("[To

deny class certification] because all of the allegations of the class do not fit together like pieces

in a jigsaw puzzle … would destroy much of the utility of Rule 23.").

Here, typicality is met for Plaintiff for the same reason as it was in *Hart*: "[t]he putative

class members' claims arise from generally the same court of events—they … relied on the

product representations, and purchased the product.  In seeking relief, they will make essentially the same argument to prove liability—that [Defendant] knew its products were ineffective yet marketed and sold them anyway."  2017 WL 2912519, at *6.  The same principle applies here. *See* Parker Decl. ¶ 5 (stating that Plaintiff relied on the Product's label representations that it was an "insect repellent" that "repels mosquitos for hours"); *id.* ¶ 6 (stating that Plaintiff was bitten on both of his legs and both of his arms following application of the Product).  Moreover, these representations describe the sole purpose of Cutter Natural – to repel mosquitos.  Because the representations were materially uniform and emanated from Defendant, typicality is satisfied.

### D.      Plaintiff Will Adequately Represent The Class Members

 "To satisfy the adequacy requirement, 'the class representatives must not have interests conflicting with the class, and the lead plaintiffs' counsel must be 'qualified, experienced, and generally able to conduct the proposed litigation.'"  *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015) (Daniels, J.) (internal citation omitted).

### 1.      Plaintiff's Interests Do Not Conflict With Class Members'

Neither Plaintiff nor his counsel have any interest antagonistic to absent class members. Plaintiff, like each absent class member, has a strong interest in proving Defendant's common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.  Plaintiff has retained competent counsel, assisted with counsel's pre-suit investigation, reviewed and authorized the filing of legal documents, sat for a deposition, and has kept in regular contact with his counsel to discuss case strategy and developments.  *See* Parker Decl. ¶¶ 8-11.  Plaintiff has submitted a declaration herewith describing his purchase of Cutter Natural and his efforts in the prosecution of this case.

### 2.      Plaintiff's Counsel Are Qualified

Plaintiff's counsel, Bursor & Fisher, P.A., are experienced and qualified class action lawyers who have experience litigating consumer claims.  *See* Bursor & Fisher, P.A. Firm Resume, Kopel Decl. Ex. 1.  The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million verdicts or recoveries in 5 of 5 class action jury trials since 2008.  *Id.*  Other courts in this district have recognized the qualifications of Plaintiff's counsel in appointing them as class counsel in similar consumer-product class actions.  *See Hart*, 2017 WL 2912519 ("The first prong [of adequacy] is easily dispensed with in view of the undersigned counsel's work in similar consumer product class actions in this district.") (Pauley, J.); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("As for plaintiffs' counsel, Bursor & Fisher, P.A. are class action lawyers who have experience litigating consumer claims ….  The firm has been appointed class counsel in dozens of cases in both federal and state courts ….") (Rakoff, J.); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) ("Bursor & Fisher, P.A., 'has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million-dollar verdicts or recoveries in five class action jury trials since 2008.'") (Briccetti, J.) (quoting *Ebin*, 297 F.R.D. at 566).

### E.      The Classes Are Ascertainable

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d. Cir. 2017) (rejecting the argument that proposed classes must be "administratively feasible" and holding that the class was "clearly objective" and "sufficiently definite" where it included people who acquired specific securities during a specific period in "domestic transactions" because the class was "identified by subject matter, timing, and

location," which made it "objectively possible" to ascertain members). Here, the Class is defined objectively such that Class Members can be identified by reference to "objective criteria." Each of the proposed classes are defined as groups of persons who purchased Cutter Natural in defined geographical areas and during defined time periods. The nature, location, and timing of the purchase are objective facts. Thus, it is objectively possible to ascertain Class Members by reference to these criteria. Accordingly, the ascertainability requirement is met.

## V.     THE PROPOSED CLASSES SATISFY RULE 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both are met here.

### A.     Common Questions Of Law Or Fact Predominate

"The predominance prong of Rule 23(b)(3) is satisfied when the 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re JPMorgan*, 2015 WL 10433433, at \*4 (Daniels, J.) (citing *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d. Cir 2015)). The Rule calls for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Here, common questions of fact and law predominate.

#### 1.     Common Questions Of Fact Predominate

Common questions of fact predominate because Plaintiff and the Class Members' claims each arise from the product's labeling claims. Ultimately, this entire case can be summarized in a simple question: "Does Cutter Natural repel mosquitos as advertised?" This question of fact is

18

subject to common proof and predominates over any other questions raised in this action.

### 2. Common Issues Predominate For A Nationwide Fraud Class

Certification of a nationwide fraud class is appropriate in this case. "The 'Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class.'" *Hart*, 2017 WL 2912519, at *8 (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Fraud actions must … be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.")); *see also Ebin*, 297 F.R.D. at 569 (same).

