CERTIFIED TRANSCRIPT

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF NEW YORK
 3
 4   NICHOLAS PARKER, on behalf
     of himself and all others
 5   similarly situated,
               Plaintiffs,
 6
     v.                              Civil Action No.
 7                                   17-cv-5353-GBD
     UNITED INDUSTRIES CORPORATION,
 8            Defendant.
 9                  ~~~~~~~~~~~~~~~~~~
10          Videotaped 30(b)(6) Deposition of
11      DEFENDANT UNITED INDUSTRIES CORPORATION
12           (Witness:  STEVEN SCHWALLIE)
13
14       (Volume I, Non-Confidential Section)
15                    Pages 1 - 33
16                  December 19, 2018
17                     1:18 P.M.
18
19                     Taken at:
20                 Gore/Perry Veritext
21             515 Olive Street, Suite 300
22                 St. Louis, Missouri
23
24                    Reported by:
25            J. Bryan Jordan, CCR-MO
```

Page 2

1  APPEARANCES:
2
3  On behalf of the Plaintiff(s):
4     Bursor & Fisher, P.A., by
5        Yitzchak Kopel, Esq. (Via video)
6        Alec Leslie, Esq.
7        888 7th Avenue
8        New York, NY 10019
9        (646) 837-7150 Phone
10       (212) 989-9163 Fax
11       ykopel@bursor.com
12       aleslie@bursor.com
13
14 On behalf of the Defendant:
15    Tucker & Ellis, LLP, by
16       Ms. Ronie M. Schmelz, Esq.
17       515 South Flower Street
18       Forty-Second Floor
19       Los Angels, CA  90071-2223
20       (213) 430-3375
21       (213) 430-3409 Fax
22       ronie.schmelz@tuckerellis.com
23
24 THE VIDEOGRAPHER:
25    Patrick Hoctor

Page 3

1        TRANSCRIPT INDEX
2
3  APPEARANCES ..............................   2
4
5  INDEX OF EXHIBITS ..........................   4
6
7  HIGHLY CONFIDENTIAL SECTION, SUBJECT TO
8  PROTECTIVE ORDER (up to and including
9  Reporter's Certificate) .................... 34 - 105
10
11 EXAMINATION OF STEVEN SCHWALLIE:
12   BY MR. LESLIE .............................   6
13
14 REPORTER'S CERTIFICATE ...................... 105
15
16 EXHIBIT CUSTODY:
      EXHIBITS RETAINED BY COURT REPORTER
17
18
19
20
21
22
23
24
25

Page 4

1             INDEX OF EXHIBITS
   NUMBER         DESCRIPTION         MARKED
2
   PLAINTIFF'S EXHIBITS MARKED IN VOLUME I,
3  NON-CONFIDENTIAL SECTION:
4  Exhibit 19 -- "Plaintiff's Notice of
         Deposition of Defendant United
5        Industries Corporation," (no Bates
         numbers ........................   14
6
7  Exhibit 20 -- Document Bates stamped 010051
         containing an attachment of a
8        slideshow .......................   33
9
   PLAINTIFF'S EXHIBITS MARKED IN VOLUME II, HIGHLY
10 CONFIDENTIAL SECTION SUBJECT TO PROTECTIVE ORDER:
11 Exhibit 21 -- 7/9/2013 e-mail from Lori
         Sholtz to HG Consumer Services and
12       others; subject, "Cutter FB user
         review (Cutter Natural Insect
13       Repellent)," Bates No. UIC 006709 .. 59
14
   Exhibit 22 -- 8/15/2013 e-mail from Lori
15       Sholtz to HG Consumer Services and
         others; subject, "Cutter website
16       user reviews (CT Natural Insect
         Repellent), Bates No. UIC 006721 ...  64
17
18 Exhibit 23 -- Consumer complaint chart,
         Bates Nos. 100 - 256 ...............  69
19
20 Exhibit 24 -- A two-page e-mail from Sylvie
         A. Molin to David Glendening,
21       bearing Bates stamps UIC 009877 -
         009878 ............................   96
22
23
24
25

Page 5

1       THE VIDEOGRAPHER:  We are now on the record.
2  Please note that the microphones are sensitive and may
3  pick up whispering and private conversations.  Please
4  turn off all cell phones or place them away from the
5  microphones as they can interfere with the deposition
6  audio.  Recording will continue until all parties
7  agree to go off the record.
