# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS PARKER, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br><br>UNITED INDUSTRIES CORPORATION,<br><br>　　　　　　　　　　Defendant. | Civil Action No. 1:17-cv-05353-GBD-HBP |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL

Dated: May 3, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
　　　ykopel@bursor.com
　　　aleslie@bursor.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE(S)**

I. PLAINTIFF WILL ESTABLISH THROUGH COMMON EVIDENCE THAT DEFENDANT'S REPRESENTATIONS ARE FALSE AND MISLEADING .................................................................................................. 1

    A. Cutter Natural is Ineffective For All Class Members ............................................ 1

    B. The Bio Research Tests Do Not Show Variations In Cutter Natural's Efficacy ................................................................................................ 4

    C. Defendant's Purported Evidence Of Satisfied Consumers Is Inadmissible And Irrelevant ................................................................................ 4

    D. The Meaning Of Uniform Representations Is An Issue Common To The Classes ............................................................................................... 5

II. PLAINTIFF NEVER CHANGED HIS THEORY OF THE CASE ................................... 6

III. DEFENDANT WAIVED ANY PERSONAL JURISIDCTION ARGUMENT .............................................................................................................. 7

IV. *BRISTOL-MYERS SQUIBB* ("*BMS*") DOES NOT SUPPORT DISMISSAL OF THE NON-NEW YORK ABSENT CLASS MEMBERS' CLAIMS ................................................................................................ 9

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.*,
   719 F.3d 270 (3d Cir. 2013) ........................................................................................ 9

*Alvarez v. Nbty, Inc.*,
   2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ................................................................ 8

*Am. Health & Res. Ctr., LTD v. Promologics, Inc.*,
   2018 WL 3474444 (N.D. Ill. July 19, 2018) ................................................................ 8

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ...................................................................................................... 6

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) .................................................................................... 3

*Braver v. Northstar Alarm Servs., LLC*,
   2018 WL 6929590 (W.D. Okla. Oct. 15, 2018) ......................................................... 10

*Brotz v. Simm Assocs., Inc.*,
   2018 WL 4963692 (M.D. Fla. Oct. 15, 2018) ............................................................ 10

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*,
   2018 WL 1377608 (E.D. La. Mar. 19, 2018) ............................................................ 10

*Charvat v. Shampan Lamport LLC*,
   2018 WL 6732870 (S.D. Ohio Oct. 25, 2018) ............................................................ 8

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   2015 WL 4002468 (S.D.N.Y. July 1, 2015) ................................................................ 5

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   836 F.3d 153 (2d Cir. 2016) ......................................................................................... 5

*Datskow v. Teledyne, Inc., Continental Products Div.*,
   899 F.2d 1298 (2d Cir. 1990) ....................................................................................... 8

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) .................................................................................. 3

*DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*,
   2005 WL 2848939 (S.D.N.Y. Oct. 28, 2005) .............................................................. 8

*Feller v. Transamerica Life Ins. Co.*,
   2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ........................................................... 10

*Fitzhenry–Russell v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) .................................................................. 9

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ..................................................................... 6

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*,
  353 F. Supp. 3d 678 (M.D. Tenn. 2018) ....................................................................... 10

*In re Chinese–Manufactured Drywall Prods. Liability Litig.*,
  2017 WL 5971622 (E.D. La. Nov. 30, 2017) .............................................................. 9, 10

*In re Morning Song Bird Food Litig.*,
  2018 WL 1382746 (S.D. Cal. Mar. 19, 2018) ................................................................. 10

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................ 2, 6

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ...................................................................................................... 7

*Knotts v. Nissan N. Am., Inc.*,
  346 F. Supp. 3d 1310 (D. Minn. 2018) .......................................................................... 10

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................................. 2, 3

*LaVigne v. First Cmty. Bancshares, Inc.*,
  2019 WL 1075600 (D.N.M. Mar. 7, 2019) ..................................................................... 10

*Laydon v. Mizuho Bank, Ltd.*,
  2015 WL 1499185 (S.D.N.Y. Mar. 31, 2015) .................................................................. 7

*Molock v. Whole Foods Mkt., Inc.*,
  297 F. Supp. 3d 114 (D.D.C. 2018) ................................................................................ 9

*Pagan v. Abbott Laboratories, Inc.*,
  287 F.R.D. 139 (E.D.N.Y. 2012) .................................................................................... 3

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) .......................................................................................... 3

