**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS PARKER, on behalf of himself and all others similarly situated, <br><br>       Plaintiff, <br>   v. <br><br> UNITED INDUSTRIES CORPORATION, <br><br><br>       Defendant. | Civil Action No. 1:17-cv-05353-GBD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DR. DENISE MARTIN**

Dated:  October 7, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
    ykopel@bursor.com
    aleslie@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................... 1

I.     DR. MARTIN ADMITTED ███████████████████
███████████████████████████████ ................... 4

II.    DR. MARTIN IS NOT QUALIFIED TO TESTIFY ABOUT THE
EFFICACY OF CUTTER NATURAL ................................................... 4

    A.    Dr. Martin Improperly ███████████████ ........................... 4

    B.    Dr. Martin Admitted ███████████████████
██████████████████ ............................................. 8

III.   DR. MARTIN'S TESTIMONY IS NOT BASED ON SUFFICIENT
FACTS OR DATA, NOR IS IT THE PRODUCT OF RELIABLE
PRINCIPLES AND METHODS ........................................................... 9

    A.    Dr. Martin May Not Rely On Anonymous Internet Reviews ............................. 10

          1.    Anonymous Internet Reviews Are "Hearsay Of The Rankest
Form" ................................................................................ 10

          2.    Anonymous Internet Reviews Are Inadmissible Under Rule
703 .................................................................................... 14

          3.    Dr. Donahue Agrees That ███████████████
████████████████████ ................. 14

    B.    Dr. Martin May Not Rely On Consumer Declarations As Evidence
Of The Product's Efficacy ....................................................... 15

          1.    Defendant Has Subverted The Discovery Process By Failing
To Disclose The Existence Of Ms. Applebum And Ms.
Stansbury ......................................................................... 16

          2.    Dr. Donahue Agrees ███████████████
██████████████ ................................................ 18

    C.    Dr. Donahue Agrees That An Alleged ████████████
████████ Is Not Reliable Evidence Of Efficacy ................................ 20

CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Affiliati Network, Inc. v. Wanamaker*,
  2017 WL 7361048 (S.D. Fla. Aug. 14, 2017) ......................................................................... 14

*Alfano v. National Geographic Channel, et al.*,
  2007 WL 2982757 (E.D.N.Y. Oct. 5, 2007) ........................................................................... 17

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*,
  970 F. Supp. 2d 278 (S.D.N.Y. 2013) .................................................................................... 14

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*,
  2014 WL 4651643 (D. Colo. Sept. 18, 2014).............................................................. 13, 14, 15

*Brazier v. Hasbro, Inc.*,
  2004 WL 515536 (S.D.N.Y. Mar. 16, 2004)............................................................................. 7

*Degelman Indus., Ltd. v. Pro–Tech Welding & Fabrication, Inc.*,
  2011 WL 6754059 (W.D.N.Y. June 8, 2011)......................................................................... 17

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*,
  2008 WL 5423191 (D. Hawai'i Dec. 31, 2008) ..................................................................... 13

*Doe v. Pittsylvania Cty., Va.*,
  844 F. Supp. 2d 724 (W.D. Va. 2012)..................................................................................... 13

*Ehrlich v. Inc. Vill. of Sea Cliff*,
  2007 WL 1593223 (E.D.N.Y. June 1, 2007) .......................................................................... 18

*Elecs., Inc. v. Univ. Remote Control, Inc.*,
  2014 WL 12586737 (C.D. Cal. Apr. 21, 2014) ...................................................................... 14

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
  2010 WL 1931233 (D.N.J. May 7, 2010)................................................................................ 19

*Exch. Comm'n v. Yorkville Advisors, LLC*,
  305 F. Supp. 3d 486 (S.D.N.Y. 2018) .................................................................................... 14

*Fleming v. Verizon N.Y., Inc.*,
  2006 WL 2709766 (S.D.N.Y. Sept. 22, 2006) .................................................................. 17, 18

*Hart v. BHH, LLC*,
  2018 WL 3471813 (S.D.N.Y. July 19, 2018)........................................................................... 6

*Holak v. Kmart Corp.*,
   2014 WL 2565902 (E.D. Cal. June 6, 2014) .......................................................... 17

*In re M/V MSC FLAMINIA*,
   2017 WL 3208598 (S.D.N.Y. July 28, 2017) ....................................................... 7, 9

