**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS PARKER, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br>    v.<br><br>UNITED INDUSTRIES CORPORATION,<br><br><br>                        Defendant. | Civil Action No. 1:17-cv-05353-GBD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DR. WILLIAM A. DONAHUE, JR.**

Dated:  October 7, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
        ykopel@bursor.com
        aleslie@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ........................................................................................... 1

II.    THE LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT
TESTIMONY .................................................................................................. 2

III.   DR. DONAHUE IS UNQUALIFIED TO TESTIFY ABOUT THE
RELIABILITY OF THE CARDOZA STUDIES ............................................. 3

IV.   THE CARDOZA STUDIES ARE UNRELIABLE........................................... 5

     A.    ██████████████████████████████
██████████████ ....................................................................... 6

     B.    ████████████ ███████████████████
████████████████████ ............................................ 7

     C.    ██████████████████████████████
█████████████████████ ................................................. 9

     D.    The Calculations Of Statistical Significance In The Cardoza
Studies Are Inadmissible ...................................................................... 10

     E.    The Cardoza Studies Have ██████████████
███████████████████████ ................................ 12

     F.    ██████████████████████████████
███████████████ ......................................................... 14

     G.    The Cardoza Studies Did Not Use Generally Accepted Practices........................ 15

V.    DONAHUE'S CONCLUSION BASED ON THE CARDOZA STUDIES
IS SPECULATIVE AND CONTRADICTORY ............................................. 16

VI.   BECAUSE DONAHUE DISCLAIMED ███████████████
████████████████████ NOT TESTIFY ABOUT
THEM, AND THEY ARE INADMISSIBLE FOR ANY OTHER
PURPOSE IN THIS ACTION ........................................................................ 19

VII.   CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amorginos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ................................................................................. 19

*Daubert v. Merrel Dow Pharms., Inc.*,
  509 U.S. 579  (1993) ............................................................................... passim

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................ 19

*Karnauskas v. Columbia Sussex Corp.*,
  2012 WL 234377 (S.D.N.Y. Jan. 24, 2012) ............................................................. 7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................... passim

*Nimley v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005) .................................................................................. 2

*Riegel v. Medtronic, Inc.*,
  451 F.3d 104 (2d Cir. 2006) .............................................................................. 2, 6

*Riegel v. Medtronic, Inc.*,
  552 U.S. 312 (2008) ............................................................................................. 2

*Secs. & Exch. Comm. v. Yorkville Advisors, LLC*,
  305 F. Supp. 3d 486 (S.D.N.Y. 2018) .................................................................... 5

*Sheehan v. Daily Racing Form, Inc.*,
  104 F.3d 940 (7th Cir. 1997) ................................................................................ 7

*United States v. Roldan–Zapata*,
  916 F.2d 795 (2d Cir.1990) ................................................................................... 2

## RULES

Fed. R. Evid. 702 .................................................................................................... 1, 2

Fed. R. Evid. 703 ....................................................................................................... 9

## I.    INTRODUCTION

Defendant's expert witness, Dr. William A. Donahue, Jr., offers the opinion that Cutter

Natural Insect Repellent ███████████████████████ *See* Kopel Decl. Ex. 76,[1]

Donahue Dep. at 78:24-79:2 ████████████████████████████

████████████████████████████ The sole basis for his opinion is a

series of three studies performed by a man named Ron Cardoza in his laboratory, Bio Research

(the "Cardoza Studies" or "Bio Research Studies").  *See id.* at 34:17-19.  Dr. Donahue's

testimony must be precluded for three reasons.

First, Dr. Donahue lacks sufficient qualifications under Fed. R. Evid. 702.  As detailed

below, he has never had any involvement in a laboratory study of personal repellents and he

concedes that he is not familiar with generally accepted practices in this field.

Second, the Cardoza Studies are unreliable.  Dr. Donahue himself even testified ████████

██████████████████████████████████████████

████████████████████ Further, as Dr. Donahue explained, ██████████████████

█████████████████████████████████████████████

████████████████

Third, the conclusions Dr. Donahue draws from the Cardoza Studies are baseless,

speculative, and contradictory.  Here too, Dr. Donahue conceded this point in his deposition

testimony.

This is not a run-of-the-mill *Daubert* motion.  Typically, when a party drafts a *Daubert*

motion, they quote extensively from their own expert in support of their arguments that

the other side's experts' opinions are flawed.  <u>That is not the case here.</u>  The quotes in this brief

---

[1] All citations to exhibits to the Declaration of Yitzchak Kopel are hereafter referenced simply as
"Ex. XX."

are predominantly taken from Dr. Donahue's own deposition testimony, during which he came to not only substantiate each of Plaintiff's arguments, but also to *agree* with each of them.  These points are not legitimately in dispute.  This testimony must therefore be precluded.

