**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS PARKER, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br> v.<br><br>UNITED INDUSTRIES CORPORATION,<br><br><br>       Defendant. | Civil Action No. 1:17-cv-05353-GBD |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON HIS CLAIMS FOR VIOLATION OF N.Y. GBL §§ 349
AND 350**

Dated:  October 7, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
   ykopel@bursor.com
   aleslie@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................... 1

II.     ABREVIATED FACTUAL BACKGROUND ..................................... 2

III.    THE SUMMARY JUDGMENT STANDARD .................................... 5

IV.     CUTTER NATURAL'S REPELLENCY CLAIMS WERE DIRECTED
        AT CONSUMERS ................................................................................. 7

V.      CUTTER NATURAL'S LABELING IS MATERIALLY MISLEADING ..................... 8

        A.      Defendant's Claim Is Material ............................................... 8

        B.      Defendant's Expert Testified ███████████████████
                ███████████████████████████ ......................................... 9

        C.      The "Repels Mosquitoes For Hours" Claim Is Materially
                Misleading Because Cutter Natural Does Not Repel *Aedes*
                Mosquitoes ......................................................................... 11

                1.      Dr. Gordon Found That The Product Was Ineffective Against
                        *Aedes* ......................................................................12

                2.      Dr. Donahue Testified ████████████████████
                        ██ ...............................................................12

                3.      Defendant's Corporate Representative Testified ███████
                        ██████████████████ .......................................13

                4.      Defendant's Senior Biologist Testified That ████████
                        ███████████████ .........................................14

                5.      *Aedes* Mosquitoes Are Prevalent And Important........................14

                6.      A Product That Does Not Repel *Aedes* Mosquitoes Does Not
                        "Repel Mosquitoes For Hours"..............................................16

        D.      Defendant's Own Expert Refuses To Stand By The Accuracy Of
                Defendant's Claim ............................................................... 18

VI.     CUTTER NATURAL'S LABELING CLAIMS CAUSED INJURY TO
        PLAINTIFF........................................................................................ 19

VII.    PLAINTIFF AND NEW YORK SUBCLASS MEMBERS ARE
        ENTITLED TO STATUTORY DAMAGES .................................... 20

VIII.   CONCLUSION ................................................................................... 22

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
2013 WL 7044866 (E.D.N.Y. July 18, 2013)................................................................ 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 5, 6

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015)................................................................................. 20, 21

*Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*,
887 F.2d 399 (2d Cir. 1989) ............................................................................................. 20

*Caldarola v. Calabrese*,
298 F.3d 156 (2d Cir. 2002) ............................................................................................... 6

*Cohen v. JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007) ............................................................................................... 8

*Dimond v. Darden Restaurants, Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014).................................................................... 20

*Ebin v. Kangadis Food Inc.*,
2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ........................................................... 19, 20

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
391 U.S. 253 (1968) ............................................................................................................ 6

*Fujitsu Ltd. v. Fed. Express Corp.*,
247 F.3d 423 (2d Cir. 2001) ............................................................................................... 6

*Gayle v. Gonyea*,
313 F.3d 677 (2d Cir. 2002) ........................................................................................... 5, 6

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E. 1190 (N.Y. 2002) ................................................................................................. 2

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013)................................................................ 21, 22

*Hart v. BHH, LLC*,
2017 WL 2912519 (S.D.N.Y. 2017) ................................................................................... 9

*In re Amla Litig.*,
   328 F.R.D. 127 (S.D.N.Y. 2018) ..................................................................... 20

*In re Scotts EZ Seed Litig.*,
   2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ...................................................... 21

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014) ................................................................ 19

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ....................................................... 19, 21, 22

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) ................................................................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................. 6

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir. 2000) ................................................................................ 2

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,
   315 F.3d 171 (2d Cir. 2003) ................................................................................ 6

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ................................................................................ 8

*Rodriguez v. It's Just Lunch, Int'l*,
   2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ...................................................... 19

*Sabre v. First Dominion Capital, LLC*,
   2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001) .................................................... 13

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ................................................................................ 6

*Sitt v. Nature's Bounty, Inc.*,
   2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ..................................................... 8

*Steigerwald v. BHH, LLC*,
   2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ...................................................... 9

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (2000) ............................................................................................. 8

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ................................................................................ 20

*Tomasino v. Estee Lauder Companies, Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ........................................................................ 8