"Many elements of a fraud claim—misrepresentation, reliance, and causation—are easily addressed through generalized proof of the product's label and proof of plaintiffs' purchases." *Hart*, 2017 WL 2912519, at *8. This is particularly true here, where it is impossible that any class member could have purchased Cutter Natural without relying on its promise to "repel[] mosquitoes." "Fraud claims of this type may thus be appropriate candidates for class certification because, 'while each plaintiff must prove reliance, he or she may do so  through common evidence (that is, though legitimate inferences based on the nature of the alleged misrepresentations at issue)." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013); *see also Steigerwald v. BHH, LLC*, 2016 WL 695424, at *6 (N.D. Ohio Feb. 22, 2016) ("[H]owever reliance is defined, it is present where the only reason a customer buys the product is to use it as a pest repeller."); *Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014) (certifying nationwide fraud class, stating: defendant's "representation to its prospective customers … was 'so fundamental' that it is reasonable to infer … that plaintiff in fact relied on those representations."); *Ebin v. Kangadis Family Management LLC*, 45 F. Supp.

3d 395, 399 (S.D.N.Y. 2014) (certifying nationwide fraud class where "the item purchased, by labeling itself as 100% Pure Olive Oil, in effect defined the product.  Unlike most fraud … claims, it is thus inconceivable that any individual would not have relied on the tin's labeling in its purchase").

Moreover, variations in state law do not preclude certification of a nationwide fraud class because "the fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Svc. Grp. Inc.*, 256 F.R.D. 284, 299 (D. Conn. 2009); *see also Rodriguez*, 300 F.R.D. at 136 ("[A]ll states require proof of misrepresentation, materiality of misrepresentation and reliance.").  In 2013, the Second Circuit affirmed certification of a nationwide fraud class, noting that any differences in the "standard of proof" required under state law did "not draw into question the district court's conclusion as to predominance."  *U.S. Foodservice*, 729 F.3d at 129.  Other courts in this Circuit have routinely granted certification of nationwide fraud classes.  *See Hart*, 2017 WL 2912519, at *8 (variations in state law did not preclude certification of nationwide fraud class); *Ebin*, 45 F. Supp. 3d at 399 (same); *Rodriguez*, 300 F.R.D. at 140 (same); *Spencer*, 256 F.R.D. at 299 (same); *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y. 2006) (same).

### 3.   Common Issues Of Law Predominate For A 25-State Breach Of Express Warranty Class

Plaintiff seeks to certify a Breach of Express Warranty Class.  The 25 states in this proposed class are the same states that were included in the express warranty class certified in *Hart*.  2017 WL 2912519, at *9.

Under New York law, which governs Plaintiff's claims in the first instance, an express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y.U.C.C. § 2–313(1)(a).  "In order to

demonstrate that an express warranty was created under New York law, a plaintiff must prove that the statement falls within the definition of warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (internal quotations omitted).

Here, the Cutter Natural's label warranted that it is an "insect repellent," that "repels mosquitos for hours," "keeps mosquitos away from you and your family for up to two hours." Kopel Decl. Ex. 10.  Reliance will be demonstrated through class wide evidence because, as noted above, it is impossible for anyone to have purchased Cutter Natural without relying on its ability to repel mosquitoes.  *See Hart*, 2017 WL 2912519, at *9 ("There is no other way a reasonable consumer could have interpreted the phrase 'repel pests' other than to believe that purchase and use of such product would in fact drive out pests.").

Moreover, variations in state laws will not defeat predominance because the standards for creation and violation of an express warranty are the same in all states, given that they have all adopted the UCC.  *See* Ex. 12 (chart of express warranty statutes by state).  Certification of a multistate class is proper where "a survey of potentially applicable state laws reveals no material difference that would affect the merits of the class's common law claims at trial."  *Ebin*, 297 F.R.D. at 570; *see also Steinberg v. Nationwide Mut. Insur. Co.*,  224 F.R.D. 67, 78 (E.D.N.Y. 2004) (certifying nationwide class where "the plaintiff's analysis of the variances in the applicable state law demonstrates that no 'actual conflicts' of substantive law exist").

The 25 states in this proposed class are the same states in the breach of express warranty class certified by Judge Pauley in the *Hart* case.  2017 WL 2912519, at *9.  That is because these states have no privity requirement for breach of express warranty.  *See* Ex. 13 (chart showing privity requirements by state).  Certification of this class is therefore appropriate.

### 4.   Common Questions of Law Predominate as to Plaintiff's Claims Under New York Gen. Bus. Law ("GBL") §§ 349 & 350

Common questions of law also predominate with respect to Plaintiff's claims under New York Gen. Bus. Law §§ 349 and 350.  To establish a prima facie case under GBL § 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  "Deceptive acts" are defined objectively as those that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 522.  "The same analysis applies to claims brought under Section 350 claim." *In re EZ Seed Litig.*, Case No. 12-cv-04727, Memorandum Decision, at 18, (S.D.N.Y. May 22, 2013) (Dkt. No. 46); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994) ("In order to establish a claim under either section, a plaintiff must show (i) that the act or practice was misleading in a material respect, and (ii) that the plaintiff was injured.") (internal quotations omitted).  Sections 349 and 350 do not require proof of reliance or scienter.  *See Koch v. Ackert, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

Here, Cutter Natural's representations (i) were directed at consumers, (ii) were false or misleading in a material way, and (iii) caused injury to Plaintiff.  *See supra* § IV.C.  Plaintiff will prove these claims with the same common evidence described above.  *See Jermyn v. Best Buy Stores, L.P.*, 356 F.R.D. 418, 435-36 (S.D.N.Y. 2009) (certifying GBL §§ 349 and 350 claims where "[t]he predominant issue before the Court is whether Best Buy's advertisements about its price match guarantee were false and misleading because the company had a secret Anti-Price Matching Policy."); *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 480-83 (C.D. Cal. 2012) (certifying class under GBL §§ 349 and 350 where all purchasers of hair product were

subject "to the same deceptive marketing and advertising").