8       My name is Patrick Hoctor, representing
9  Veritext.  The date today is December 19th, 2018, and
10 the time is approximately 1:18 P.M.  This deposition
11 is being held at Gore Perry Veritext, located at 4515
12 Olive Street, St. Louis, Missouri.  The caption of the
13 case is Nicholas Parker vs. United Industries
14 Corporation, Case Number 17-CV-5353 GBD.  The name of
15 the witness is Steven Schwallie.
16      At this time, the attorneys present in the
17 room and everyone attending remotely will identify
18 themselves and the parties they represent.
19      MR. LESLIE:  Howard Leslie, on behalf of
20 Plaintiff.
21      MS. SCHMELZ:  Ronie Schmelz, on behalf of
22 Defendant.
23      MR. LESLIE:  And I'm joined by phone by
24 Mr. Kopel.
25      THE VIDEOGRAPHER:  Thank you, Counsel.

2 (Pages 2 - 5)

Page 6

1  Our court reporter, Jerry Jordan,
2  representing GorePerry/Veritext, will swear the
3  witness and we can proceed.
4           STEVEN SCHWALLIE,
5  of lawful age, having been first duly sworn to testify
6  the truth, the whole truth, and nothing but the truth
7  in the case aforesaid, deposes and says in reply to
8  oral interrogatories propounded as follows, to-wit:
9           EXAMINATION
10 QUESTIONS BY MR. LESLIE:
11     Q.  Good afternoon, Mr. Schwallie.
12     A.  Hello.
13     Q.  Can you, please, state your name and address
14 for the record?
15     A.  Sure. It's Steven Schwallie. I'm at 16232
16 Bare Branch Court, Wildwood, Missouri, 63005.
17     Q.  Is that your home address, or is that your
18 business address?
19     A.  That's the home address.
20     Q.  Okay, so I introduced myself off the record,
21 but my name is Alec Leslie. I'm a lawyer. I
22 represent Nicholas Parker in this class action titled
23 Parker v. United Industries. As you understand, he's
24 the Plaintiff and is suing United Industries
25 Corporation, so I'm going to be asking you questions

Page 7

1  today in connection with that lawsuit. Do you
2  understand that?
3      A.  Yes.
4      Q.  Do you understand that you are not being
5  sued today?
6      A.  Yes.
7      Q.  Okay. Have you ever sat for a deposition
8  before?
9      A.  No.
10     Q.  Okay. Have you ever been involved in any
11 lawsuits?
12     A.  No.
13     Q.  Okay. Before we continue, I just want to
14 discuss some ground rules for today. Do you
15 understand that you are testifying under oath today?
16     A.  Yes.
17     Q.  Do you understand that you have the same
18 obligation to tell the truth here, today, as you would
19 as if you were testifying in a courtroom before a
20 judge and a jury?
21     A.  Yes.
22     Q.  So it is important that we communicate
23 clearly today, so I'm going to ask you many questions
24 in connection with this Cutter case. If you don't
25 understand a question, please let me know. I will do

Page 8

1  my best to rephrase the question. Is that okay?
2      A.  Yes.
3      Q.  Do you understand that you are being
4  represented here, today?
5      A.  Yes.
6      Q.  And today's deposition is also being
7  videotaped. Do you understand that?
8      A.  Yes.
9      Q.  There is also a court reporter sitting to
10 your left who is transcribing every word that we say;
11 correct?
12     A.  Yes.
13     Q.  Okay, so for the benefit of the court
14 reporter, let's try to speak at a reasonable pace so
15 that he's able to take down our words. Is that okay?
16     A.  Okay.
17     Q.  All right. It is also difficult for the
18 court reporter if we talk over each other, so I will
19 try not to interrupt you when you are giving an
20 answer, and by the same token, I just ask that you let
21 me finish my question before answering. Is that okay?
22     A.  Yes.
23     Q.  Also for the benefit of the court reporter,
24 please try to answer my questions verbally. It's
25 difficult for the court reporter to transcribe bodily

Page 9

1  gestures such as nodding, so please try to use words
2  when answering. Will you do that?