*Sanchez v. Launch Tech. Workforce Sols., LLC*,
  297 F. Supp. 3d 1360 (N.D. Ga. 2018) .......................................................................... 10

*Santos v. CarMax Bus. Servs., LLC*,
  2018 WL 7916823 (N.D. Cal. May 8, 2018) .................................................................. 10

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................................................... 8

*Swamy v. Title Source, Inc.*,
   2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) ...................................................................... 10

*Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*,
   2019 WL 266299 (E.D. Mo. Jan. 18, 2019) .......................................................................... 10

*U.S. v. Ciccone*,
   219 F.3d 1078 (9th Cir. 2000) ................................................................................................ 5

*United States v. Elliott*,
   62 F.3d 1304 (11th Cir. 1996) ................................................................................................ 5

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) .............................................................................................. 3

*Weisheit v. Rosenberg & Assocs., LLC*,
   2018 WL 1942196 (D. Md. Apr. 25, 2018) .......................................................................... 10

**RULES**

Fed. R. Civ. P. 12(h)(1)(B) ............................................................................................................. 7

I.  **PLAINTIFF WILL ESTABLISH THROUGH COMMON EVIDENCE THAT DEFENDANT'S REPRESENTATIONS ARE FALSE AND MISLEADING**

Defendant argues that typicality and predominance fail because "the ability of Cutter Natural … to be effective on any individual will be variable," given that "some people, more than others, attract mosquitoes and are prone to bites." Opp. at 9-10. That is wrong.

   A.  **Cutter Natural is Ineffective For All Class Members**

Defendant's argument that Cutter Natural works differently for different people is defied by the evidence in this case. As Plaintiff's expert, Dr. Gordon, explained:

> Ultimately, the data is clear in this case – <u>every test properly conducted on this product shows that it provides no meaningful protection to *anyone*</u>. The fact that people may naturally vary in their attractiveness to mosquitoes does not mean that this product varies in its lack of effectiveness in repelling mosquitoes. It simply means that certain people will be less attractive – with or without this ineffective repellent.

Kopel Decl. Ex. 6, Gordon Rebuttal ¶ 14 (underlining added). These conclusions were based on testing against multiple species of mosquitoes on a representative population of subjects. And the product failed to provide any meaningful amount of protection – against any mosquito species, for any person, and in any of the tests, as described in Plaintiff's moving brief § II.C. Each of these tests showed the same thing – Cutter Natural does not work for anyone, period.

Defendant suggests that people can sometimes get bites even when using effective repellent, and that the subjects in Dr. Gordon's tests may have just been more prone to mosquito bites. Nonsense. Dr. Gordon conducted arm-in-cage ("AIC") testing, the sort of testing described by Defendant's expert as "the most universally conducted test" to "evaluate personal repellents." Donahue Report ¶¶ 7-9. He tested the same panel of subjects with a DEET product and with Cutter Natural. The DEET product showed protection times ranging from 120 to 360 minutes, for a mean protection time of 245 minutes. By contrast, <u>Cutter Natural had a protection</u>

1

time of zero for every single participant (for a mean protection time of zero). A second set of AIC tests against another species of mosquito showed a mean protection time for DEET of 285 minutes, and for Cutter Natural of 2.5 minutes. *See* Gordon Report (ECF No. 47) ¶ 33. This is not a case about something that works differently for different people. It is about a fake product that does not work for anyone.

This common evidence shows that Cutter Natural is ineffective as to all class members and provides "hours of protection" to nobody. Defendant has not challenged the admissibility of this evidence under Rule 703, and its expert, Dr. Donahue, has *never* stated that the studies Dr. Gordon relied upon were unreliable. Rather, Dr. Donahue credits Defendant's studies with showing that Cutter Natural can *sometimes* provide *certain* individuals with *some* level of protection, while Dr. Gordon has stated that those studies are "flawed and unreliable." Gordon Decl. § VIII.C.

Gordon is right and Donahue is wrong, for the reasons explained in Section II.D of Plaintiff's moving brief. But this disagreement need not be resolved here. Case law makes clear that where (as here) a plaintiff's theory of liability is that a product is ineffective across the board, arguments that it may have worked for some class members go only to the merits, and do not prevent certification. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) ("Defendants' arguments that the products worked for some individual class members goes to the proof of the merits of plaintiffs' claims. Any argument that challenges the merits of plaintiffs' allegations about the uniform inefficacy of [EZ Seed] has no bearing on the Rule 23 predominance inquiry."); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 549 (E.D.N.Y. 2017) ("The question of whether the products do not disintegrate for some individuals goes solely to the merits; it has no relevance to the class certification issue.") (internal quotations omitted);

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 519 (6th Cir. 2015) ("[U]nder Plaintiffs' theory of liability, P & G's claim that Align works for some individuals goes solely to the merits; it has no relevance to the class certification issue."); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for some individual class members goes to the proof of the merits of Plaintiff's claim, not to the common question as to the overall efficacy of the product.").