*In re Sulfuric Acid Antitrust Litig.*,
   235 F.R.D. 646 (N.D. Ill. 2006) ............................................................................ 10

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   45 F. Supp. 3d 724 (N.D. Ohio 2014) ...................................................................... 7

*In re Zyprexa Prod. Liab. Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................................... 18

*Koppell v. New York State Bd. of Elections*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2001) ...................................................................... 18

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*,
   2005 WL 712232 (S.D.N.Y. Mar. 28, 2005) .......................................................... 18

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ........................................................ 10

*Mathew Enter., Inc. v. Chrysler Grp. LLC*,
   2016 WL 11432038 (N.D. Cal. Sept. 21, 2016) ...................................................... 13

*Muller v. Synthes Corp.*,
   2001 WL 521390 (N.D. Ill. May 15, 2001) .............................................................. 8

*Playtex Prod., Inc. v. Procter & Gamble Co.*,
   2003 WL 21242769 (S.D.N.Y. May 28, 2003) ....................................................... 18

*Wanke Cascade Dist., Ltd. v. Forbo Flooring, Inc.*,
   2017 WL 2403046 (D. Or. May 4, 2017) .................................................................. 6

*Williams v. Outback Steakhouse of Fla., LLC*,
   2019 WL 2539823 (E.D. Mich. June 20, 2019) ...................................................... 14

*Williams v. Bethel Springvale Nurson Home, Inc.*,
   2018 WL 1662644 (S.D.N.Y. 2008) ...................................................................... 18

**RULES**

Fed. R. Evid. 702 .................................................................................................. 3, 4, 22

Fed. R. Evid. 703 ........................................................................................................ 11

Fed. R. Evid. 704(a) ..................................................................................................... 7

**OTHER AUTHORITIES**

Reference Manual on Scientific Evidence (3d ed.) .................................................................. 5, 10

Reference Guide on Estimation of Economic Damages ........................................................ 5, 10

# INTRODUCTION

Dr. Martin's opinion that Plaintiff's damages expert, Mr. Weir's, full refund damages model is inappropriate has *nothing* to do with economics.  Indeed, Dr. Martin has conceded that if █████████████████████████████████████████████.  *See* 10/7/2019 Declaration of Yitzchak Kopel ("Kopel Decl."), Ex. 82,[1] Martin Dep., at 35:13-18 ████ ██████████████████████████████████  Rather, Dr. Martin's opinion regarding the full refund damages model is that it is inappropriate because she believes ████████████████████ Ex. 82, Martin Dep. at 41:20-42:4 █████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████

This is exactly the sort of testimony *Daubert* was designed to protect against.  As an economist, <u>Dr. Martin has no business</u> ███████████████|███████████████  She has no background in this field whatsoever.  *See* Ex. 82, Martin Dep. at 38:14-39:3 █████████ █████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████

Even worse, the purported "evidence" on which Dr. Martin bases her opinions are laughably inadequate.  Dr. Martin relies on 3 things in support of her expert opinion that some consumers of Cutter Natural received "positive value":  (1) anonymous internet reviews posted

---

[1] All citations to the 10/7/2019 Declaration of Yitzchak Kopel are hereafter referenced simply as "Ex. XX."

to websites such as amazon.com, express.google.com, walmart.com, homedepot.com,
lowes.com, etc., (2) two declarations from purported consumers, only one of whom is a class
member in this case, and (3) the purported "paucity" of complaints about Cutter Natural.  *See,
e.g.*, Martin Rebuttal (ECF No. 68, Ex. C), at ¶¶ 20(a)-(d).  But no respectable entomologist
would ever rely on any of these in forming an opinion as to the efficacy of the Product.  And the
Court need not take our word for it.  Here is what Defendant's own efficacy expert witness, Dr.
William A. Donahue, Jr., had to say as to all three bases that form Dr. Martin's expert opinion:





Ex. 76, Donahue Dep., at 67:13-70:11.

Fed. R. Evid. 702 instructs that an expert may offer an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably

applied the principles and methods to the facts of the case." As set forth herein, Dr. Martin's

testimony fails to meet these requirements and must therefore be excluded for all purposes.

## I.  DR. MARTIN ADMITTED THAT ███████████████████████████████████████

Dr. Martin's expert opinion offers absolutely nothing of import because Dr. Martin

conceded at her deposition that ████████████████████████████████████████████



Ex. 82, Martin Dep. at 35:5-35:18.