## II.     THE LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise ..."  But even if "a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."  *Nimley v. City of N.Y.*, 414 F.3d 381, 399 n. 13 (2d Cir. 2005) (citing *United States v. Roldan–Zapata*, 916 F.2d 795, 805 (2d Cir.1990)).  Although Rule 702 "embodies a liberal standard of admissibility for expert opinions," *id*. at 395, the Court must "ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *Id.* at 396 (quoting *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579, 589  (1993)).  On a motion to exclude expert testimony and for summary judgment, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."  *Riegel v. Medtronic*, Inc., 451 F.3d 104, 127 (2d Cir. 2006) *aff'd on other grounds*, 552 U.S. 312 (2008).

The Supreme Court articulated four factors relevant to determining the reliability of an expert's reasoning or methodology:  (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been

generally accepted by the scientific community.  *Daubert*, 509 U.S. at 593-94.  These factors are not an exclusive checklist.  *Id.* at 593.  The factors should be applied flexibly, according to the particular circumstances of the case at issue.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.

## III.   DR. DONAHUE IS UNQUALIFIED TO TESTIFY ABOUT THE RELIABILITY OF THE CARDOZA STUDIES

Dr. Donahue's testimony must be precluded for lack of qualifications.  As noted above, his affirmative expert testimony rests solely on the Cardoza Studies.  Ex. 76, Donahue Dep. at 34:17-19.  But the problem here is that Dr. Donahue has no experience with testing of personal repellents, other than perhaps having participated *as a subject* in a few of them.  This is particularly problematic because, as explained below, Dr. Donahue himself admits ▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



First, Dr. Donahue has no experience whatsoever ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Ex. 76, Donahue Dep. at 88:22-89:8.  To be sure, under certain circumstances, this alone might

not disqualify him if he were at least somewhat knowledgeable ███████████████████

███████████████████ But he is not:



*Id.* at 199:1-16.  This is a critical point because one of Plaintiff's expert's (Dr. Gordon's) primary

criticisms of the Cardoza Studies is that they used an unacceptably short interval length or

exposure period.  To explain, the way that an Arm-In-Cage test is conducted is by having

subjects stick their arms in the cage for a designated amount of time every half hour.  As Dr.

Gordon explained in his Declaration, the fact that the Cardoza Studies ████████████████

████████████████████████████ *See* Ex. 61, 3/18/19 Gordon Decl. ¶ 61

████████████████████████████████████████████

████████████████████████████████████████████

████████  This greatly decreased the chances of bites occurring during those exposure periods.").

Here, Dr. Donahue acknowledges that █████████████████████

████████████████████████ he has no basis for disagreeing with Dr. Gordon's

criticism:

4



*Id.* at 202:19-206:7.  This lack of knowledge and experience renders Dr. Donahue unqualified.

But even if it did not, his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ leaves Defendant with no basis to refute Dr. Gordon's opinion that the Cardoza Studies

are unreliable for that reason.  Dr. Donahue's declaration states that ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 65 ¶ 31. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ "The party seeking to introduce the expert testimony bears the burden of

establishing by a preponderance of the evidence that the proffered testimony is admissible."

*Secs. & Exch. Comm. v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 503-04 (S.D.N.Y. 2018)

(Daniels, J.) (citing *Daubert*, 509 U.S. at 592).  Here, given the limitations of Dr. Donahue's

knowledge and experience, Defendant has no way of doing that.

## IV.   THE CARDOZA STUDIES ARE UNRELIABLE

Dr. Donahue's opinions in this case are based solely on the Cardoza Studies.  Ex. 76,

Donahue Dep. at 34:17-19.  But as detailed below, these studies are completely unreliable.

A. **Donahue Himself Would Not** ███████████████████████
███████████████

As an initial matter, it is important to note that the flaws in the Cardoza Studies are so

extensive that even Dr. Donahue ████████████████████████████

████████████████████████████████████

██   ███████████████████
███████████████████████
████████████████████████
██████████████████

██   ██████████████████

Ex. 76, Donahue Dep. at 227:22-228:4.