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
   2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002) .......................................................... 13

**STATUTES**

N.Y. GBL § 349 .......................................................................................................... passim

N.Y. GBL § 350 .......................................................................................................... passim

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................................... 5

Fed. R. Civ. P. 56(g) ....................................................................................................... 22

## I.   INTRODUCTION

The deposition of Defendant's efficacy expert, Dr. William A. Donahue, Jr., was an unmitigated disaster for Defendant during which Dr. Donahue ███████████████████ Dr. Donahue stated that ████████████████████████████████ ████ *See* Plaintiff's Statement of Material Facts ("PSOF") ¶ 18; Ex. 76,[1] Donahue Dep. at 263:8-9 ████████████████████████ And he would not trust it enough ███████ ████████████████ PSOF ¶ 19; Ex. 76, Donahue Dep. at 263:9-10 ████████████████ ████████ As set forth in this brief in verbatim quotes from his deposition, Dr. Donahue agreed Defendant's claim that Cutter Natural Insect Repellent "repels mosquitoes for hours" (the "Claim") is unsupported and stated that while the results of Plaintiff's product testing conflicts with those of Defendant's tests, he would ████████████████████████████████



PSOF ¶ 20; Ex. 76, Donahue Dep. 252:9-14.

───────────────────────

[1] All citations to exhibits to the Declaration of Yitzchak Kopel are hereafter referenced simply as "Ex. XX."

[2] The tests relied on by Defendant were conducted by a man named Ron Cardoza in his lab, Bio Research.  These should not be confused with the Biogents tests, which were conducted by Plaintiff's expert witness, Dr. Scott Gordon, BCE, COL (USA ret).

PSOF ¶ 20; Ex. 76, Donahue Dep at 254:6-25 (emphasis added).  These quotes are just a tiny sampling from Dr. Donahue's remarkable testimony, quoted extensively in the body of this brief. This testimony, coupled with key admissions that the Claim is unsupported made by Defendant's Senior Biologist, Travis Wood, and by Defendant's Senior Director of Research and Development and Rule 30(b)(6) corporate representative, Kathy Cearnal, make clear that no reasonable juror could ever rule for Defendant on Plaintiff's claims for violations of N.Y. Gen. Bus. L. ("GBL") §§ 349 and 350.

Plaintiff therefore moves for summary judgment on Counts I (GBL § 349) and II (GBL § 350) on behalf of himself and the putative New York Subclass and seeks entry of judgment for statutory damages pursuant to §§ 349(h) and 350-E(3).  To establish his claim under GBL § 349, plaintiff "must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  The GBL § 350 claim has the same three elements.  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E. 1190, 1195 n.1 (N.Y. 2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").  While Plaintiff's other claims have more complex elements which are subject to disputes of material fact, Plaintiff's claims under GBL §§ 349 and 350 are straightforward and easily proven through undisputed evidence, as set forth herein.

## II.   ABREVIATED FACTUAL BACKGROUND

This case is a putative class action concerning Cutter Natural Insect Repellent.  The Product's label states that it "repels mosquitoes for hours."  PSOF ¶ 2.  Plaintiff alleges that this is a "false representation[]" because it "fundamentally misrepresent[s] the ability of Cutter Natural to repel mosquitoes."  ECF No. 1, ¶¶ 25-26, 31.  Plaintiff Nicholas Parker has testified that he purchased the Product in reliance on the Claim.  PSOF ¶ 3.

In support of Plaintiff's claims, he relies on the testimony of his expert witness, Dr. Scott Gordon, BCE, COL (USA ret), who opined that "Cutter Natural is ineffective in providing bite protection against, and repelling, mosquitoes" and that "Cutter Natural has no value as a mosquito repellent."  PSOF ¶ 4.  Dr. Gordon also made clear that the Product is equally ineffective for every person:  "every test properly conducted on this product shows that it provides no meaningful protection to *anyone.*"  PSOF ¶ 5 (emphasis in original).  In reaching these opinions, Dr. Gordon relies on numerous studies (all of which were cited in Plaintiff's motion for class certification, ECF No. 49, § 2.C).  But the only two studies relevant to this motion are the two forms of testing on the Product that Dr. Gordon conducted at his laboratory, Biogents AG:  arm-in-cage ("AIC") tests and Biogents cage ("BGC") tests.  PSOF ¶ 6.  Both tests used commonly accepted methodologies:  the AIC tests followed the protocol set forth by the World Health Organization ("WHO") in 2009, and the BGC tests followed the protocol set forth in a peer-reviewed journal article.  PSOF ¶ 7.