### 5.     Common Questions Predominate as to Plaintiff's Claim for Unjust Enrichment

Common questions predominate for Plaintiff's unjust enrichment claim.  To state a claim for unjust enrichment, New York law requires proof "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'"  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).  This claim is susceptible to common proofs described above.  *See Rodriguez*, 300 F.R.D. at 148 ("[I]n every case cited by the parties involving section 349 and unjust enrichment claims arising out of the same core facts in which the court granted certification of the section 349 claim, the court also granted certification of the unjust enrichment claim.").

### 6.     Damages Are Measurable On A Classwide Basis

Second Circuit law "merely requires that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'  *In re JP Morgan*, 2015 WL 10433433, at *7 (Daniels, J.) (quoting *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 82 (2d Cir. 2015)).  Moreover, it is "'well-established' Second Circuit precedent that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3).'"  *In re JP Morgan*, 2015 WL 10433433, at *7 (quoting *Seijas v. Repub. of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)).

Here, class members' damages stem from Defendant's misconduct in that they were injured in the amount of the purchase price of Cutter Natural on account of Defendant's false claims of efficacy.  Moreover, while not necessary, damages are easily calculated on a classwide basis, as set forth in the declaration of Plaintiff's damages expert, Colin B. Weir.  Mr. Weir

proposed four frameworks for calculation of classwide damages:  (1) Full Refund Damages, if

Plaintiff proves that Cutter Natural is worthless; (2) Partial Efficacy Damages, appropriate if a

jury finds that Cutter Natural has some value, but provides fewer than two hours of protection

time; (3) Unjust Enrichment Damages, in which the class can recover the amount of money by

which Defendant was unjustly enriched, should it prevail on its unjust enrichment claim, and (4)

statutory damages, as set forth by GBL §§ 349 and 350.  *See* Weir Decl. ¶¶ 15 & 16.

Because GBL §§ 349 and 350 provide for statutory damages, damages can easily be

calculated on a classwide basis for the New York GBL Class.  *See In re Amla Litig.*, 320 F.

Supp. 3d 578, 591-92 (S.D.N.Y. 2018) (Rakoff, J.) ("NYGBL § 349 provides for the greater of

actual damages or $50 statutory damages for anyone injured by a violation of its terms.  N.Y.

G.B.L. § 349(h).  The entire product here at issue costs less than $50, so the statutory damages

would necessarily be more than any price premium.  Because the statutory damages apply on a

classwide basis, there is no need to determine the exact amount of that price premium."); *Kurtz v.

Kimberly-Clark Corp.*, 321 F.R.D. 482, 550 (E.D.N.Y. 2017) ("[P]recise statutory damages can

be calculated on a classwide basis" because "New York General Business Law § 349(h) provides

for statutory damages of $50 to each class member for each time defendant violated the statute

by a sale."); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 70 (E.D.N.Y. 2015) (same).

### B.    Class Litigation Is Superior To Other Methods Of Adjudication

Finally, a class action is the superior method of adjudication.  Rule 23(b)(3) provides four

factors for the Court's consideration:

> (A) [T]he interest of members of the class in individually
> controlling the prosecution or defense of separate actions; (B) the
> extent and nature of any litigation concerning the controversy
> already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and (D) the difficulties likely to be

24

encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).  All four of these factors favor class treatment here.

It would cost Class members much more to litigate an individual case than they could recover in damages.  Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions."  *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).  The relatively small amount at issue for each Class member renders individual litigation infeasible, but a class action offers the potential for meaningful redress to the Class.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]ndividual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit.") (internal citations omitted)).

## VI.   THE CLASS SHOULD ALSO BE CERTIFIED UNDER RULE 23(b)(2)

Injunctive relief is authorized for Plaintiff's statutory claims under New York's GBL. Thus, Plaintiff also seeks certification of the New York Class pursuant to Fed. R. Civ. P. 23(b)(2), which is appropriate where the defendants "acted … on grounds generally applicable to the class, so that final injunctive relief … is appropriate respecting the class as a whole." Injunctive relief is particularly important in this case, as Cutter Natural poses a safety hazard to unsuspecting consumers seeking protection from mosquito-borne diseases.  "That plaintiffs are seeking substantial monetary damages is of no concern given [that plaintiffs seek] certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012).

## VII.   CONCLUSION

Plaintiff respectfully requests that the Court grant his motion for class certification and appoint Plaintiff as Class Representative and his counsel as Class Counsel.

Dated:  February 19, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Yitzchak Kopel*
          Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            ykopel@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*

26