3      A.  Yes.
4      Q.  Okay. Is there any reason that you cannot
5  testify truthfully and accurately today?
6      A.  No.
7      Q.  Are you taking any prescription medications
8  or other drugs that may affect your ability to think,
9  remember, or testify truthfully today?
10     A.  No.
11     Q.  Are you suffering from any mental or
12 physical condition that may affect your ability to
13 remember or testify truthfully today?
14     A.  No.
15     Q.  Have you consumed any alcohol today?
16     A.  No.
17     Q.  Are you seated comfortably?
18     A.  Am I what?
19     Q.  Are you seated comfortably?
20     A.  Yes.
21     Q.  Okay, so how long have you been working at
22 United Industries Corporation?
23     A.  For approximately six months.
24     Q.  And where were you before that?
25     A.  I was with Plano Synergy.

3 (Pages 6 - 9)

Page 14

1 graphics agency to understand the correct placement so
2 that consumers can see visually what the product is.
3     Q.  Understood, and would the same be true with
4 respect to products that don't require EPA approval,
5 you would still be involved in placement, and graphic,
6 and that sort of thing?
7     A.  That's correct, yes.
8     Q.  Okay, understood.
9         MR. LESLIE: I'd like to hand the witness a
10 document from folder 87 titled "Plaintiff's Notice of
11 Deposition of Defendant United Industries
12 Corporation." I ask the court reporter to please mark
13 this as Exhibit 19.
14         (Plaintiff's Exhibit 19
15         marked for identification.)
16 BY MR. LESLIE:
17     Q.  Mr. Schwallie, do you have Exhibit 19?
18     A.  Yes.
19     Q.  Have you seen it before?
20     A.  Yes.
21     Q.  What is it?
22     A.  At--it is a document that talks about what
23 my responsibilities for talking regarding this
24 particular case is.
25     Q.  When did you first see this document?

Page 15

1     A.  I met with Ronie the week before
2 Thanksgiving to talk over the case.
3     Q.  So was Ronie the person who gave you this
4 document?
5     A.  That's correct.
6     Q.  Okay, and do you understand that today, you
7 are testifying on behalf of United Industries
8 Corporation?
9     A.  I do.
10     Q.  Okay, so if you'd look at Exhibit 19, I
11 believe on the third page, it sets forth four separate
12 topics.  I just want to touch on each of them briefly.
13         So number 2 reads, "All research concerning
14 consumer interpretation of the claims, 'insect
15 repellent,' 'the formula for Cutter Natural Insect
16 Repellent...has been tested to ensure it is effective
17 against mosquitoes,' 'keeps mosquitoes away from you
18 and your family for up to two hours,' and 'repels
19 mosquitoes for hours" on the Product.
20         Are you prepared to testify on behalf of
21 United Industries Corporation with respect to this
22 topic?
23     A.  As it relates to the topics I was given,
24 which is labeling, packaging, and marketing of the
25 product.

Page 16

1     Q.  So were you not given topic number 2 in
2 preparation for today?
3     A.  I can speak from a market research
4 standpoint of what was done.  I've reviewed market
5 research that was done and consumer attitudes on that,
6 and I can speak to it from that standpoint.
7     Q.  Understood, so specifically, what did you
8 look at to prepare?  You mentioned some--maybe some
9 documents you had looked at?
10     A.  That's correct, yes.  I reviewed an attitude
11 and usage study.  There was a tracking awareness
12 study, and we met with the Art Department to look at
13 the label and talk the history of that, and we also
14 discussed--
15         MS. SCHMELZ: I'm going to caution the
16 witness, it's a little dicey, and I don't mean to
17 interrupt you, but I want you to tell Counsel what you
18 did to prepare for your deposition.  You can talk
19 about who you met with and the documents you reviewed,
20 but I want to caution you to make sure that you are
21 not revealing an attorney-client communication, so if
22 you have any questions about that--
23     A.  Okay.
24         MS. SCHMELZ: We can take a break so we can
25 clarify it, but go ahead and let him know who you met

Page 17

1 with to prepare for the deposition and what documents
2 you can recall reviewing.
3         THE WITNESS: Okay.
4     A.  (Continuing)  Okay, so--so I met with,
5 again, our art director, the consumer care manager,
6 the team leads of our lead accounts, the brand
7 managers that may or may not have had any history on
8 the product but are with the company today, and our
9 market researcher.