Defendant's cited authority on this point is inapposite. This is what another court in this Circuit said about *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013):

> [In *Vaccariello*,] the court found that individual issues predominated in a putative class of purchasers of satellite radio service who alleged deception in the automatic renewal of their subscription. Divining which consumers suffered no injury (because they actually wanted their services renewed) meant that individualized inquiries would trump common ones.
>
> *Vaccariello* is inapposite. Unlike that case, where some consumers received the service they wanted, in the instant case either all consumers purchased "flushable" wipes that were, in fact, "flushable," or none did.

*Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015). Here too, unlike in *Vaccariello*, every purchaser of Cutter Natural wanted the same thing—a product that conforms with Cutter Natural's labeling. No individual inquiries are required.

Defendant's reliance on *Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139 (E.D.N.Y. 2012) fares no better. In *Pagan*, the plaintiffs alleged the infant formula class members bought "contained beetle parts," when in reality, "less than 1% of all recalled Similac were even contaminated with beetle parts." *Id.* at 149. Here, to the contrary, *all* class members were equally harmed by their purchase of fake insect repellent. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 532 (E.D.N.Y. 2017) ("The instant case is distinct from cases like … *Pagan*"

3

because "[h]ere, by contrast, the injury is the price premium on every product sold, not the purchase of some defective products sold among many without defect.").

B.  **The Bio Research Tests Do Not Show Variations In Cutter Natural's Efficacy**

Defendant's expert claims ████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Donahue Report ¶ 38. But as Dr. Gordon explains, this was incorrect:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Gordon Rebuttal Report ¶¶ 9-10. ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

C.  **Defendant's Purported Evidence Of Satisfied Consumers Is Inadmissible And Irrelevant**

Defendant attempts to proffer evidence of supposedly satisfied consumers in (1) declarations from two purported consumers of Cutter Natural, (2) online, anonymous reviews

from purported consumers of Cutter Natural, and (3) a purported "paucity of consumers reporting dissatisfaction with Cutter Natural." Opp. at 17. All of these hold no weight.

As set forth in detail in Plaintiff's concurrently-filed Motion to Strike, the declarations and anonymous internet reviews are inadmissible and irrelevant. *See, e.g.*, *U.S. v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000) ("[I]t is not an abuse of discretion to exclude" evidence of the "uninformed opinion of the victims" of an alleged fraud); *accord United States v. Elliott*, 62 F.3d 1304, 1308 (11th Cir. 1996), *amended by* 82 F.3d 989 (11th Cir. 1996) (trial court was correct to exclude testimonials of "satisfied" customers because proof of fraud "lies in the substance of [the defendant's] misrepresentations," not the victims' subjective perceptions).

Finally, Defendant's "paucity of consumers reporting dissatisfaction" argument is inaccurate and makes no sense. There were so many complaints that ABC News contacted Defendant about them. *See* Moving Brief § II.E.2. Moreover, even if there had been few complaints, that would still not be evidence of satisfied consumers. Most economically rational people do not take time to complain about a $5 product. They throw it out and replace it with a product that actually works. *See* Weir Decl. ¶¶ 36-40. Defendant's argument is arbitrary. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 4002468, at *21 (S.D.N.Y. July 1, 2015) *aff'd* 836 F.3d 153 (2d Cir. 2016) ("[T]he Court does not agree with SPD that the small number of complaints demonstrates an absence of confusion because many deceived consumers may not even know about the care line or may not be inclined to call it.").

### D. The Meaning Of Uniform Representations Is An Issue Common To The Classes

Defendant complains of Plaintiff's purported "failure to advance any evidence" of what a "reasonable consumer's understanding of the allegedly deceptive representations" is. Opp. at 21. But this (meritless) argument is inappropriate at the class certification stage, where Plaintiffs

need only show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). Here, Defendant agrees that the reasonable consumer standard, which is an objective standard, applies. *See* Opp. at 21 ("A reasonable consumer's understanding of the allegedly deceptive representations is a key component of determining whether a misrepresentation is fraudulent or 'material.'"). And whether a representation is "likely to mislead a reasonable consumer acting reasonably under the circumstances … 'is a question common to all members of the class.'" *EZ Seed*, 304 F.R.D. at 409 (quoting *Amgen*, 568 U.S. at 459). Moreover, it is well within the purview of a jury to conclude that a reasonable consumer's expectations have been scuttled where a mosquito repellent does not actually repel mosquitoes. *See Hart v. BHH, LLC*, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017) ("There is no other way a reasonable consumer could have interpreted the phrase 'repel pests' other than to believe that purchase and use of such product would in fact drive out pests.").