Against this backdrop, Dr. Martin's opinion that full refund damages are inappropriate

makes no sense. She already admitted ████████████████████████████████████████

██████████████ Instead, Dr. Martin predicates her entire expert rebuttal on her

unsupported opinion that Cutter Natural is, in fact, efficacious. But as set forth in detail below,

Dr. Martin's opinion must be stricken in its entirety because she is not qualified to testify about

the efficacy of Cutter Natural, the bases that underly her opinion as to Cutter Natural's efficacy

are remarkably unreliable, and her opinion fails to satisfy a single prong of Fed. R. Evid. 702.

## II.  DR. MARTIN IS NOT QUALIFIED TO TESTIFY ABOUT THE EFFICACY OF CUTTER NATURAL

### A.  Dr. Martin Improperly ████████████████████████████

Importantly, any calculation of damages necessarily starts with the assumption that

Plaintiff will be able to demonstrate liability. *See* Reference Manual on Scientific Evidence (3d

ed.), Reference Guide on Estimation of Economic Damages, 2011 WL 7724259, at 429
("Damages quantification operates on the premise that the defendant is liable for damages from
the defendant's harmful act."); *id.* at 432 ("The first step in a damages study is the translation of
the legal theory of the harmful event into an analysis of the economic impact of that event.").[2]
While Mr. Weir followed standard practice in assuming Plaintiff will demonstrate that Cutter
Natural is ineffective and worthless, Dr. Martin fails to do so.

Instead, Dr. Martin attempts to discredit Mr. Weir's framework for calculating damages
by arguing that the Product works for some people and does not work for others.  *See* Martin
Rebuttal (ECF No. 58, Ex. C), at ¶ 23 ("The economic theory and market evidence described
above flatly contradicts the assumption in Mr. Weir's 'Full Refund' and 'Unjust Enrichment'
proposals that every consumer received zero value from the Cutter Natural product.  Consumers
who received positive value would be overcompensated by these measures … .").  She also



---

[2] *See also id.* ("In almost all cases, the damages expert proceeds on the hypothesis that the
defendant committed the harmful act and that the act was unlawful.  Accordingly, throughout
this discussion, we assume that the plaintiff is entitled to compensation for losses sustained from
a harmful act of the defendant.").

Ex. 82, Martin Dep. at 36:3-37:4 (emphasis added).

This is improper.  Dr. Martin's opinion that the Product works for some and does not work for others is problematic because (1) she is unqualified to offer it, (2) she improperly fails to assume that Plaintiff will prove his theory of liability, and also because (3) although it is a rebuttal report, it exceeds the scope of Mr. Weir's expert opinion, which pertains solely to damages rather than liability.  In fact, this same exact attempt to discredit Mr. Weir was recently rejected in *Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018).  Just as Defendant does here, the defendants' damages expert in *Hart* sought "to rebut Weir by demonstrating that Weir's starting assumption of the Products' total worthlessness is incorrect." *Id.* at *9.  But Judge Pauley, recognizing that "the scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report," rejected the defendants' attempt to discredit Mr. Weir because the defendants' expert "admit[ted] he is not an expert on the efficacy of ultrasonic repellers.  Yet he still offers such opinions. <u>This is obviously improper—he cannot give expert testimony about a subject in which he lacks expertise.</u>" *Id.* (emphasis added).  The same reasoning applies here. *See* Ex. 82, Martin Dep. at 38:14-39:3 ██████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. Dr. Martin's opinion should be excluded accordingly. *See Wanke Cascade Dist., Ltd. v. Forbo Flooring, Inc.*, 2017 WL 2403046, at *8 (D. Or. May 4, 2017) ("Gocial is an accountant identified as a damages expert in this case, and he may not opine on liability issues such as the reasonableness of Wanke's breach-of-contract theory, and he may not do so under the pretense of challenging Morones's damages assumptions.  Such testimony

will not assist the trier of fact."); *Brazier v. Hasbro, Inc.*, 2004 WL 515536, *7 (S.D.N.Y. Mar.