██   ████████████████████
████████████████████
████████████████████
████████████████████
████████

██   ██████████████████
███████████████████
████████

*Id.* at 258:17-259:4.   ████████████   ██████████████

███████████████   *Id.* at 126:13-17   █████████

████████████████████████████

███████████   But he never did that.  *Id.* at 123:5-6   █████████

Instead, he took his consulting fee in this case, and provided the opinion Defendant wanted based

solely on the three faulty Cardoza Studies, ████████████████████████

████████████████████████████████

█████████████████████████████████████

██████████████

"*Daubert* … requires the district judge to satisfy himself that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).  This Court has similarly explained that it "must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Karnauskas v. Columbia Sussex Corp.*, 2012 WL 234377, at *7 (S.D.N.Y. Jan. 24, 2012) (Daniels, J.) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).  Here, by his own admission, Dr. Donahue is not doing that.  This testimony must therefore be precluded.

**B.** **Donahue Agrees That** ████████████████████████████
████████████████████████████

One feature of the Cardoza Studies which has been the subject of much discussion has been that ████████████████████████████████████████████
████████████████████████████████████████████████
████████████ *See* Exs. 6-8.  One need not possess a PhD in entomology to know that if you conduct the same test, with the same protocol, using the same species of mosquito, with the same testing subject (and especially within the same exact study) multiple times, the result observed should be the same.  But that is not remotely what happened here.  Rather, the results observed in the Cardoza Studies were all over the place, as Dr. Gordon explained:

> [W]hen looking at time to first bite Mr. Cardoza's results from testing on himself varied from one hour to three and a half hours. The variability in the tests run on his daughter, Christina Cardoza, is even greater.  For her, the CPT ranged from thirty minutes to 5 hours.  For Cheryl Boggs, protection time also varied from 30 minutes to 5 hours.  And for Larry Cardoza, protection time ranged from thirty minutes to 5+ hours.

Ex. 62, Gordon Rebuttal Decl. ¶ 10.  Dr. Gordon explained that this was indicative of problems

with the testing conditions:

> [T]he variability observed in the Bio Research testing results for
> the same individuals with the same product using the same
> protocol should not occur.  This is indicative of poor controls in
> the Bio Research testing.  When variations of this magnitude are
> observed, additional replications should have been performed in
> order to establish a more reliable estimate of CPT.

*Id.* ¶ 11.  And when this opinion was read verbatim to Dr. Donahue at his deposition, 



Ex. 76, Donahue Dep. at 230:12-17.  Dr. Donahue

*Id.* at 222:22-223:5.  And because he could not explain this, ████████████████

████████████████████

*Id.* at 226:3-16.  This is not a minor issue.  It is exactly what caused Dr. Donahue to say that he

████████████████████████████████████████████████████████

████   *Id.* at 228:3-4.  Everybody agrees:  the Cardoza Studies were messed up.  ████████

████████████████████████   Such junk science must be precluded under

Fed. R. Evid. 703.

    **C.**    **Donahue Disclaimed** ████████████████████████████████

████████████████████

Incredibly, Defendant never ████████████████████████████

████████the person who actually conducted the studies Donahue testified about.  *Id.* at 36:7-12.

But when he was told about Cardoza's testimony, he expressly ███████████████████

███████████████████ .

Here is what Cardoza said at his deposition: ███████████████████

███████████████████████████████████

███████████ Ex. 80, Cardoza Dep. at 176:22-177:1; *see also id.* at 176:13-14 ██████████

███████████████████████████████

And here was how Dr. Donahue responded to learning of this testimony:



Ex. 76, Donahue Dep. at 215:23-216:10.  Here too, everyone agrees:  this study was unreliable.

Ron Cardoza ███████████████ Dr. Donahue cannot be permitted to rely on a study he

himself has stated he would not rely upon.

> **D.     The Calculations Of Statistical Significance In The Cardoza Studies Are Inadmissible**

Each of the Cardoza Studies concludes that the "products provided significant protection

($p=.05$) against the mosquitoes," with tables purporting to (at least partially) lay out calculations

of statistical significance.  But this is inadmissible for two reasons:  first, both Dr. Donahue and

Dr. Gordon agree that these calculations were improperly conducted, and second, Dr. Donahue

███████████████████████████

First, the calculations were necessarily incorrect because they included what is referred to

as ████████████████   In other words, ████████████████████████████

████████████████████████████████. That was error.  As Dr. Donahue

himself explained:

       ■    ████████████████████████████████
                  ████████████████

       ■    ██████████████████████████
                  ████████████████████████
                  ████

       ■    ███████████████

       ■    ████████████████████████
                  ██████████████████████
                  ████████████████