For both the AIC and BGC tests, Cutter Natural was tested on 6 volunteers (3 males and 3 females) against female yellow-fever mosquitoes (*Aedes aegypti*) and female southern house mosquitoes (*Culex quinquefasciatus*).  PSOF ¶ 8.  These are two common species of mosquitoes in the United States, and both are known as carriers of a number of potentially deadly diseases. PSOF ¶ 9.  The results show that the Product does not work.  PSOF ¶ 10.  Against *Culex* mosquitoes, the AIC and BGC tests showed an average complete protection time of 2.5 and 12.5 minutes, respectively, when used as directed.  PSOF ¶ 11.  Against *Aedes* mosquitoes, the tests showed average complete protection times of 0 and 10 minutes respectively.  PSOF ¶ 12.[3]

---

[3] Both sides' experts agree that the up to 12.5 minutes of protection shown in certain tests is a *de minimis* amount of protection that does not confer value on the Product.  Dr. Gordon has explained that in order for a product to be considered an effective personal repellent, it must ███████████████████████ *See* PSOF ¶ 13; Ex. 81, Gordon Dep. at 312:23-313:3 ███████

3

Defendant, on the other hand, relies on the testimony of its expert witness, Dr. William

A. Donahue.  Dr. Donahue has offered the opinion that Cutter Natural Insect Repellent ███

██████████████████ PSOF ¶ 16 ██████████████████████████

██████████████████████████ The sole basis for

this opinion is a series of three studies of the Product's efficacy against *Culex* mosquitoes

performed by a man named Ron Cardoza in his laboratory, Bio Research (the "Cardoza Studies"

or "Bio Research Studies").  PSOF ¶ 17 ████████████████████

███████████████

As the evidence cited below shows, there is no dispute that the Product does not work.

While at first blush, one might think that the conflicting results of Plaintiff's tests and

Defendant's tests give rise to a dispute of material fact precluding summary judgment, a closer

examination shows this is not the case for two reasons.  First, Defendant's own expert, Dr.

Donahue, agrees that when faced with the conflicting results of Plaintiff's tests and Defendant's

tests, █████████████████ *See infra* § V.B.  This testimony would

necessarily compel any reasonable jury to find for Plaintiff.  Second, the purportedly

contradictory result observed by Defendant's testing ██████████████████

██████████████ But, as detailed below, ███████████████████

─────────────────────

█████████████████████████

███████████████████████ Defendant's expert, Dr. Donahue, went even further, saying

that a product would need to work ███████████████ *See*

PSOF ¶ 14; Ex. 76, Donahue Dep. at 256:9-18 ████████████

███████████████████████████ These views conform with the Guidelines set forth for laboratory

testing by the United States Environmental Protection Agency and the World Health

Organization, both of which do not even contemplate testing at an interval less than 30 minutes

following application.  *See* PSOF ¶ 15; ECF No. 48, Ex. 4 (World Health Organization

Guidelines) and 10/7/2019 Kopel Decl., Ex. 5 (EPA Guidelines).

(including its corporate representative) agree that the Product does not work to repel ███ ████████████████████████████████████████████████████████████████████████ and

carry a host of diseases including the Zika virus.  *See infra* § V.C.  This renders the unqualified

Claim that the Product "repels mosquitoes for hours" flat out false.

Notably, this motion only cites a fraction of the extensive evidence available in this case,

and Plaintiff expects that some issues of disputed material facts will ultimately remain as they

pertain to his causes of action *other than* GBL §§ 349 and 350.  For instance, Dr. Gordon relies

on additional studies, beyond those listed above, to support his opinions, and Defendant has

indicated it intends to argue that those studies are unreliable (of course, Plaintiff disagrees).  On

the other hand, Plaintiff has submitted herewith a *Daubert* motion, which argues in depth that the

Cardoza Studies and Dr. Donahue's conclusions drawn therefrom are inadmissible junk science.