10 BY MR. LESLIE:
11     Q.  Understood, and specifically from a document
12 standpoint, you mentioned attitude usage, tracking
13 awareness studies.  Are those some of the documents
14 that you reviewed--
15     A.  Yes.
16     Q.  --for appearing?  And what did you learn
17 specifically about this product?
18     A.  So in regards--these are, again, consumer
19 documents.  They weren't necessarily specific to
20 Cutter Naturals.  It an impetus of what drives us to
21 look at a consumer need, and of the documents I
22 observed, there was discussion of a need for DEET
23 alternatives and different chemicals than what a
24 typical repellent might contain.
25     Q.  Do you have any understanding why there

5 (Pages 14 - 17)

Page 18

1  would be a need for DEET alternatives?
2     A.  Yes.  I think for any consumer, there's
3  interest in learning about new chemicals that might
4  have similar results with--without the negatives.
5  DEET is known to smell of a certain smell and to be
6  very sticky.  Those types of pinpoints are something
7  that we would want to learn about and address through
8  new formulations.
9     Q.  Understood.
10        I'm handing to the court reporter to hand to
11 the witness a document previously marked as
12 Plaintiff's Exhibit 10.
13        (Witness peruses Exhibit 10.)
14        I'm sorry, I want to just back up for one
15 moment.  You had mentioned before about the
16 learned--about you've, you've learned a need, a need
17 for a DEET alternative by looking at some of the
18 documents you mentioned, and so can you tell me what
19 else you learned about the product besides that?
20    A.  Again, it's not about the product
21 specificity.  It's about what consumers are saying
22 what they like and dislike about their current
23 repellents.  For me, that was really the main
24 take-away from each of the documents.  The tracking
25 study shows growth of competitive brands that also

Page 19

1  contain DEET alternatives.  The awareness study shows
2  attitudes of consumers towards DEET and the benefits
3  and drawbacks that that might require that would then,
4  again, help us to develop better products for them.
5     Q.  So the document in front of you is Bates
6  labeled 50 through 52.  First of all, do you have
7  Exhibit 10 in front of you?
8     A.  I do.
9     Q.  Have you seen it before?
10    A.  I have.
11    Q.  What is it?
12    A.  This is the front label, and it looks like
13 the following pages are the complete label of the--one
14 of the products.
15    Q.  And what about on page 52?
16    A.  So this is also another label.  I think this
17 one might be the aerosol, but I'm not sure.
18    Q.  Okay.  So what is--what is this product?
19    A.  This product is a mosquito repellent.
20    Q.  So would it be accurate to say that its core
21 purpose or function is to repel mosquitoes?
22    A.  That's correct.
23    Q.  If, hypothetically, this product did not
24 repel mosquitoes, would there be any reason to buy it?
25        MS. SCHMELZ:  Object to form; calls for

Page 20

1  speculation, lacks foundation.
2  BY MR. LESLIE:
3     Q.  (Continuing) You can answer.
4     A.  Um, the purpose is to repel mosquitoes, so
5  if it did not repel mosquitoes, no, it would not
6  exist.
7     Q.  So looking at page 50, can you tell me what
8  the active ingredients are?
9     A.  The active ingredients are geraniol, soybean
10 oil, sodium laurel sulfate, potassium sorbate.
11    Q.  And looking at 52, which appears to be the
12 aerosol version of the same product, can you tell me
13 what those active ingredients are?
14    A.  Geraniol, soybean oil.
15    Q.  I'd like to direct your attention, and I
16 apologize because it's printed double-sided, and I'm
17 going to be going back and forth between 50 and 52,
18 but I'd like to direct your attention to page 50.  In
19 the center, we see an orange rectangle.  Inside of
20 that rectangle, we have the words "Repels mosquitoes
21 for hours" and "Repels mosquitoes" on bold lettering.
22 Do you see that?
23    A.  Yes.
24    Q.  Is that one of the products it claims?
25        MS. SCHMELZ:  Object to form.

Page 21

1     A.  It is a claim.
2  BY MR. LESLIE:
3     Q.  Is it one of the product's important claims?
4        MS. SCHMELZ:  Object to form; calls for
5  speculation.