## II. PLAINTIFF NEVER CHANGED HIS THEORY OF THE CASE

Defendant argues that because Mr. Weir submitted an alternative damages model to be used if the factfinder determines partial efficacy exists, that it "disconnects Mr. Weir's damages model from Plaintiff's theory of the case." Opp. at 23. That is wrong. Plaintiff's complaint alleges that each of his claims are based on the fact that the "repels mosquitoes for hours" claim is a "misrepresentation." *See* Complaint (ECF No. 1) ¶¶ 27, 34, 40, 44, 49. Therefore, if Cutter Natural does not provide multiple hours of protection, the representation is false, as Defendant's own scientist acknowledged. *See* 2/19/19 Kopel Decl. (ECF No. 48) Ex. 2, Wood Dep. at 42:4-43:4 ("Q: Now, the word 'hours' has an 's' at the end of it correct? A: Yes. Q: Would you agree with me that … indicates multiple as in two or more hours? A: Yes."). Moreover, that Complaint repeatedly acknowledges that this representation would also be false and misleading

6

if an amount less than two hours of efficacy was shown. *See* Complaint ¶ 5 ("During the Consumer Reports testing, the subjects were bitten by both species of mosquitos within one hour after application of Cutter Natural. This is obviously a stark difference from Defendant's representation that Cutter Natural 'repels mosquitoes for hours.'"); *Id.* ¶ 10 ("Plaintiff would not have purchased Cutter Natural at all, or <u>would have only been willing to pay a substantially reduced price for Cutter Natural</u>, had he known that these representations were false and misleading.") (emphasis added). Plaintiff alleged that the product is "ineffective and worthless" because the scientific evidence shows just that. But this does not mean that Defendant deserves a get-out-of-jail-free card if it convinces a jury that the product works for 30 minutes (instead of zero) when it explicitly promised consumers that Cutter Natural "repels mosquitoes for hours."[1]

### III. DEFENDANT WAIVED ANY PERSONAL JURISDICTION ARGUMENT

Defendant argues for the first time in its class certification opposition, more than a year and a half after this action was filed, that the Court lacks jurisdiction over certain absent class members. Opp. at 23-25. But this defense has long ago been waived. *See Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1499185, at *7 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) ("[T]he Non-Stipulating Defendants waived their personal jurisdiction defenses by failing to promptly assert them after *Daimler* was decided."). Federal Rule of Civil Procedure 12(h)(1)(B) is clear— "[a] defense of lack of jurisdiction over the person ... is waived if not timely raised in the answer or a

---

[1] ██████████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████████ But, as explained in Plaintiff's accompanying motion to strike, this opinion is based upon inadmissible and unreliable data, which fails to reveal the existence of even a single consumer that was not defrauded. *See generally,* Plaintiff's Motion to Strike. This argument should therefore be disregarded as baseless.

responsive pleading." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982).

Here, Defendant did not challenge personal jurisdiction by filing a motion to dismiss, nor did it even raise it as an affirmative defense in its Answer, which it filed several months <u>after</u> *Bristol-Myers Squibb* was decided. *See* ECF No. 13. That alone is enough to consider Defendant's personal jurisdiction argument waived. *See DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, 2005 WL 2848939, at *6 (S.D.N.Y. Oct. 28, 2005) (Pitman, J.) ("A delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where … the defense was asserted in a timely answer.") (citing *Datskow v. Teledyne, Inc., Continental Products Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990)). But here, Defendant went even further. Defendant served written discovery on Plaintiff and took his deposition and completed fact discovery in this case without making a peep about this point. Several other courts have rejected late personal jurisdiction arguments based on *Bristol-Myers* under these circumstances. *See Am. Health & Res. Ctr., LTD v. Promologics, Inc.*, 2018 WL 3474444, at *3 (N.D. Ill. July 19, 2018) ("[I]t is not clear that pre-*Bristol-Myers* authority precluded Defendants from raising their personal jurisdiction challenge when they filed their first responsive pleadings . . . meaning Defendants should not be excused for failing to do so."); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 854 (N.D. Cal. 2018) ("Defendant did not challenge personal jurisdiction over the claims of the original Plaintiffs at the first opportunity. … Accordingly, the argument was waived."); *Alvarez v. Nbty, Inc.*, 2017 WL 6059159, at *4, n.2 (S.D. Cal. Dec. 6, 2017) (holding that personal jurisdiction defense was previously available because *Bristol–Myers* did not overturn controlling precedent); *Charvat v. Shampan Lamport LLC*, 2018 WL 6732870 (S.D. Ohio Oct. 25, 2018) ("For the reasons explained above, the Court therefore finds that Defendant