16, 2004) (toy design engineer's expert testimony on child's motivations for putting a toy into

the child's mouth inadmissible because toy engineer not qualified to opine on this subject matter

and even if he were, his testimony would lack a factual basis); *In re Whirlpool Corp. Front-*

*Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 724, 758 (N.D. Ohio 2014) ("While '[a]n

opinion is not objectionable just because it embraces an ultimate issue,' Fed. R. Evid. 704(a),"

Defendant's economist "lacks the necessary expertise to opine as to washer defects.").[3]

     Tellingly, Defendant's own efficacy expert testified that



Ex. 76, Donahue Dep. at 69:25-70:11.

     Dr. Martin is not an expert in anonymous internet reviews.  Dr. Martin is not an expert in

customer testimonials, nor is she an expert in analyzing a product's complaint rate.  She is only

relying on this information because she is a paid litigation consultant and this is what she is

getting paid to say.  That is precisely why Defendant's own efficacy expert, Dr. Donahue, would

---

[3] *See also In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017) ("But a proffered expert may not simply pass off as their own, or serve as a vehicle for presenting, the opinions of others in subjects on which the proffered expert is not personally qualified.").

███████████████████████████████████████ — because it is so incredibly

obvious that anonymous internet reviews, customer testimonials, and an analysis of a purported

"complaint rate" do not form a reliable basis to opine as to the Product's efficacy.  Yet that did

not bother Dr. Martin in the least.  Dr. Martin's expert opinion should be precluded in its

entirety.  *See Muller v. Synthes Corp.*, 2001 WL 521390 at *6 (N.D. Ill. May 15, 2001)

(excluding opinion pertaining to flaws in design where the experts "do not have the factual basis

to give an opinion on that matter").

  **B.**  **Dr. Martin Admitted** ███████████████████████
███████████

  Although Dr. Martin may have been permitted to rely on Dr. Donahue's opinions

concerning efficacy in forming her own expert opinion had she done so, ██████████████
█████████████████████████ This is clear from Dr. Martin's ██████████████
████████████████████████ *See* Martin Rebuttal (ECF No. 58, Ex. C, at 25-

28).  Dr. Martin also confirmed this at her deposition:



Ex. 82, Martin Dep. at 44:4-45:3 (emphasis added).

Dr. Martin also admitted that her opinion was 



*Id.* at 46:11-24 (emphasis added).

This admission is critical because Dr. Martin has ████████████████, nor was she relying on ████████████████. Thus, she has no basis to assert that the Product works for some and does not work for others. Dr. Martin's opinion must therefore be precluded. *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 ("Robbins admitted at deposition that he is not an expert in chemistry, chemical engineering, heat transfer, industrial engineering, gas engineering, or shipping rules and regulations. … Thus … Robbins cannot give opinions on the traits and properties of chemicals … .").

## III. DR. MARTIN'S TESTIMONY IS NOT BASED ON SUFFICIENT FACTS OR DATA, NOR IS IT THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS

As mentioned above, any calculation of damages necessarily starts with the assumption that Plaintiff will be able to demonstrate liability. *See, e.g.*, Reference Manual on Scientific Evidence (3d ed.), Reference Guide on Estimation of Economic Damages, 2011 WL 7724259, at 429 ("Damages quantification operates on the premise that the defendant is liable for damages from the defendant's harmful act."); *see also Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G.*

*Fur Chemische Industrie*, *KBF*, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("a damages expert[] is entitled to assume liability for purposes of calculating damages"); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 660 (N.D. Ill. 2006) ("A damages model would, of course, be necessarily consistent with liability, or necessarily assume liability."). Against this backdrop, Dr. Martin's opinion—that Mr. Weir's damages model is incorrect because Cutter Natural is efficacious for some—makes no sense.  Simply put, Dr. Martin's opinion adds nothing of value when it comes to economics – her sole field of expertise.

But even worse, Dr. Martin relies on 3 things in support of her expert opinion that some consumers of Cutter Natural received "positive value":  (1) anonymous internet reviews posted to websites such as amazon.com, express.google.com, walmart.com, homedepot.com, lowes.com, etc., (2) two declarations from purported consumers, only one of whom is a class member in this case, and (3) the purported "paucity" of complaints about Cutter Natural.  *See, e.g.*, Martin Rebuttal (ECF No. 68, Ex. C), at ¶¶ 20(a)-(d).  However, the Federal Rules of Evidence prohibit Dr. Martin from relying on any of these.  Because Dr. Martin's opinion that some consumers received some positive value from Cutter Natural lacks sufficient facts or data, and because it is not the product of reliable principles or methods, her entire opinion is inadmissible.  *See, e.g.*, Fed. R. Evid. 703.