       ■    ███████████████████
                  ███████████████

       ■    ████████████████████
                  ████████████████████

Ex. 76, Donahue Dep. at 137:24-138:3; *see also id.* at 216:11-14 ████████████

████████████████████████████████

████

      It gets worse.  Dr. Donahue has not ████████████████████████

███████████████████ ██████████████

████████████████████████████████

████████

       ■    ████████████████████

       ■    ██

       ■    ████████████████████
                  ███

11



*Id.* at 192:2-193:16.  This is not how litigation works.  Defendant cannot be permitted to present

evidence and/or testimony to a jury that the results of these studies were statistically valid

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Moreover, as

explained in the next section, this issue directly leads to the problem that these experiments ▮▮

▮▮▮▮▮▮▮

**E.      The Cardoza Studies** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

The Supreme Court has stated that a factor relevant to determining the reliability of an

expert's reasoning or methodology is "whether there is a known or potential rate of error and the

existence and maintenance of standards controlling the technique's operation."  *Daubert*, 509

U.S. at 593-99.  Here, the Cardoza Studies are two-time losers:  ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  Nobody knows what it actually says or whether Mr. Cardoza actually

followed it – it has not been maintained and might as well have never existed for purposes of this case.

First, due to the issue of



*Id.* at 236:7-237:4.

Of course, Defendant, who bears the burden of showing that the evidence is admissible, has not hired an expert statistician.  But even a statistician could not have fixed the mess Cardoza created ████████████████  As Dr. Gordon explained, when you test using ███████ ███████ ███████████████████████████████████████ ██████████████████████████████████  Ex. 81, Gordon Dep. at 197:8-11.  This question is, of course, rhetorical.  It cannot be done.  There is no valid method to

conduct this analysis without purposely disregarding data collected during the test and actively choosing which data to ignore.

Second, as to the "existence and maintenance of standards controlling the technique's operation," that would refer to the protocol in which the studies are based.  However, ███████████ ████████████████████████████████  *See* Ex. 76, Donahue Dep. at 151:17-18 ██████████████████████████████; Ex. 81, Gordon Dep. at 234:18-239:15 ███████████████████████; Ex. 80, Cardoza Dep. at 36:19-23 ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

███ Without this protocol, we cannot assess what it said or whether it was followed.  *See* Ex. 76, Donahue Dep. at 160:8-11 ██████████████████████████████████████████ ████████████████████ This is an additional reason to preclude all three Cardoza Studies.

**F.     Donahue Acknowledged That** ████████████████████████ ████████████████████████████

Another factor listed by the Supreme Court in determining the reliability of expert evidence is "whether the theory or technique has been subjected to peer review and publication." *Daubert*, 509 U.S. at 593-94.  Here, Dr. Donahue, ████████████████████████████ ████████████████████████████████████████████████ ███████████



Ex. 76, Donahue Dep. at 233:13-21.  In particular, the issues with ██████ outlined *supra* §

IV.B ████████████████████████



*Id.* at 235:9-22.  This is an additional factor in support of preclusion.

### G.   The Cardoza Studies Did Not Use Generally Accepted Practices

The Supreme Court has also stated that a factor in determining reliability is "whether the

theory or method has been generally accepted by the scientific community."  *Daubert*, 509 U.S.

at 594.  Here, the Cardoza Studies fail this threshold for several reasons.

First, as explained *supra* § III, ████████████████████████

████████████████████  Dr. Gordon described in his declaration that this "greatly

decreased the chances of bites occurring during those exposure periods."  *See* Ex. 61 ¶ 61.  As

noted above, Dr. Donahue testified ████████████████████████

████████████████████████████  Ex. 76, Donahue

Dep. at 199:13-16; 206:3-7.



Second, as explained *supra* § IV.B, the problems with extreme ████████ observed

among test results and use of ████████████ were similarly a departure from generally

accepted practices.

Third, the use of ████████████████ was also a departure from generally

accepted practices.  Because only female mosquitoes bite, it is standard practice to only include

females in the cage, as Dr. Gordon explained in his declaration.  Ex. 61 ¶ 58 ("[T]he use of a

mixed-sex sample appears to have decreased the actual mosquito biting/landing pressure in the

cages.").  Dr. Donahue agreed that ████████████████████



Ex. 76, Donahue Dep. at 113:24-114:15.  Both entomologists agree.  This is not a generally

accepted practice.