Moreover, there is significant evidence Plaintiff will present in support of the scienter

requirement to his fraud claim showing that Defendant knew the Product did not work yet sold it

anyway.  And so on.  But none of those disputes of fact are relevant to adjudication of this

motion.  Even when each of these disputed points are viewed in a light most favorable to

Defendant, they still could not prevent entry of judgment as a matter of law on Plaintiff's GBL

claims based solely on the key factual concessions made by Defendant and its expert witness, as

set forth below.

**III.   THE SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "An issue of

fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when "it 'might affect the

outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp*., 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

IV.     **CUTTER NATURAL'S REPELLENCY CLAIMS WERE DIRECTED AT CONSUMERS**

The first element of the GBL §§ 349 and 350 claims requires proof that Defendant's deceptive acts were directed at consumers.  That is easily satisfied here.

Cutter Natural's "REPELS MOSQUITOES FOR HOURS" claim appeared prominently on the front labeling of every unit of Cutter Natural sold throughout the entire Class period. PSOF ¶ 21; Ex. 10 (depicting Products' labeling); *see also* Ex. 77, Schwallie Dep. at 26:22-27:1 ("Q:  Going back to the 'Repels mosquitoes for hours' claim, was that claim on the products at all times from [] launch date … until present?  A:  Yes.").  It appeared in large bold lettering on the front-center of the packaging.  PSOF ¶ 22; Ex. 10 (depicting Products' labeling).  Every consumer, no matter where they purchased Cutter Natural, was exposed to the "REPELS MOSQUITOES FOR HOURS" claim.  PSOF ¶ 23; Ex. 77, Schwallie Dep. at 27:11-23.

Steven Schwallie, Division Vice President of Home and Garden Marketing for Defendant, testified at his deposition that the "REPELS MOSQUITOES FOR HOURS" claim was directed towards consumers.  PSOF ¶ 24; Ex. 77, Schwallie Dep. at 21:21-24 ("Q:  [A]re claims on the packaging meant to be communicated to consumers or potential consumers of the product?  A:  Yes.").  Mr. Schwallie also testified that the "REPELS MOSQUITOES FOR HOURS" claim is an important claim to consumers.  PSOF ¶ 25; Ex. 77, Schwallie Dep. at 21:14-19 ("Q:  [D]o you agree that at least someone thought it was important to put 'Repels mosquitoes for hours' on the packaging, since it's front and center on the product labeling?  A: As a mosquito repellent, yes.  It is.").

This evidence is uncontroverted, and there is no genuine issue of material fact with respect to this element of the GBL §§ 349 and 350 claims.

## V.   CUTTER NATURAL'S LABELING IS MATERIALLY MISLEADING

The second element of the claims under G.B.L. §§ 349 and 350 require that Defendant's conduct is materially misleading.  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).  To establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation.  *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 ("[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)).  "[T]he claim that the products cannot work is a valid theory of affirmatively misleading advertising." *Tomasino v. Estee Lauder Companies, Inc.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *9 (E.D.N.Y. Sept. 26, 2016) (same).

As set forth below, the facts here overwhelmingly show that Defendant's conduct was materially misleading.

### A.   Defendant's Claim Is Material

It is obvious that Defendant's claim is material.  That is because the only reason anyone would ever purchase a mosquito repellent is to repel mosquitoes.

Steven Schwallie, Division Vice President of Home and Garden Marketing for Defendant, testified that if Cutter Natural did not repel mosquitoes, there would be no reason to buy it:

> Q:   [W]hat is this product?
>
> A:   This product is a mosquito repellent.
>
> Q:   So would it be accurate to say that its core purpose or function is to repel mosquitoes?
>
> A:   That's correct.

> Q:    If, hypothetically, this product did not repel mosquitoes,
>       would there be any reason to buy it?
>
> A:    Um, the purpose is to repel mosquitoes, so if it did not repel
>       mosquitoes, no, it would not exist.

PSOF ¶ 26; Ex. 77, Schwallie Dep., at 19:18-20:6.

And Defendant's own market research confirms that ██████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ PSOF ¶ 27; Ex. 20.

Here, because the core purpose of Cutter Natural is to repel mosquitoes, the claim "repels mosquitoes for hours" is unquestionably material. *See Hart*, 2017 WL 2912519, at *7 ("As previously noted, the representations are material because they purport to do the only thing for which a reasonable consumer would ever purchase the pest repeller – to repel pests."); *see also Steigerwald v. BHH, LLC*, 2016 WL 695424, at *8 (N.D. Ohio Feb. 22, 2016) (holding that representations are material because repellers were "used for only one reason, to repel pests.").