6  BY MR. LESLIE:
7     Q.  You may answer.
8     A.  It is--it is one of the claims of why the
9  product exists.
10    Q.  Do you see how the claim is in bold
11 lettering, is in an orange box, and is right in the
12 center of the label?
13    A.  Yes.
14    Q.  Do you agree--sorry, do you agree that at
15 least someone thought it was important to put "Repels
16 mosquitoes for hours" on the packaging, since it's
17 front and center on the product labeling?
18        MS. SCHMELZ:  Object to form.  Go ahead.
19    A.  As a mosquito repellent, yes.  It is.
20 BY MR. LESLIE:
21    Q.  Are--sorry, are claims on the packaging
22 meant to be communicated to consumers or potential
23 consumers of the product?
24    A.  Yes.
25    Q.  With respect to this "Repels mosquitoes for

6 (Pages 18 - 21)

Page 26

1  knowing that the attitude and usage study that I saw
2  lists different options, different hours, different
3  ways of saying it, that that was probably sufficient
4  to ask the question of R&D what types of claims could
5  we achieve in a DEET-free formula.
6  BY MR. LESLIE:
7      Q.  Do you know if United Industries Corporation
8  has ever interviewed consumers about how they would
9  interpret the "Repels mosquitoes for hours" claim?
10     A.  I'm not aware.
11     Q.  How about a focus group?
12     A.  I don't remember seeing anything.
13     Q.  Have you spoken to a consumer about what his
14  or her understanding of that claim would be?
15     A.  No.
16     Q.  Do you know when Cutter Natural Insect
17  Repellent first launched?
18     A.  I think it was 2011.
19     Q.  And do you know when the aerosol version
20  first launched?
21     A.  It was a year or two later.
22     Q.  Going back to the "Repels mosquitoes for
23  hours" claim, was that claim on the products at all
24  times from at launch date, which you mentioned was
25  2011, until present?

Page 27

1      A.  Yes.
2      Q.  Directly underneath it, we see "Protection
3  for the entire family."  Was that claim on Cutter
4  Natural Insect Repellent from its launch date to the
5  present?
6      A.  Yes.
7      Q.  Directly underneath that, we see it says,
8  "DEET free."  Was that claim on the product from its
9  launch date in 2011 to the present?
10     A.  Yes.
11     Q.  And for all three of those claims, is the
12  same true with respect to the aerosol label, as well?
13     A.  Yes.
14     Q.  So every customer who purchased Cutter
15  Natural Insect Repellant was exposed to these claims;
16  correct?
17     A.  Yes.
18     Q.  Okay, and is that true no matter where it
19  was sold?  For instance, whether someone bought it in
20  New York, or California, or Arkansas,--
21     A.  Yes.
22     Q.  --it would not matter; correct?
23     A.  Yes.
24     Q.  Understood, and so on page 52, with respect
25  to the "Repels mosquitoes for hours" claim, the

Page 28

1  "Protection for the entire family" claim, and the
2  "DEET-free" claim, those claims have also been on the
3  aerosol packaging since its launch; correct?
4      A.  Yes.
5      Q.  I'd like to direct your attention to page 51
6  of the packaging.  At the very top, we see the
7  representation, "Cutter Natural is a line of insect
8  repellants that offer protection for the entire
9  family.  The formula for Cutter Natural Insect
10 Repellent, which includes a natural active ingredient,
11 has been tested to ensure it is effective against
12 mosquitoes.  Cutter Natural -- repelling insects the
13 natural way."  Do you see that?
14     A.  Yes.
15     Q.  From Cutter Natural's launch date to the
16 present, has that claim appeared on the back of the
17 product's labeling?
18     A.  Yes.
19     Q.  And is that true with respect to the aerosol
20 product, as well?
21     A.  Yes.
22     Q.  On 51, directly below the statement that I
23 just read, it says, "Cutter Natural Insect Repellent
24 keeps mosquitoes away from you and your family for up
25 to two hours."  Has that claim appeared on the back

Page 29

1  labeling of Cutter Natural Insect Repellant from its
2  launch date to the present?
3      A.  Yes.
4      Q.  And turning to page 52, same question with
5  respect to the aerosol product.  Has it appeared on
6  the product's labeling from its launch date until the
7  present?