has waived its right to amend its affirmative defenses to assert an affirmative personal jurisdiction defense with respect to unnamed out-of-state Plaintiffs.").

## IV. *BRISTOL-MYERS SQUIBB* ("*BMS*") DOES NOT SUPPORT DISMISSAL OF THE NON-NEW YORK ABSENT CLASS MEMBERS' CLAIMS

Even if the Court finds that Defendant did not waive its personal jurisdiction defense, *BMS* would still not support dismissal of the non-New York absent class members' claims because *BMS* did not address a class action and did not change the law on class actions. *See Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018) ("*Bristol–Myers* does not apply to class actions. … the court is persuaded by the analysis of the few courts that have squarely addressed the issue."). Importantly, there are "material distinctions between a class action and a mass tort action." *Id.* Whereas, "in a mass tort action, each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, 'one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint.'" *Id.* (quoting *Fitzhenry–Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017)).[2]

"[U]nlike a mass tort action, 'for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23—numerosity, commonality, typicality, adequacy of representation, predominance and superiority.'" *Molock*, 297 F. Supp. 3d at 126 (quoting *In re Chinese–Manufactured Drywall Prods. Liability Litig.*, 2017 WL 5971622, at *14 (E.D. La. Nov. 30, 2017)). "These additional elements of a class action supply due process safeguards not applicable in the mass tort context. In light of these key distinctions … *Bristol–Myers* does not require a court to assess personal jurisdiction with

---

[2] *See also Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("[U]nlike a class action, a mass action has no representative or absent members because all plaintiffs in a mass action are named in the complaint.").

9

regard to all non-resident putative class members." *Molock*, 297 F. Supp. 3d at 126-27.

That is why dozens of courts have recognized that *BMS* does not apply to class-actions. *See, e.g.*, *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1369 (N.D. Ga. 2018) ("*Bristol–Myers* … does not apply to federal class actions"); *In re Morning Song Bird Food Litig.*, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ("This Court declines to extend the holding of *Bristol-Myers* to this case involving a class action."); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) ("the Court is not persuaded to extend BMS to the class action context"); *LaVigne v. First Cmty. Bancshares, Inc.*, 2019 WL 1075600, at *4 (D.N.M. Mar. 7, 2019) ("Bristol-Myers does not apply to this class action.").[3]

"Under Defendant's premise, *BMS* would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States – in clear violation of congressional efforts at efficiency in the federal courts." *In re Chinese Drywall*, 2017 WL 5971622, at *19; *see also Knotts*, 346 F. Supp. 3d at 1335 ("The efficient administration of class actions would be compromised by requiring the Court to make personal jurisdiction determinations for every named and potential unnamed plaintiff … Such an unwieldy process would defeat the purpose of the class action mechanism."). Clearly, that cannot be correct.

---

[3] *See also Weisheit v. Rosenberg & Assocs., LLC*, 2018 WL 1942196, at *5 (D. Md. Apr. 25, 2018); *Santos v. CarMax Bus. Servs.*, LLC, 2018 WL 7916823, at *5 (N.D. Cal. May 8, 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*, 353 F. Supp. 3d 678, 692 (M.D. Tenn. 2018); *Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*, 2019 WL 266299, at *3 (E.D. Mo. Jan. 18, 2019); *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017); *Brotz v. Simm Assocs., Inc.*, 2018 WL 4963692, at *3 (M.D. Fla. Oct. 15, 2018); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1335 (D. Minn. 2018); *Braver v. Northstar Alarm Servs., LLC*, 2018 WL 6929590, at *4 (W.D. Okla. Oct. 15, 2018).

Dated: May 3, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  */s/ Yitzchak Kopel*
         Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
         ykopel@bursor.com
         aleslie@bursor.com

*Attorneys for Plaintiff*