### A.    Dr. Martin May Not Rely On Anonymous Internet Reviews

#### 1.    Anonymous Internet Reviews Are "Hearsay Of The Rankest Form"

As mentioned above, Dr. Martin relies on anonymous internet reviews of Cutter Natural posted to amazon.com, express.google.com, walmart.com, and homedepot.com as evidence of purportedly satisfied consumers.  *See, e.g.*, Martin Rebuttal (ECF No. 58, Ex. C) ¶ 20, n.18, n.19, n.20, n.21, n.22, n.24, n.25, n.26, n.27, and n.28.  Indeed, Dr. Martin seeks to rely upon anonymous reviews of Cutter Natural from authors using fictitious monikers such as "lizardo,"

"webbie-20," "AZHawg," "steamenginesteve," and "GolfingGrandma," just to name a few.[4]
That is improper.

When faced with a similar attempt by a defendant to use online, anonymous customer
reviews as evidence of purported "consumer satisfaction," Judge Pauley recently explained that
online reviews, such as the ones Defendant seeks to rely upon, constitute "hearsay of the rankest
form."  *See* Kopel Decl. Ex. 83 (2/12/19 Hr'g Tr. at 24:16-17, *Hart et al. v. BHH, LLC et al.*,
1:15-cv-04804 (S.D.N.Y. 2015)).  Judge Pauley rhetorically asked:  "In a world where
manufacturers are paying people to post favorable reviews … how do we know who wrote them?
The answer is we don't."  *Id.* at 24:17-25:14.  Even "verified reviews" have been shown to be
written by fraudsters.[5]  Given that we do not know who wrote the reviews, they are irrelevant
and inadmissible—both as factual evidence and as expert opinion.  *See SolidFX, LLC v.
Jeppesen Sanderson, Inc.*, 2014 WL 1131361, at *5 (D. Colo. Apr. 2, 2014) (granting motion *in
limine* to exclude Internet reviews because "anonymous online comments . . . are inherently
unreliable").  Further, as the Washington Post has explained, the *majority* of Amazon reviews are
fake.[6]  Admission of these reviews would be highly prejudicial to Plaintiff.

---

[4] *See, e.g.*, https://www.amazon.com/Cutter-Natural-Insect-Repellent-6-ounce/product-reviews/
B004J1IS5U/ref=cm_cr_getr_d_paging_btm_prev_1?ie=UTF8&reviewerType=all_revi
ews&filterByStar=four_star&pageNumber=1; *see also* https://www.homedepot.com/p/Cutter-
Natural-Insect-Repellent-6-oz-DEET-FREE-Pump-Spray-HG-95917-1/203590772.

[5] *See* Lisa Fickenscher, *Scammers Elude Amazon Crackdown on Fake Reviews with New Tricks*
(NY Post May 19, 2017), https://nypost.com/2017/05/19/scammers-elude-amazon-crackdown-
on-fake-reviews-with-new-tricks/.

[6] Elizabeth Dwoskin and Craig Timberg, How Merchants use Facebook to Flood Amazon with
Fake Reviews (Washington Post Apr. 23, 2018),
https://www.washingtonpost.com/business/economy/how-merchants-secretly-use-facebook-to-
flood-amazon-with-fake-reviews/2018/04/23/5dad1e30-4392-11e8-8569-
26fda6b404c7_story.html?noredirect=on&utm_term=.52f4b94cf19c.

Even worse, despite awareness that anonymous internet reviews are rife with fraud, Dr.

Martin did ██████████████████████████████████████████████████████████

████████████ For instance, when looking at a "five-star" review on Amazon.com from a

reviewer identified as "BTW29," Dr. Martin did not know ███████████████████████████

████████ Ex. 82, Martin Dep. at 212:18-20.  Dr. Martin did not know ████████████████ *Id.* at

212:21-22.  Dr. Martin did not know ████████████████████████ *Id.* at 212:23-25.