## V.   DONAHUE'S CONCLUSION BASED ON THE CARDOZA STUDIES IS SPECULATIVE AND CONTRADICTORY

Even if the Court declines to find that the Cardoza Studies themselves are too unreliable

for admission, Dr. Donahue should still be precluded from using the studies to draw unfounded

conclusions.  One of Dr. Donahue's principal opinions is that the Cardoza Studies



Ex. 65, Donahue Decl. ¶¶ 37-38.  But in his

rebuttal declaration, Dr. Gordon pointed out why this is obviously incorrect:

> [B]ecause the same subjects were used repeatedly in the three Bio
> Research tests, some more than once in a single test, it can readily
> be seen that there was a marked difference in the CPT observed for
> the same individuals across the three studies.  Thus, the variability
> did not exist between different people – it existed primarily from
> different testing conditions in the three studies.

16

Ex. 62, Gordon Rebuttal Decl. ¶ 9 (emphasis added).  Needless to say, Dr. Donahue agreed with

this obvious point at his deposition: ████████████████████████

████████████████████████████████████

████ For instance, when discussing the test subject ████████████████████

███████████████████████████████████████████████

████████████████████████



Ex. 76, Donahue Dep. at 225:12-226:2.  Dr. Donahue could not explain ██████████

████████████████████████████████████████

█████████████████ *See id.*  at 222:22-23 █████████████████████

████████

Donahue further testified that ████████████████████████████

███████████████████████████████████████████████

██████████████████████

that account for variation in protection times observed between those two subjects?

A:    The study director should have asked that question and eliminated that possibility.

…

Q:    But you haven't spoken to Mr. Cardoza, right?

A:    That's correct.

Q:    So you are unable to eliminate that possibility, correct?

A:    Yes.

Ex. 76, Donahue Dep. at 191:9-192:1; *see also id.* at 166:19-167:1 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

   There is more.  In a moment of candor at his deposition, Dr. Donahue conceded that ██

████████████████████████████████████████████████████████████

████████████████████████████████

─────────────────
[2] Biogents is the name of Dr. Gordon's laboratory.  These are the tests Plaintiff has proffered as evidence in this case.  Biogents should not be confused with Bio Research, which is the name of Mr. Cardoza's laboratory, which commissioned tests on behalf of Defendant.



Ex. 76, Donahue Dep. at 252:21-253:25 (emphasis added).  So even Dr. Donahue concedes that

███████████████████████████████████████

"Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Amorginos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).  That is the case here.  Even in the unlikely event the Court declines to preclude the Cardoza Studies themselves, Dr. Donahue should still not be permitted to testify about this speculative and contradictory conclusion which he himself concedes is unsupported.

**VI.    BECAUSE DONAHUE** ███████████████████████████
██████████████████**HE MAY NOT TESTIFY ABOUT THEM, AND THEY ARE INADMISSIBLE FOR ANY OTHER PURPOSE IN THIS ACTION**

After the Cardoza Studies were completed, Defendant ██████████████████████

███████████████████████████████████  In each case, the "██████████████████████████ regarding the reliability of the Cardoza

Studies.  None of these reports ████████████████████████████████████████

Defendant has not designated these individuals as expert witnesses and they have issued no

reports in this case.  Nor were they ever disclosed as potential fact witnesses in Defendant's

initial disclosures or anywhere else in this case.  The only potential avenue for Defendant to

introduce these reports or any testimony about them into evidence in this case was through their

expert witness, Dr. Donahue.  But at his deposition, Dr. Donahue stated that he ███████████

████████████████████████

    ██       ████████████████████

                ████████████████████

    ██       ███████████████████████

                ████████████████

    ██       ██████████████████████

                ████████████████████████

                ████████████████████████

                █████

    ██       ██

    ██

    ██       ████████████████████████

                █████████████████████████

    ██       ██████

Ex. 76, Donahue Dep. at 212:19-214:1.  Dr. Donahue needs to be held to his word.  He cannot

testify about these reports at trial.

       And, as a result of this, these reports are inadmissible for any purpose in this case

whatsoever.  Because they were never disclosed as fact or expert witnesses, these individuals

may not testify, and the reports themselves are hearsay.  Furthermore, they have not been made

subject to the scrutiny of Rules 702 and 703 because they were not part of Defendant's expert

disclosures.  Almost nothing is known about their reliability, and because Dr. Donahue will not be discussing them, Defendant lacks a witness qualified to present, interpret, and vouch for these reports.  The reports must therefore be precluded for all purposes in this case.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court preclude the Cardoza Studies, the purported ██████████ thereof, and the expert testimony of Dr. Donahue.

Dated:  October 7, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Yitzchak Kopel*
                Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
           ykopel@bursor.com
           aleslie@bursor.com

*Attorneys for Plaintiff*