**B.    Defendant's Expert Testified That If** ██████████████████████
██████████████████████████████

The first reason a reasonable jury would necessarily find that the Claim is false and misleading is that both sides' expert witnesses agree that the weight of the evidence shows that the Product does not work at all.  That is because Defendant's expert has recognized ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

To be sure, Plaintiff and Defendant have each presented testing conducted on *Culex* mosquitoes with very different results.  While Plaintiff's tests found that the Product was completely ineffective across the board for any subject tested, Defendant's expert testified that

9

its testing showed ██████████████████████████████████████████

████████████   PSOF ¶ 28; Ex. 60, Donahue Decl. ¶ 38.

At first blush, one might view this stark contrast between Plaintiff's tests and Defendant's

tests as a mere "battle of the experts," in which each side's expert witness believes their

methodology was correct and the other side's was incorrect.  But that is not the case here.

Defendant's expert witness, Dr. Donahue, made clear that ████████████████████

██████

PSOF ¶ 29; Ex. 76, Donahue Dep. at 237:11-19.  Dr. Donahue recognized that ███████

████████████████████████

PSOF ¶ 30; Ex. 76, Donahue Dep. at 254:1-5.  Ultimately, one thing is obvious given these

varying results – one set of tests was done correctly, and the other was not.  When asked which

set of tests Dr. Donahue thought was more reliable, Dr. Donahue said he thought ████████



10

PSOF ¶ 31; Ex. 76, Donahue Dep. at 252:9-14.  Because of this, Dr. Donahue testified that he



PSOF ¶ 32; Ex. 76, Donahue Dep. at 254:6-25 (emphasis added).  The Court's inquiry should

stop here.  As detailed in Plaintiff's accompanying motion to preclude Dr. Donahue's testimony,

the Cardoza studies are inadmissible junk science.  But even if the Court decides to admit them,

how could a reasonable jury member ever find in favor of Defendant when its own expert

witness believes ▮▮▮▮▮▮▮▮

**C.    The "Repels Mosquitoes For Hours" Claim Is Materially Misleading Because Cutter Natural Does Not Repel *Aedes* Mosquitoes**

Even if the Court found that the Cardoza Studies give rise to a factual dispute, that

dispute would *still* not preclude summary judgment.  That is because the Cardoza Studies were

limited ▮▮▮▮▮▮▮ But there are other species of

mosquitoes in the United States, and the Claim is not limited to ▮▮▮▮▮▮

▮▮▮▮ claim is also false and misleading because the Product is ineffective against *Aedes*

mosquitoes, the other type of mosquito commonly found throughout the United States, and

carrier of a host of diseases, including the Zika virus.  This point is 100% undisputed – not only

has Plaintiff's expert, Dr. Gordon espoused this opinion, but Defendant's own Rule 30(b)(6)

corporate representative, Defendant's own Senior Scientist, and Defendant's own ▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Simply put, the Claim that the Product "repels

mosquitoes" cannot be supported when Defendant itself acknowledges that it does not repel *Aedes* mosquitoes.

### 1. Dr. Gordon Found That The Product Was Ineffective Against *Aedes*

Of course, Plaintiff's expert, Dr. Gordon, has explained that the Product does not work against *Aedes*.  Indeed, when he tested the Product against *Aedes* using the World Health Organization's Guidelines for Efficacy Testing of Mosquito Repellents for Human Skin, "all volunteers were bitten during the first test, immediately following application of Cutter Natural." PSOF ¶ 33; Ex. 60, Gordon Decl. ¶ 31.  That is why Dr. Gordon opined that "this product has no significant efficacy and lacks any value as a mosquito repellent."  PSOF ¶ 34; Ex. 60, Gordon Decl. ¶ 34.  But what is more significant is that each of Defendant's witnesses expressly *agreed* with Dr. Gordon.

### 2. Dr. Donahue Testified That ███████████████████████

Dr. Donahue agrees.  The Product ███████████████████████



PSOF ¶ 35; Ex. 76, Donahue Dep. at 257:1-10

*Id.* ¶ 35; Ex. 76, Donahue Dep. at 128:21-25.  There is no ambiguity here.  Dr. Donahue agrees on this point.