8      A.  Yes.
9      Q.  I want to focus your attention to the
10 directions for use.  Do you know if the directions
11 have ever changed from its launch date to the present?
12     A.  I do not believe there's been any change in
13 the directions for use.
14     Q.  Okay, so in that directions for use
15 paragraph, there is a sentence that says, "Reapply
16 every two hours or as needed."  Based on your previous
17 answer, is it correct to say that that sentence,
18 "Reapply every two hours or as needed," has appeared
19 on the product's labeling from the launch date at the
20 present?
21     A.  Yes.
22     Q.  And is the same true with respect to the
23 aerosol product?
24     A.  Yes.
25         (Sound of construction noise outside

8 (Pages 26 - 29)

| Page 30 | Page 32 |
|---|---|
| 1   the building.) <br> 2       MR. LESLIE: Sorry about the noise. <br> 3   BY MR. LESLIE: <br> 4   Q.   Can you think of any significant changes <br> 5   that occurred in Cutter Natural Insect Repellent's <br> 6   labeling from its launch date to the present? <br> 7   A.   The only changes that were made were in <br> 8   terms of updating the look based on current Cutter <br> 9   design.  There were no copy changes. <br> 10  Q.   And what does it mean to be a copy change? <br> 11  A.   So any kind of the copy of the words. <br> 12  Q.   So the words stayed the same, they may have <br> 13  been altered slightly in their appearance?  We're <br> 14  talking the same words staying on the labeling from-- <br> 15  A.   Yes. <br> 16  Q.   --from its launching to the present? <br> 17       Okay? <br> 18       Speaking generally, what is the purpose of <br> 19  the claims made on a product's packaging? <br> 20       MS. SCHMELZ: Object to form; calls for <br> 21  speculation, lacks foundation.  Go ahead. <br> 22  A.   The claim on a package helps the consumer <br> 23  understand the principal benefits of the product and <br> 24  why you might be interested in purchasing or using it. <br> 25  Q.   Would one purpose of claims made on the | 1   "Protection for the entire family"? <br> 2       MS. SCHMELZ: Object to form. <br> 3   A.   It's available for use for your entire <br> 4   family. <br> 5   BY MR. LESLIE: <br> 6   Q.   What about "DEET free"? <br> 7       MS. SCHMELZ: Same objection. <br> 8   A.   That is an alternative ingredient to DEET, <br> 9   competing alternative to DEET. <br> 10  BY MR. LESLIE: <br> 11  Q.   What consumer--what would--sorry. <br> 12       Did you--sorry, when I say "you," did United <br> 13  Industries Corporation conduct any research into what <br> 14  the claim, "Keeps mosquitoes away from you and your <br> 15  family for up to two hours," would mean? <br> 16  A.   So in that direct verbiage, I don't know, <br> 17  but in general, "repellent for up to two hours," <br> 18  whatever the phrase you said, that yes, that was <br> 19  researched in some of the previous research I've <br> 20  talked about. <br> 21  Q.   Are you referring to the NU studies and-- <br> 22  A.   Correct; attitude and usage tracking, some <br> 23  of the base general studies, we want to find out about <br> 24  how consumers think. <br> 25       MR. LESLIE: I am handing to the court |
| Page 31 | Page 33 |
| 1   packaging of a product be to increase the sales of a <br> 2   product? <br> 3   A.   Yes. <br> 4   Q.   How about to increase the market price of a <br> 5   product? <br> 6       MS. SCHMELZ: Object to form; calls for <br> 7   speculation; lacks foundation. <br> 8   A.   Market price isn't really--I guess repeat <br> 9   the question again. <br> 10  BY MR. LESLIE: <br> 11  Q.   Sure.  Could one purpose of claims made on a <br> 12  product's packaging be to increase the market price of <br> 13  the product? <br> 14       MS. SCHMELZ: Object to form; calls for <br> 15  speculation, lacks foundation. <br> 16  A.   So a product is designed to answer a need. <br> 17  The price placed on it is the value the consumer gets <br> 18  out of it, so it's designing the product to answer <br> 19  that need is our priority, and if we've done our job, <br> 20  there's a demand for it, and they see value in it, <br> 21  which determines the price: <br> 22  BY MR. LESLIE: <br> 23  Q.   Sorry, I want to go back to page 50 of the <br> 24  document in front of you.  