Critically, Dr. Martin did not even know ████████████████████████████████

    ██    ████████████████████████████████████
          ████████████████

    ██    ██████████████████████████████

    ██    ███████████████████████████████

    ██    ████████████████████

    ██    ███████████████████████████████

    ██    ██████████████████████

    ██    ███████████████████████████████

    ██    ████████████████████

    ██    ██████████████████████████████
          ███████████████████████

    ██    █████████████████████████████
          ████

Ex. 82, Martin Dep. at 213:2-214:7.  And the same is true for every single anonymous internet

review Dr. Martin seeks to rely on:

    ██    ███████████████████████████████
          ███████████████

    ██    █████████████████████████████
          ███████████████████████████████

███████████████████████████
████████████████████████████
██████████████████████

*Id.* at 232:5-14 (emphasis added).

Martin's testimony highlights why anonymous internet reviews are routinely excluded from use in the litigation setting. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 2014 WL 4651643, at *7 (D. Colo. Sept. 18, 2014) ("Online comments, such as those on apartmentratings.com, are 'inherently unreliable.' … Defendant has no way of testing who made the comments, the bases for these comments, or even verifying that the comments were not made by Plaintiff or its representatives."); *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 11432038, at *2 (N.D. Cal. Sept. 21, 2016) ("Additionally, as discussed at the pretrial conference, anonymous internet reviews lack the requisite 'circumstantial guarantees of trustworthiness' to fall under the residual exception to the rule against hearsay."); *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 2008 WL 5423191, at *4 (D. Hawai'i Dec. 31, 2008) ("[U]nder the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements."); *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 739 (W.D. Va. 2012) ("The Ninth Circuit held that [t]he magistrate judge correctly recognized that many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out.") (internal quotations omitted); *Williams v. Outback Steakhouse of Fla., LLC*, 2019 WL 2539823, at *3 (E.D. Mich. June 20, 2019) ("But, if the website reviews are offered to prove the truth that Outback restaurants have slippery floors, they are not admissible."); *Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 504 (S.D.N.Y. 2018) (Daniels, J.) ("[E]xpert testimony that rests on … unsupported speculation

13

is inadmissible and should be precluded.") (citing *Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 291 (S.D.N.Y. 2013)).

### 2.  Anonymous Internet Reviews Are Inadmissible Under Rule 703

Other courts faced with this exact issue have repeatedly recognized that expert opinions based on anonymous Internet reviews are precisely the type of junk science that *Daubert* was meant to address.  Defendant offers no basis why this Court should differ.  *See, e.g.*, *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, 2014 WL 4651643, at *7 (D. Colo. Sep. 18, 2014) ("[A]nonymous online comments are not admissible under Rule 703.  The Court finds it difficult to believe that a qualified expert could credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field.  Moreover, the Court finds that the possibility that the jury may misuse this otherwise inadmissible evidence outweighs any possible need to admit the evidence to support the expert opinions."); *Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, 2014 WL 12586737, at *5-6 (C.D. Cal. Apr. 21, 2014) (precluding expert testimony based on "anonymous internet reviews" as hearsay because "Rule 703 cannot be used as a backdoor to get evidence before the jury"); *Affiliati Network, Inc. v. Wanamaker*, 2017 WL 7361048, at *9 (S.D. Fla. Aug. 14, 2017) ("Hochman relies entirely on anecdotal complaints by anonymous sources, without verifying … the authenticity of any of the ratings or reviews on these two websites, which is unacceptable under *Daubert*.").

### 3.  Dr. Donahue Agrees That █████████████████████ ████████████████████████████████

As noted above, even Defendant's own efficacy expert testified that ███████████ ████████████████████████████████



Ex. 76, Donahue Dep., at 67:13-68:3.  The Court's inquiry should end here.  *See Auraria*, 2014 WL 4651643, at *7 ("The Court finds it difficult to believe that a qualified expert could credibly testify that anonymous online comments are the type of evidence that is typically relied upon by an expert in their field.").

### B.   Dr. Martin May Not Rely On Consumer Declarations As Evidence Of The Product's Efficacy

Dr. Martin also relies on the declarations of Ms. Applebum and Ms. Stansbury – two purported "satisfied consumers," only one of whom is a class member in this case – in forming her opinion that Mr. Weir's damages model fails to take into account satisfied consumers.  But these declarations are inadmissible because Defendant failed to disclose the existence of Ms. Applebum and Ms. Stansbury until it filed its class certification opposition brief, after fact discovery had already closed, and because it is well-settled that Defendant may not offer evidence of positive customer testimonials to rehabilitate a mislabeled or fraudulent product. Accordingly, the Court may not consider the declarations of Ms. Applebum and Ms. Stansbury,

and the Court should strike the entire opinion of Dr. Martin that Mr. Weir's damages model fails to account for satisfied consumers.