### 3.   Defendant's Corporate Representative Testified ████████████████

Here is what Defendant's Rule 30(b)(6) corporate representative said:



PSOF ¶ 36; Ex. 78, Cearnal Dep. at 191:19-192:9; *see also id.* ¶ 36; Ex. 78, Cearnal Dep. at

207:4-9 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ As a designated

corporate representative, this concession is binding on Defendant.  *See Twentieth Century Fox*

*Film Corp. v. Marvel Enterprises, Inc*., 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002) ("A

30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is

responsible for providing all the relevant information known or reasonably available to the

entity.") (citing *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544 at *1 (S.D.N.Y. Dec.

12, 2001) (Pitman, J.) and citing 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus,

Federal Practice & Procedure § 2103 (2d ed.1994)).





### 4. Defendant's Senior Biologist Testified [redacted]

The only time Defendant ever bothered to test the Product [redacted] Here is what Travis Wood, Defendant's Senior Biologist testified:

- [redacted]
- [redacted]

PSOF ¶ 37; Ex. 79, Wood Dep. at 94:8-15. Mr. Wood apparently [redacted] *See id.* at 95:18-20 [redacted] But he assumed wrong. [redacted] And based on this limited testing, it was clear to the person conducting the tests that the Claim was unsupported.

### *5. Aedes* Mosquitoes Are Prevalent And Important

The fact that everybody agrees that the Claim is unsupported as to *Aedes* mosquitoes is important because these mosquitoes are prevalent in the United States, as each of Defendant's witnesses recognized. PSOF ¶ 38; Ex. 79, Wood Dep. at 86:19-23 [redacted]. Ron Cardoza, the man Defendant hired to run the Cardoza Studies, shares the same understanding. PSOF ¶ 39; Ex. 80, Cardoza Dep. at 53:11-15 [redacted] Defendant's efficacy expert, Dr. Donahue, also agrees. PSOF ¶ 40; Ex. 76, Donahue Dep. at 260:5-11 [redacted]

Moreover, *Aedes* mosquitoes are known to carry a host of diseases, included the infamous Zika virus (which *Culex quinquefasciatus*, the species upon which Defendant performed its tests, does not carry).  Here too, Kathy Cearnal, Defendant's Director of Research & Development, readily admitted this at her deposition:

PSOF ¶ 41; Ex. 78, Cearnal Dep. at 192:19-193:7.  Defendant's former Senior Biologist of Research & Development, Travis Wood, also agrees that



PSOF ¶ 42; Ex. 80, Wood Dep. at 51:17-52:10.

Defendant knew that preventing the Zika virus and repellency against *Aedes* were very important to consumers.  This is evidenced by the "Anti-Bite Field Guide by Cutter Insect Repellents" published on its website.  PSOF ¶ 43; Ex. 31.  This Field Guide repeatedly addresses how to avoid contracting and spreading zika virus.  Most prominently, one section states:

> **Know Thy Enemy**
>
> There are two types of mosquitoes associated with Zika.  The *Aedes aegypti* is the species most likely to spread the Zika virus.  The *Aedes albopictus*, however, carries it as well, and has demonstrated a broader-range.  While most mosquitoes are active at dusk and dawn, the *Aedes aegypti* and *Aedes albopictus* bite during the day and night.  To help protect yourself and your family, use Cutter Insect Repellent.



PSOF ¶ 44; Ex. 31 at pp. 4/4.  But, as detailed above, ▮▮▮▮▮▮▮▮▮▮▮▮ the form of "Cutter Insect Repellent" at issue in this case does not work for these exact types of mosquitoes.

Unsurprisingly, Defendant's Product sales actually ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ a disease Defendant *knew* that the Product could not protect against.  PSOF ¶ 45; Ex. 78, Cearnal Dep. at 18:23-19:4 ▮▮▮▮▮▮▮▮▮▮▮▮

### 6. A Product That Does Not Repel *Aedes* Mosquitoes Does Not "Repel Mosquitoes For Hours"

Defendant might argue whether or not a consumer would expect the Claim "Repels Mosquitoes For Hours" to apply to *Aedes* mosquitoes is an issue of fact.  But that would be

wrong.  Imagine if the Claim had instead disclosed that the truth about *Aedes*.  It would have

read:

> Repels Mosquitoes For Hours (Except For The Mosquitoes That
> Transmit The Zika Virus, Yellow Fever, And Several Other
> Diseases, Against Which It Is Ineffective)

Of course, this version of the Claim looks absurd because no consumer in their right mind would

ever buy such a product.  That is why a reasonable jury could only ever reach one conclusion:

The Claim is materially misleading.