What--what is the consumer <br> 25  interpretation, to your understanding, for the claim, | 1   reporter a document Bates stamped--Bates stamped <br> 2   010051 and contains an attachment of a slideshow.  I <br> 3   ask that the court reporter please mark this as <br> 4   Exhibit 20. <br> 5           (Plaintiff's Exhibit 20 <br> 6           marked for identification.) <br> 7       MS. SCHMELZ: I'm going to ask, just for <br> 8   ease, so we don't have to keep going back and forth <br> 9   but now that we're introducing documents, that we <br> 10  designate this portion forward as highly confidential, <br> 11  subject to protective order, in accordance with the <br> 12  protective order entered in the case. <br> 13      MR. LESLIE: Yeah, that's fine. <br> 14          (THE REMAINDER OF THE DEPOSITION, BEING <br> 15          DESIGNATED AS HIGHLY CONFIDENTIAL, <br> 16          SUBJECT TO PROTECTIVE ORDER, IS BOUND <br> 17          SEPARATELY WITH SEQUENTIAL PAGE <br> 18          NUMBERING.) <br> 19 <br> 20 <br> 21 <br> 22 <br> 23 <br> 24 <br> 25 |

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 108

1       DEPOSITION REVIEW
        CERTIFICATION OF WITNESS
2
        ASSIGNMENT REFERENCE NO: 3176806
3       CASE NAME: Parker, Nicholas v. United Industries Corporation
        DATE OF DEPOSITION: 12/19/2018
4       WITNESS' NAME: Steven Schwallie
5            In accordance with the Rules of Civil
        Procedure, I have read the entire transcript of
6       my testimony or it has been read to me.
7            I have listed my changes on the attached
        Errata Sheet, listing page and line numbers as
8       well as the reason(s) for the change(s).
9            I request that these changes be entered
        as part of the record of my testimony.
10
             I have executed the Errata Sheet, as well
11      as this Certificate, and request and authorize
        that both be appended to the transcript of my
12      testimony and be incorporated therein.
13      _1/28/19_____     _Stephen Schwallie_____
        Date                   ~~Steven~~ Schwallie
14                             Stephen
             Sworn to and subscribed before me, a
15      Notary Public in and for the State and County,
        the referenced witness did personally appear
16      and acknowledge that:
17           They have read the transcript;
             They have listed all of their corrections
18           in the appended Errata Sheet;
             They signed the foregoing Sworn
19           Statement; and
             Their execution of this Statement is of
20           their free act and deed.
21           I have affixed my name and official seal
22      this _28_ day of _January_____, 20_19_.
23      _Christina M Evans_____
             Notary Public
24
        _Aug 29, 2020_            CHRISTINA M. EVANS
25      Commission Expiration Date   Notary Public - Notary Seal
                                     State of Missouri, Jefferson County
                                     Commission Number 16406265
                                     My Commission Expires Aug 29, 2020

Veritext Legal Solutions
www.veritext.com                                    888-391-3376

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 109

1  ERRATA SHEET
   VERITEXT LEGAL SOLUTIONS MIDWEST
2  ASSIGNMENT NO: 12/19/2018
3  PAGE/LINE(S) /        CHANGE        /REASON
4  Vol I

My name is "Stephen", not "Steven" - pages: 1,3,5,6,108 and errata sheet

Page 6, Line 16 - address is "Bear Branch" not "Bare Branch"

Page 11, line 14 - Troy's name is "Duecker" not "Dicker"

Page 24, line 17 - "basic" not "Bates"

Page 32, line 21 - "A&U" not "NU"

Vol II

**CONFIDENTIAL PORTION OF TESTIMONY**

1/28/19                          Stephen Schwallie (signature)
20  Date                         ~~Steven~~ Schwallie
                                 Stephen
21  SUBSCRIBED AND SWORN TO BEFORE ME THIS  28
22  DAY OF  January              , 20 19   .
23                Christa M Evans
                  Notary Public

                                 CHRISTINA M. EVANS
                                 Notary Public - Notary Seal
                                 State of Missouri, Jefferson County
    Aug 29, 2020                 Commission Number 16406265
                                 My Commission Expires Aug 29, 2020
25  Commission Expiration Date

# EXHIBIT A
# (remaining pages have been filed under seal)