**1.      Defendant Has Subverted The Discovery Process By Failing To Disclose the Existence Of Ms. Applebum And Ms. Stansbury**

Pursuant to the Revised Scheduling Order signed by Judge Pitman on October 1, 2018, fact discovery closed on January 15, 2019.  *See* ECF No. 31.  As mentioned above, Ms. Applebum and Ms. Stansbury were not included on Defendant's Initial Disclosures.  *See* Kopel Decl. Ex. 84 (Defendant's Initial Disclosures).  No supplemental disclosures regarding these witnesses were served while discovery was underway.  In fact, Plaintiff was only made aware of their existence upon reviewing Defendant's opposition to his class certification motion. Defendant kept Ms. Applebum and Ms. Stansbury hidden from Plaintiff even despite the fact that they are responsive to several of Plaintiff's discovery requests:

> **RFP No. 21:**  All communications between you and any consumer purchasers of the Products regarding the Products.

> **RFP No. 33:**  All documents and communications relevant to identifying individual consumer purchasers of the Products during the Class Period.

> **RFP No. 6:**  All documents and communications concerning the insect-repelling efficacy of geraniol, soybean oil, sodium lauryl sulfate, and potassium sorbate.

> **RFP No. 3:**  All documents pertaining to any studies, research, or information of any kind concerning the efficacy of the Products and any of their ingredients.

*See* Kopel. Decl. Ex. 85.  That is improper and prejudicial.  *See Alfano v. National Geographic Channel, et al.*, 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 5, 2007) (Rule 26(a)(1) requires the disclosure "not merely that a person is a potential source of information, but that the party may call upon him to provide it.").

In the instant case, Defendant's failure to disclose the existence of Ms. Applebum and Ms. Stansbury until several months *after* the close of fact discovery has deprived Plaintiff of any opportunity to seek discovery from these witnesses.  Even after Plaintiff argued this in his original Motion to Strike Inadmissible Evidence and Testimony (ECF No. 64), Defendant failed to devote a single sentence of its opposition brief to explain why its failure should be excused. *See, e.g.*, ECF No. 69.  The Court's inquiry should end here, and the declarations of Ms. Applebum and Ms. Stansbury should be stricken in their entirety.  *See Holak v. Kmart Corp.*, 2014 WL 2565902, at *8 (E.D. Cal. June 6, 2014) ("Plaintiff failed to timely disclose the names and contact of information of the other witnesses before the discovery deadline.  Accordingly, declarations of the others are untimely and hereby stricken."); *Degelman Indus., Ltd. v. Pro–Tech Welding & Fabrication, Inc.*, 2011 WL 6754059, at *2 (W.D.N.Y. June 8, 2011) (striking affidavit submitted in opposition to summary judgment motion where "Defendants' initial disclosures did not list Mr. Craig as a witness, no supplemental disclosures regarding Mr. Craig were served during discovery, and Defendants first placed Plaintiff on notice of Mr. Craig when they filed the Craig Affidavit in support of their opposition to Plaintiff's motion for partial summary judgment."); *Fleming v. Verizon N.Y., Inc.*, 2006 WL 2709766, at *8-9 (S.D.N.Y. Sept. 22, 2006) (striking declarations of four undisclosed witnesses and holding that "[a]bsent the disclosure of the declarants' identities under Rule 26(a), it would be unreasonable to expect Verizon to depose them"); *Williams v. Bethel Springvale Nurson Home, Inc.*, 2018 WL 1662644, at *5 (S.D.N.Y. 2008) ("Where, as here, an individual is not identified as a potential witness, or even as an individual with knowledge of the claims and defenses in the action, until after the

close of discovery, the offending party subverts the purpose of mandatory disclosures and undoubtedly prejudices their opponent.").[7]