Even if *Aedes* were not as important of a type of mosquito as it is, that would still not

change the fact that Defendant blindly and incorrectly ███████████████████████

████████████████████  As Dr. Gordon explained, it is inappropriate to "extrapolate the

data from … one species of mosquitoes … in order to provide an opinion as to its effectiveness

against all species of mosquitoes.  For this reason, both the WHO and EPA recommend using at

least two different species of mosquitoes."  PSOF ¶ 46; Ex. 62, Gordon Rebuttal Decl., ¶ 13.

And when asked about this at his deposition, Dr. Donahue ████████████████





PSOF ¶ 47; Ex. 76, Donahue Dep. at 80:12-81:9.  And as Dr. Donahue acknowledged, a

formulation ███████████████████████████████████████████████

███████████████████████

PSOF ¶ 48; Ex. 76, Donahue Dep. at 261:5-16.  Thus, the Court need not present any disputed

issues of fact to a jury when this undisputed fact – that the Product does not work against (and

the Claim is not supported for) *Aedes* mosquitoes – establishes a clear basis for the Court to enter

judgment as a matter of law.

    **D.**    **Defendant's Own Expert Refuses To Stand By The Accuracy Of Defendant's Claim**

       Given the above discussion, it is unsurprising that Defendant's expert witness does not

think very much of the Product's efficacy.  Dr. Donahue stated that ████████████████

███████  PSOF ¶ 18; Ex. 76, Donahue Dep. at 263:8-9 ████████████████

██████████  And he would not trust it enough ████████████████  PSOF ¶ 19; Ex. 76,

Donahue Dep. at 263:9-10 ██████████████████████████  He also refused to stand

by the accuracy of Defendant's Claim that the Product "repels mosquitoes for hours":



PSOF ¶ 49; Ex. 76, Donahue Dep. at 258:17-259:21.  The fact that Defendant's own expert

witness believes that ███████████████████ about the supportability of Defendant's

Claim is damning.  Under these circumstances, no reasonable juror could ever return a verdict

for Defendant.

## VI.    CUTTER NATURAL'S LABELING CLAIMS CAUSED INJURY TO PLAINTIFF

The final element of the GBL §§ 349 and 350 claims requires proof that the plaintiff has

been injured as a result of the deceptive act.  This requires a showing "that defendant engaged in

a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm."

*Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010).  In false

advertising cases such as this one, "[t]he deception is the false and misleading label, and the

injury is the purchase price."  *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y.

Dec. 11, 2013); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y.

2014) (same); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) (same);

*Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) (same);

*Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 62 (E.D.N.Y. 2015) (same).

Here, Plaintiff and class members paid money for a product that purported to "repel

mosquitoes for hours" but it provided no repellency. *See* ECF No. 47, 1/28/19 Gordon Decl., ¶

31 ("Cutter Natural consistently failed to provide any meaningful protection from mosquito

bites"). Instead, what they received was ineffective and worthless. *Id.* ¶ 34 ("this product has no

significant efficacy and lacks any value as a mosquito repellent"). Therefore, Plaintiff and class

members have been injured in the amount of the purchase price. PSOF ¶ 50; ECF No. 46,

February 3, 2019 Weir Decl., ¶ 9 ███████████████████████████

███████████████████████████ *see also* PSOF ¶ 51; Ex. 82, Martin Dep.

at 35:5-35:18 ███████████████████████

Accordingly, Plaintiff has sufficiently shown injury under the GBL. *See, e.g.*, *Ebin v. Kangadis*

*Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013); *In re Amla Litig.*, 328 F.R.D.

127, 135 (S.D.N.Y. 2018) (holding injury prong satisfied under GBL where plaintiffs allege "that

[they] paid more than they should have because of deceptive marketing.").