      2.      **Dr. Donahue Agrees That** █████████████████████ ██████████████████

The declarations of Ms. Applebum and Ms. Stansbury are inadmissible and do not constitute actual evidence of customer satisfaction.  No expert would conclude that a legitimate number of satisfied consumers exist based on a single declaration from a purported class member.  To say that Dr. Martin lacks sufficient reliability for her expert opinion is an understatement.  At best, this constitutes anecdotal evidence and may not form the basis of Dr. Martin's opinion.  *See Playtex Prod., Inc. v. Procter & Gamble Co.*, 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003), aff'd, 126 F. App'x 32 (2d Cir. 2005) ("Dr. Minken's conclusions concerning Playtex's 'So Comfortable You Can't Even Feel Them' advertising claim founded solely on 'anecdotal evidence' are unreliable and are not based on scientific knowledge."); *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) ("Expert opinions based on insufficient facts or data, or on unsupported suppositions is not acceptable.  Anecdotal evidence and 'generalized assumptions' are inadequate bases for an expert report."); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2001) (granting motion to exclude proposed expert testimony where expert report was an anecdotal compendium of opinions).  Therefore, these declarations do not constitute data that "experts in the particular field would reasonably rely on … in forming an opinion on the subject."

---

[7] *See also Ehrlich v. Inc. Vill. of Sea Cliff*, 2007 WL 1593223, at *3 (E.D.N.Y. June 1, 2007) (precluding witness testimony under Rule 37(c)(1) for failure to comply with Rule 26(a) (1)(A)); *Fleming v. Verizon New York, Inc.*, 2006 WL 2709766, at *8-9 (Sept. 22, 2006) (same); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 2005 WL 712232, at *2 (S.D.N.Y. Mar. 28, 2005) (same).

Here too, Defendant's own efficacy expert agrees that ███████████████

███████████████████████████



Ex. 76, Donahue Dep., at 68:4-22.  This alone warrants preclusion.  *See Eli Lilly & Co. v. Actavis Elizabeth LLC*, 2010 WL 1931233, at *8 (D.N.J. May 7, 2010) (excluding affidavit where "Plaintiff's own expert appeared to agree that the affidavit does not constitute scientific acclaim").

Most importantly, as this Court has already acknowledged, consumers cannot always tell whether a product is effective.  *See* ECF No. 86, 8/14/19 Hearing Tr., at 37:16-17 ("the only thing [a consumer] can say is that they got bit.  They're not experts.").  And that is reinforced by Defendant's own internal market research documents which state ████████████████

███████████████████████████████

███████████████ Ex. 20.  Defendant's own internal documents ████████████████████████ Why then, would Defendant be permitted to present this very sort of evidence to a jury?

C.   **Dr. Donahue Agrees That** ███████████████████████
███████████████████████████

The third and final basis for Dr. Martin's expert opinion is that "the complaint rate [of Cutter Natural] was empirically low."  Martin Decl. at ¶ 20.  However, this purported evidence is not the "kind of facts or data" "experts in the particular field would reasonably rely on" for two reasons.  Dr. Donahue also ███████████████████████

First, the assertion that there is a paucity of consumer complaints is flat-out inaccurate. As detailed in Plaintiff's moving brief, Defendant "ignored repeated complaints that Cutter Natural did not work."  *See* ECF No. 49, Section II.E.  In fact, consumer outcry was so rampant, it was <u>literally newsworthy</u>.  *See* Plaintiff's Moving Brief (ECF No. 49), § II.E.2 (ABC News Requested Comment On The Product's Ineffectiveness).  *See also* Ex. 77, Schwallie Depo. at 96:13-102:11 ███████████████████████████████████ This is not a normal occurrence.  News organizations do not seek to write stories based on a "paucity" of consumer complaints.  Consumer outcry was rampant.

Second, even assuming there was a "paucity of consumer complaints," how does that translate to satisfied consumers?  Defendant does not cite a single admissible compliment about the product from a consumer.  Not one.  And as Mr. Weir explains, █████████████████
███████████████████████████████ *See, e.g.*, Weir Rebuttal, ¶¶ 36-40 ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████ Defendant makes a leap of faith that simply does not follow.

Finally, Defendant's own efficacy expert agrees that an alleged ████████████████



Ex. 76, Donahue Dep., at 69:1-69:24.

## CONCLUSION

For the reasons set forth above and in Plaintiff's initial Motion to Strike Inadmissible Evidence and Testimony (ECF No. 64), Plaintiff respectfully requests that the Court preclude Dr. Martin's entire opinion that some consumers received positive value from Cutter Natural, as that

21

opinion fails to satisfy any prong of Fed. R. Evid. 702 and is based solely on inadmissible evidence.

Dated:  October 7, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Yitzchak Kopel*
          Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          ykopel@bursor.com
          aleslie@bursor.com

*Attorneys for Plaintiff*