## VII.   PLAINTIFF AND NEW YORK SUBCLASS MEMBERS ARE ENTITLED TO STATUTORY DAMAGES

GBL § 349(h) provides for statutory damages of $50 per violation and GBL § 350E-3

provides for statutory damages of $500 per violation. Statutory damages are automatic. In fact,

the Second Circuit described statutory damages as "an automatic measure of recovery to

plaintiffs regardless of injury or profits." *Business Trends Analysts, Inc. v. The Freedonia*

*Group, Inc.*, 887 F.2d 399, 406 (2d Cir. 1989). Moreover, it is well-settled that GBL statutory

damages are available in class actions. *See, e.g.*, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d

70, 87 (2d Cir. 2015) ("It is not disputed that statutory damages under GBL § 349 can assessed

on the basis of common proof."); *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *7 (S.D.N.Y. Aug. 8, 2017) ("Accordingly, the Court concludes statutory damages under GBL Sections 349 and 350 are available to the New York Class."); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 526 (E.D.N.Y. 2017) ("The statutory damages [under GBL §§ 349 & 350] for many multiple purchasers is potentially enormous:  it is $50 or $500 per purchase plus attorneys' fees. Yet, as previously noted … the Supreme Court of the United States in *Shady Grove* held that such a class action for statutory damages is maintainable in federal court."); *Belfiore v. Procter & Gamble Co.,* 311 F.R.D. 29, 70 (E.D.N.Y. 2015) ("Once the injury is established, statutory damages can be calculated on a classwide basis.  New York General Business Law § 349(h) provides for statutory damages of $50 to each class member for each time defendant violated the statute."); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *20 (E.D.N.Y. July 18, 2013) ("Plaintiffs also correctly note that § 349 provides for a minimum amount of statutory damages. Thus, if plaintiffs are able to prove injury, but their damages are less than the statutory minimum, they will still be entitled to the minimum amount of statutory damages"); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013) ("Under N.Y. G.B.L § 349(h), a plaintiff can recover statutory damages in the amount of $50 upon a finding that the plaintiff has suffered injury."); *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019) ("Statutory damages are permissible in class actions alleging Sections 349 and 350 violations brought in federal court.").

And the math is simple.  Plaintiff's damages expert, Colin Weir, set forth the calculation for GBL statutory damages in his March 21, 2019 Declaration, and Defendant did not dispute these numbers.  Mr. Weir calculated that during the class period, Defendant sold ▉▉▉ units of Cutter Natural in the State of New York.  PSOF ¶ 52; Ex. 68, March 21, 2019 Declaration of

Colin B. Weir, at 9.  Thus, statutory damages at $50 per violation under GBL § 349 amount to

████████ and statutory damages at $500 per violation under GBL § 350 amount to

███████.  *Id*.  Accordingly, statutory damages under GBL total ██████████  *Id*.

The award of statutory damages is well deserved here.  The fraud Defendant committed was egregious and in flagrant disregard for public health.  Defendant knew that Cutter Natural was ineffective to repel mosquitoes for hours, but was intent on making that claim anyway.  *See* ECF No. 49, at §§ II.D & II.E.  This was not an innocent mistake.  Defendant is a worldwide leader of insect control products.  Defendant knows better.  Defendant did not even bother to conduct legitimate testing on one of the most common species of mosquito found throughout the US – a species Defendant knew carried a host of diseases.  *See supra* § V.C.  All Defendant cared about was profits.  This was a massive scam that defrauded hundreds of thousands of purchasers in New York.  Our Legislature imposed the statutory damages remedies in GBL §§ 349(h) and 350E-3 to punish and deter exactly this type of conduct.  *Kurtz v. Kimberly-Clark Corp*., 321 F.R.D. 482, 531 (E.D.N.Y. 2017) ("The purpose of New York General Business Law § 349 is to punish companies that sell products using advertising that misleads the reasonable consumer.") (internal quotations omitted).  Justice here requires a strong remedy.

**VIII.   CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for partial summary judgment on Counts I and II, for violation of G.B.L. §§ 349 & 350, by deeming Defendant's liability to Plaintiff the putative New York Subclass established, and by deeming Plaintiff's entitlement to $550 statutory damages pursuant to G.B.L. §§ 349(h) and 350E-3 established.  *See* Fed. R. Civ. P. 56(g) (stating that on a motion for partial summary judgment the court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case").

22

Dated: October 7, 2019

Respectfully submitted,


By:     */s/ Yitzchak Kopel*
        Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       ykopel@bursor.com
       aleslie@bursor.com


*Attorneys for Plaintiff*