UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
                                            :
NICHOLAS PARKER, on behalf of himself and all   :
others similarly situated,                   :
                                            :
                    Plaintiff,              :
                                            :
        -against-                           :
                                            :
UNITED INDUSTRIES CORPORATION,              :
                                            :
                    Defendant.              :
                                            :
------------------------------------------------------------- x
```

No. 1:17-cv-05353-GBD-HBP

JUDGE GEORGE B. DANIELS

**ECF CASE**


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED INDUSTRIES CORPORATION'S MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF COLIN B. WEIR

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 4

    A.    Plaintiff's All or Nothing Theory of the Case ........................................................ 4

    B.    Weir's Damages Measures ................................................................................... 4

ARGUMENT ......................................................................................................................... 6

I.      WEIR'S REPORTS AND TESTIMONY ARE UNHELPFUL TO THE COURT. .......... 7

    A.    There is No Connection Between the Models in Which Weir Proposes to Use his "Partial Efficacy" Ratio And the Harm Alleged By Plaintiff. ................................ 8

    B.    Weir's Full Refund, Unjust Enrichment and Statutory Damages, Calculations Are Simple Math, Not The Subject Of Expertise. ....................................................... 11

II.    WEIR'S REPORTS AND TESTIMONY ARE UNRELIABLE. ................................... 14

    A.    Weir Fails to Explain How His Partial Efficacy Damages Model Can Be Calculated. ...................................................................................................... 14

    B.    Weir Uses Duration as the Only Measure of Efficacy .......................................... 16

III.   WEIR'S OPINION ON ONLINE REVIEWS IS UNRELIABLE, AND HE IS NOT AN EXPERT ON SPOTTING FAKE REVIEWS. ............................................................. 17

CONCLUSION ..................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002).................................................................................6, 18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................................................................8, 9

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ..............................................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................... *passim*

*Deutsch v. Novartis Pharms. Corp.*,
768 F. Supp. 2d 420 (E.D.N.Y. 2011) .......................................................................19

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,
2010 WL 2978289 (D. Conn. Apr. 9, 2010) ...............................................................12

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)........................................................................12

*Nimely v. City of N.Y.*,
414 F.3d 381 (2d Cir. 2005).................................................................................7, 19

*R.F.M.A.S., Inc. v. So*,
748 F. Supp. 2d 244 (S.D.N.Y. 2010)........................................................................13

*Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*,
2015 WL 5708541 (D. Conn. Sept. 29, 2015) ............................................................11

*Riegel v. Medtronic, Inc.*,
451 F.3d 104 (2d Cir. 2006)..............................................................................14, 15

*Schwartz v. Fortune Magazine*,
193 F.R.D. 144 (S.D.N.Y. 2000) ..............................................................................11

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................17

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ...............................................................8, 9, 10, 11

*In re Scotts EZ Seed Litig.*,
    2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017).........................................................................13

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013).............................................................................6, 19

*Taylor v. Evans*,
    1997 WL 154010 (S.D.N.Y. Apr. 1, 1997)..........................................................................11

*Turrentine v. Bell Canada*,
    173 F.3d 846 (2d Cir. 1999)................................................................................................15

*United States v. Amuso*,
    21 F.3d 1251 (2d Cir. 1994)................................................................................................12

*United States v. Cook*,
    922 F.2d 1026 (2d Cir. 1991)..............................................................................................11

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)..................................................................................................12

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007).................................................................................................7

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)..............................................................................................................6

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ...............................................................................18

**Statutes**

New York General Business Law § 349.................................................................................6, 13

New York General Business Law § 350.................................................................................6, 13

**Rules**

Federal Rule of Evidence 702............................................................................................*passim*

## PRELIMINARY STATEMENT

This case is about Cutter Natural Insect Repellent ("Cutter Natural" or the "Product"), a DEET-free alternative to other insect repellents.  Plaintiff Nicholas Parker ("Parker" or "Plaintiff") categorically claims that Cutter Natural is "ineffective and worthless" because (i) he used it once while attending an adult summer camp by a lake in the mountains in late summer 2015 and was bitten by an unknown insect, and (ii) some testing allegedly shows that Cutter Natural does not repel mosquitoes.  Importantly, Plaintiff *does not* allege that the Product worked sometimes, *e.g.*, for some period of time under some conditions or for some people and not for others.  Rather, Plaintiff alleges Cutter Natural does not work *at all for anyone ever*.  On his motion for class certification, Plaintiff submitted reports prepared by Colin B. Weir in an effort to prove that damages, if his claims succeed, can be calculated on a class-wide basis.[1]  Weir proposes three measures of damages—Full Refund Damages (under which aggregate damages would equal the full retail sales), Partial Efficacy Damages (under which aggregate damages would equal a fraction of the retail sales) and Unjust Enrichment Damages (under which aggregate damages would either be full wholesale sales or a fraction of wholesale sales.)[2]  He also offers to calculate Statutory Damages.  For several reasons, Weir's reports suffer from fatal flaws and should be excluded, along with his testimony, from any use in this case.

*First*, Weir's Partial Efficacy Damages approach, whether applied to retail sales (his Partial Efficacy Damages model) or wholesale sales (in one variant of his Unjust Enrichment

---

[1] Weir submitted one declaration on February 3, 2019 and a second on March 21, 2019.  The March 21 declaration is identical to the February 3 declaration except that the March 21 declaration contains updated estimates of alleged damages.  This motion assumes the March 21 declaration is the operative declaration, but because both declarations are substantially the same, they both should be struck.

[2] Although Weir's Framework for Damages (Section IV of his report) indicates he offers the Court three possible models of economic damages, in his Unjust Enrichment Damages (Section VII of his report), he offers that the approach might be implemented one of two ways (returning all or a fraction of wholesale sales).  As such, he actually offers four possible models.

Damages model) is untethered to the Complaint and thus not helpful to this Court.  This Court recognized at the August 14, 2019 hearing on Plaintiff's motion for class certification that Plaintiff had presented "no theory" under which he or the class could receive "partial recovery" if he prevailed on his claim and noted that, given the case Plaintiff pled, a so-called partial efficacy theory is "totally illogical."  (Declaration of Steven T. Rappoport, dated Oct. 7, 2019 ("Rappoport Decl.") Ex. A at 54:24-25; 57:14-22.)  Because Weir's Partial Efficacy Damages model is unconnected to Plaintiff's all-or-nothing theory of the case, that portion of his reports should be excluded.  So, too, should the variant of Weir's Unjust Enrichment Damages model that would provide class members with a fraction of revenue earned from the sale of Cutter Natural (*i.e.*, wholesale sales) by Defendant United Industries Corporation ("United Industries" of "Defendant"), a damages theory that is similarly unsupported by the Complaint (which alleges only that Cutter Natural was "worthless").

*Second*, Weir's Full Refund model, the variant of his Unjust Enrichment model in which he proposes to return full Wholesale Sales and his Statutory Damages models are not subjects of expertise.  Rather, these models—all of which rely on simple multiplication of numbers from data provided to Weir by United Industries—are basic math hardly beyond the ken of the average juror.  Courts regularly exclude experts who perform nothing more than simple math because such experts are not helpful to the trier of fact.  Weir should be excluded here for the same reason.

*Third*, even if Weir's Partial Efficacy Damages model was viable in this action (and it is not), Weir provides no support for this approach in the academic literature or scientific methodology.  This approach assumes that "Promised" duration and "Actual" duration are identical for every consumer, but, as explained in the report of Dr. Denise Martin of NERA

2

Economic Consulting, United Industries' expert, according to economic theory and evidence, both measures are actually quite individualized.  Indeed, a survey undertaken for United Industries by Dr. Melissa Pittaoulis confirms that many consumers purchased Cutter Natural because of its natural ingredients, its price, its smell or feel or because it was considered safe or healthy.  Further, Weir provides no explanation of how he would estimate "Actual" and "Promised" duration and, indeed, he conceded that he did *no analysis* of "Actual" duration.  The incompleteness of Weir's explanation of Partial Efficacy Damages alone merits his reports' exclusion.  Moreover, Weir uses duration as the only measure of efficacy, when a repellent's efficacy includes not just its duration but also the degree to which mosquitoes are repelled.  Mr. Weir's measure completely ignores this second element, when, as explained by Dr. Martin, certain consumers expressly indicate a willingness to trade efficacy of repellency for other product attributes, particularly avoiding the use of DEET.

*Finally*, Weir's effort to discredit Dr. Martin's report concerning consumers' preferences for attributes other than duration of repellency by suggesting that certain online reviews she used are fake should be excluded because it is unreliable and based on speculation.  Unlike Dr. Martin, Weir admitted that he did nothing to vet those reviews.  Dr. Martin conducted the process recommended in the very articles cited by Weir to vet reviews on which she relied and concluded that they did not exhibit the markers associated with fake reviews.  Weir also has failed to show that he is an expert on spotting fake reviews.  Although he claims to have read various articles concerning online reviews, Weir admitted that he has taken no classes and published no articles (peer-reviewed or otherwise) on the topic of fake reviews.

For all of these reasons, Weir's reports and testimony are unhelpful and unreliable and should be excluded.

3

## BACKGROUND

### A.    Plaintiff's All or Nothing Theory of the Case

Plaintiff alleges that in the summer of 2015, he purchased Cutter Natural Insect Repellent in reliance on statements made on the product label, including that Cutter Natural "repels mosquitos for hours." (Compl. ¶ 10.)  Plaintiff does not actually allege in his Complaint that he was bitten by insects, but he testified that he applied Cutter Natural as directed while swimming and playing sports at a "summer camp for adults" next to a lake in Pennsylvania over Labor Day but was still bitten by "insects." (Rappoport Decl. Ex. B at 44:23-45:4, 46:23-24; 54:14-55:13.) Plaintiff conceded he does not know what type of insect bit him, but he assumes the bites were from mosquitoes. (*See id.* Ex. B at 60:19-21.)  Plaintiff purchased Cutter Natural knowing it was a DEET-free product, even though growing up in Colorado it had been his practice to purchase DEET repellents because he "knew that DEET was effective at repelling insects." (*Id.* Ex. B at 46:7-47:23.)

On this sparse record, Parker alleges that "Cutter Natural is a complete sham" and "is ineffective and worthless" (Compl. ¶ 3; *see also id.* ¶¶ 6 ("not effective"), 45 ("Cutter Natural is ineffective to repel mosquitos."), 50 ("ineffective and worthless"); ECF No. 49 at 1 ("Cutter Natural is ineffective and worthless").)

### B.    Weir's Damages Measures

According to Weir, he was "asked by Counsel for Plaintiff to provide a framework for the calculation of damages and the harm suffered by the classes resulting from Defendants' allegedly ineffective Products." (Rappoport Decl. Ex. C ¶ 5.)  Weir further concedes "that it is possible to determine damages to the Classes in this case using the Defendants' own available business records, third party records and industry resources." (*Id.* Ex. C ¶ 6.)  But, while Weir posits three

possible measures of economic damages (*id*. Ex.C ¶ 7), he never provides an opinion on which measure of damages is appropriate in this case nor why.

Weir's proposed damages measures are:

- Full Refund Damages in the amount of the average retail price multiplied by number of units sold, which Weir says are appropriate if Plaintiff proves Cutter Natural is ineffective or unsafe (although there are no allegations that the product is unsafe) (*id*. Ex. C ¶¶ 7, 9-10);

- Partial Efficacy Damages, which Weir defines as a fraction of retail sales of the products "based upon the difference between efficacy of the Products as promised and the actual efficacy of the Products."  (*Id*. Ex. C ¶¶ 7, 11.)  Weir asserts that Partial Efficacy Damages can be used "[i]f there is a dispute as to the efficacy of the Product," and that "it would be possible to control for any potential value received by consumers."  (*Id*. Ex. C ¶ 11.)  Weir's only measure of efficacy, however, is the actual duration of the protection of the Products (*id*. Ex. C ¶ 12), and he has testified that he did not consider any other measure of efficacy or analyze "actual" duration or the value consumers received.  (*See id*. Ex. D at 35:4-12.);

- Unjust Enrichment Damages, which Weir defines as "either Defendant's revenues, or a portion of Defendant's revenues associated with the Products."  (*Id*. Ex. C ¶ 13.)  As explained above, Weir proposes that Unjust Enrichment Damages could be measured in one of two ways: (i) the amount of Defendant's total wholesale sales or (ii) the amount of Defendant's total wholesale sales multiplied by the same partial efficacy fraction tied to duration that he proposes for Partial Efficacy Damages.  (*Id*. Ex. C

¶ 14.)  Weir does not say which measure for unjust enrichment is appropriate, however.

Weir also offers to apply basic mathematics to calculate statutory damages, which are set by New York General Business Law ("GBL") §§ 349 and 350.  (*Id.* Ex. C ¶ 15.)[3]  Tracking the relevant statutes, Weir asserts that statutory damages under GBL § 349 would be $50 multiplied by the units of Product sold, while statutory damages under GBL § 350 would be $500 multiplied by the units of Product sold.  (*Id.* Ex. C ¶ 16.)

## ARGUMENT

The "trial court is obligated to act as a gatekeeper with respect to expert testimony." *SEC v. Tourre*, 950 F. Supp. 2d 666, 673 (S.D.N.Y. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The *Daubert* standard for assessing the admissibility of expert testimony is "exacting." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).  It is "critical that [the] expert's analysis be reliable at every step . . . . '*[A]ny* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.'"  *Amorgianos v. Nat'l R.R. Passenger*

---

[3] As set forth in its accompanying motion for summary judgment, United Industries opposes the application of statutory damages here.

*Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (emphasis in original).  For expert witness opinion to be admissible, the expert's testimony must be based upon sufficient facts and reliable methods and have "a reliable basis in the knowledge and experience of [the expert's] discipline." *Daubert*, 509 U.S. at 591-92.

Courts determine whether a proposed expert's testimony passes muster under Rule 702 by inquiring into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact.  *See*, *e.g.*, *Nimely v. City of N.Y.*, 414 F.3d 381, 396-97 (2d Cir. 2005).  Plaintiff here bears and fails to meet his burden of establishing that his expert and his testimony meet the requirements of Rule 702 by a preponderance of the evidence. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 593 n.10).

As set forth below, Weir's proposed models are either not tied to Plaintiff's theory of liability or are just simple math and, thus, not helpful to the trier of fact.  Weir's proposed models are also unreliable because he does not explain nor even analyze how his Partial Efficacy Damages model can be calculated and also assumes, without any support or analysis, that duration is the only measure of the Product's efficacy.  Pursuant to Rule 702 and *Daubert*, United Industries respectfully submits that Weir's report and testimony should be excluded for either or both reasons.

## I.    WEIR'S REPORTS AND TESTIMONY ARE UNHELPFUL TO THE COURT.

Weir's reports and testimony are unhelpful to the trier of fact both because they are not tied to Plaintiff's theory of the case—that Cutter Natural does not work at all and is

"worthless"—and because they advance damages "models" that require nothing more than simple math and, thus, are not the subject of expertise.

        **A.**        **There is No Connection Between the Models in Which Weir Proposes to Use his "Partial Efficacy" Ratio And the Harm Alleged By Plaintiff.**

Expert testimony that is not "sufficiently tied to the facts of the case" is inadmissible because it would be unhelpful and confusing to a jury. *Daubert*, 509 U.S. at 591. Indeed, pursuant to *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), Plaintiff "must propose a damages model consistent with [his] theory (or theories) of liability." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015). Weir's Partial Efficacy Damages model contemplates awarding Plaintiff a fraction of the retail price of the Cutter Natural products "based upon the difference between efficacy of the Products as promised and the actual efficacy of the Products." (Rappoport Decl. Ex. C ¶¶ 7, 11.) But Plaintiff does not allege that Cutter Natural worked for some period of time under some conditions or for some people some of the time; rather, Plaintiff alleges that Cutter Natural is "a complete sham" and "is ineffective and worthless." (Compl. ¶ 3; *see also id.* ¶¶ 6, 45, 50.) And Plaintiff's counsel confirmed that Plaintiff's theory is that Cutter Natural does not work *at all*. (*See* Rappoport Decl. Ex. A at 7:2-10 ("THE COURT: But you say in your complaint in paragraph 3 and even in your papers as you've argued, I think, particularly specifically in your reply brief, you say that "scientific evidence shows that Cutter Natural does not repel mosquitoes. The product is ineffective and worthless." MR. KOPEL: Sure. THE COURT: That's a statement that it doesn't work at all for anybody, right?" MR. KOPEL: That is what scientific evidence shows.").)

     As "[d]amages are measured by the difference 'between what the plaintiff paid and the value of what the plaintiff received,'" *Scotts EZ Seed*, 304 F.R.D. at 412 (quoting *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014)), Plaintiff must propose

damages models "that take into account the value of the product plaintiffs received, and the amount they paid for" Cutter Natural.  *Scotts EZ Seed*, 304 F.R.D. at 412.  Because Plaintiff alleges Cutter Natural was worthless, the "value" received by Plaintiff would be zero, and Plaintiff would be entitled (if he could prove his case) to a full refund; Weir's Partial Efficacy model, which would ascribe a value greater than zero to Cutter Natural does not track Plaintiff's theory of the case.  Consequently, Weir's Partial Efficacy Damages model should be excluded as it is not helpful to the trier of fact.  *See Comcast Corp.*, 569 U.S. at 35 (plaintiff's damages model "must measure only those damages attributable to [plaintiff's theory of liability]; If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class.").  Indeed, at the August 14, 2019 hearing on Plaintiff's motion for class certification, this Court told Plaintiff's counsel that "[t]here's no theory that you've given me so far that you could get partial recovery."  (Rappoport Decl. Ex. A at 54:24-25); *see also id.* at 57:14-22 ("[O]n this case there's no such thing as it has partial value instead of total value.  It either works as represented or doesn't work as represented.  If it works as represented, your client has no claim. If it doesn't work as represented, your client has a claim and maybe everybody who bought it has a claim.  I just don't see this sort of, well, give me a little bit of this if I can't get all of that on this theory . . . . It is even totally illogical.").

Like Partial Efficacy Damages, the variant of Weir's Unjust Enrichment Damages model in which he proposes to multiply wholesale sales by his Partial Efficacy ratio is similarly untethered to Plaintiff's theory of the case and should be excluded.  That version of the Unjust Enrichment Damages model contemplates awarding Plaintiff "a portion of Defendant's revenues associated with the Products."  (Rappoport Decl. Ex. C ¶ 13.)  For the same reason Weir's Partial

Efficacy Damages model does not comport with Plaintiff's theory of liability, this variant of his Unjust Enrichment model does not do so either.

Weir's Unjust Enrichment model (in either variant) is additionally untethered to Plaintiff's theory of liability because it is based on wholesale prices received by United Industries, rather than the retail prices paid by consumers.  In *Scotts EZ Seed*, another case in which Weir was retained as an expert by Plaintiff's counsel, Bursor & Fisher, P.A., the plaintiff alleged that a brand of grass seed did not grow grass "at all" or, "in the alternative," did not grow grass that was 50% thicker than that grown by other kinds of seed.  304 F.R.D. at 404.  There, Weir proposed a so-called "disgorgement" damages model, similar to his Unjust Enrichment Damages model here.  *Id*. at 412.[4]  The court rejected Weir's disgorgement damages model, opining that "although restitution 'may be measured in terms of [defendants'] ill-gotten gains,'" plaintiff's theories were that "EZ seed is worthless, and plaintiffs would be entitled to all of their money back" or that "plaintiffs paid a premium for EZ Seed based on false advertising, and would be entitled to recoup that premium."  *Id*. at 415 (citation omitted).  The court then rejected Weir's disgorgement theory because it did "not comport with *Comcast*'s requirement that class-wide damages match plaintiffs' legal theories."  *Id.*

The same result is appropriate here. Plaintiff contends only that Cutter Natural is worthless (Compl. ¶¶ 3, 6, 45, 50), and, thus, if he could prove his case, Plaintiff would be entitled to all of the money he spent on the Product, which is not the same as the amount United

---

[4] Although the court in *Scotts EZ Seed* characterized Weir's disgorgement model as awarding plaintiffs "the profits 'obtained by Scotts from the sale of EZ Seed,' 304 F.R.D. at 415, a review of Weir's declaration in that case reflects that his disgorgement model relied on Scotts' wholesale data to approximate the average wholesale price of EZ Seed, which was then multiplied by the wholesale number of EZ Seed units that Scotts sold to retailers in California and New York. (*Scotts EZ Seed*, No. 12-cv-4727, ECF No. 80 at ¶ 14 (S.D.N.Y. Mar. 31, 2014)  Here, Weir assumes that Unjust Enrichment Damages would be United Industries' total wholesale sales of Cutter Natural (Rappoport Decl. Ex. C ¶ 14), an amount roughly equivalent in concept to the amount that would be arrived at using Weir's disgorgement model in *Scotts EZ Seed*.

Industries received for the Product.  Plaintiff pleads no alternative theory of the case (*i.e.*, Plaintiff does not claim a partial efficacy or price premium theory of his case).  Thus, as in *EZ Seed*, Weir's Unjust Enrichment Damages model "does not comport with *Comcast*'s requirement that class-wide damages match plaintiff['s] legal theor[y]" and must be excluded.  *Scotts EZ Seed*, 304 F.R.D. at 415.

> **B.      Weir's Full Refund, Unjust Enrichment and Statutory Damages Calculations Are Simple Math, Not The Subject Of Expertise.**

Under Rule 702, the Court should determine whether "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  "Expert testimony is only admissible when such testimony is helpful to the trier of fact. . . . Such testimony is unnecessary where the jury is capable of comprehending the facts and drawing the correct conclusions from them."  *United States v. Cook*, 922 F.2d 1026, 1036 (2d Cir. 1991).  Here, Weir's Full Refund Damages, the variant of his Unjust Enrichment Damages model in which he proposes to return to the class full wholesale sales and his Statutory Damages models should be excluded because they are not based on any expertise or specialized knowledge.  Weir simply suggests that either the retail or wholesale price per Cutter Natural unit, or the statutory award, can be multiplied by the total number of Cutter Natural units sold. (Rappoport Decl. Ex. C ¶¶ 23-27.)  The law is clear, however, that "[e]xpert testimony is [] not admissible when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).  *See also Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000) (excluding testimony of expert not based on specialized expertise but only on "basic calculations"); *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, 2015 WL 5708541, at *7 (D. Conn. Sept. 29,

2015) (excluding expert report where plaintiff failed "to show how these calculations are more than simple  math that a jury could do without the assistance of an expert"); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289, at *3, 5-6 (D. Conn. Apr. 9, 2010) (excluding an expert's testimony where he performed simple addition and multiplication to arrive at numbers a jury could have calculated).

The Second Circuit has instructed that "the district court should not admit testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (citation omitted); *see also In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) ("[E]xpert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's.'" (citations omitted).  In fact, the Court "may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror."  *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).

Weir's Full Refund damages model and the variant of his Unjust Enrichment damages model in which he proposes to return full wholesale sales are simple multiplication based on information that can be applied by the trier of fact without specialized expertise.  For Full Refund Damages, Weir merely restates the full retail amount of Cutter Natural sold based on data produced by United Industries from three retailers' point-of-sale systems and Nielsen data, as well as IRI data obtained by counsel, doing no more than multiplying the number of retail

sales by the retail price. (Rappoport Decl. Ex. C ¶¶ 17-25.)  For this variant of his Unjust

Enrichment Damages, Weir uses the wholesale data provided by United Industries, multiplying

the wholesale price by the number of units sold, to restate the full wholesale revenue Cutter

Natural received. (*Id.* Ex. C ¶¶ 13-15.)  There is no "expertise" in these calculations—any person

with a calculator can multiply number of units sold by their price.  This Court and a jury are fully

capable of understanding the total wholesale and retail sales of Cutter Natural without Weir's

testimony.  *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) (excluding

experts' opinions that did not 'draw on their areas of actual expertise' and for which '[a]ny juror

could have employed common sense to perform the same analysis'").

Likewise, with respect to Statutory Damages, Weir multiplies the number of Cutter

Natural units sold by the $50 statutory damages awarded per "violation" under GBL §§ 349 and

350.  (Rappoport Decl. Ex. C ¶¶ 28-30.)  In *Scotts EZ Seed II*, the Court acknowledged that

Weir's statutory damages calculation was "hardly a complicated analysis" but allowed his

testimony, which included number of violations, to "assist the trier of fact in understanding how

he calculated the number of 'violations' . . . and how that translates into a total damages

amount," 2017 WL 3396433, at *11 (S.D.N.Y. Aug. 8, 2017).  Here, by contrast, not only are

Weir's reports and testimony "hardly a complicated analysis" but he also provides *no* analysis of

how sales translate into "violations."  Weir simply states that his "analysis shows" that statutory

damages can be calculated as set forth in a table (Rappoport Decl. Ex. C ¶¶ 28-29), but provides

no explanation for this calculation—his opinion is literally just a few instances of multiplication.

Thus, even were the Court to find Statutory Damages permissible here and—United Industries

respectfully submits, and will show in its summary judgment motion why, the Court should not

do so—there is no reason Weir's calculation or testimony is necessary or should be presented to the jury.

## II.     WEIR'S REPORTS AND TESTIMONY ARE UNRELIABLE.

In addition to being unhelpful, Weir's reports and testimony are also unreliable because he does not explain how his Partial Efficacy Damages Model can be calculated and also assumes, without any support, that duration is the only measure of efficacy.

### A.     Weir Fails to Explain How His Partial Efficacy Damages Model Can Be Calculated.

In addition to being unhelpful because it is not tied to Plaintiff's theory of the case, Weir's Partial Efficacy Damages model is also inadmissible because Weir provides no explanation of his methodology for arriving at his Partial Efficacy fraction nor support in the academic literature or scientific methodology for the use of the so-called "actual" duration of the product divided by the advertised or "promised" duration of the product. Weir's denominator—the "promised" duration to which he refers—is two hours, *likely* (although not explicitly) an assumption based on the Cutter Natural label statement that the product works for "up to 2 hours." (*See* Compl. ¶ 2; Rappoport Decl. Ex. C ¶ 12.) But Weir does not propose *any* way to determine the numerator—the "actual" duration for which the product worked and on which his calculation would be based. In fact, Weir said he had not even "given any consideration" to performing a survey of purchasers concerning how long Cutter Natural actually worked. (Rappoport Decl. Ex. D at 49:12-18.)

"An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). Here Weir offers none. Weir's failure to explain how he could determine the numerator alone warrants exclusion of his Partial Efficacy

Damages model.  *See id.* (affirming exclusion of expert where he "essentially provided no explanation as to how he had reached his conclusion"); *Turrentine v. Bell Canada*, 173 F.3d 846 (2d Cir. 1999) (affirming exclusion of expert "[g]iven the paucity of detail explaining what methodology [the expert] employed in reaching his conclusion").

In fact, in *In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014), the court excluded another of Weir's proffered opinions, a "conjoint" damages model—which used a survey to analyze how people value certain product characteristics—because, like here, he failed adequately to explain his analysis.  In particular, defendant there argued that Weir's report should be excluded because he had "not determined the characteristics of the survey sample he would use in the analysis, the list of relevant product attributes, the sample size of the survey, or whether he would conduct separate surveys in each proposed class state or one large multi-state survey."  *Id.* at 551.  The court agreed, finding that:

> "[a]lthough the methodologies he describes may very well be capable of calculating damages in this action, Weir has made no showing that this is the case. He does not identify any variables he intends to build into the models, nor does he identify any data presently in his possession to which the models can be applied. The court is thus left with only Weir's assurance that he can build a model to calculate damages.  Stated differently, his declaration is 'so incomplete as to be inadmissible as irrelevant.'"

*Id.* at 552 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)).

The same is true here—Weir provides literally no support for his partial efficacy fraction, much less any explanation as to how he would determine the actual efficacy numerator.  His reports and testimony are "so incomplete as to be inadmissible as irrelevant."  *Con-Agra*, 302 F.R.D. at 552.  This, too, warrants Weir's exclusion.

**B.**     **Weir Uses Duration as the Only Measure of Efficacy.**

Furthermore, in his Partial Efficacy Damages model and the variant of his Unjust

Enrichment Damages models that relies on his Partial Efficacy ratio, Weir uses duration as the

only measure of efficacy (Rappoport Decl. Ex. C ¶ 12), even though other measures of efficacy

exist.  For example, as noted in the *WHO Guidelines for Testing of Mosquito Repellents for*

*Human Skin* (which is appended to the report of one of Plaintiff's experts), "A repellent may

provide efficacy by a reduction in biting activity . . . ."  (*Id.* Ex. E at Ex. C at 4 n.1).  That is, the

WHO Guidelines recognize that a repellent's efficacy includes not just its duration but *the*

*degree to which* mosquitoes are repelled.  As United Industries' expert, Dr. Martin, explained in

her report rebutting Weir's report, some consumers are willing to trade the greater protection of a

non-DEET repellent for slightly less protection from an alternative, natural product like the one

at issue here.  (*See id.* Ex. F ¶ 28.)  Indeed, one of the individual reviews Dr. Martin surveyed

stated that "I understand repellents containing DEET may be more effective at repelling

mosquitoes, but I purchase Cutter Natural because I want to avoid the chemicals that are in

DEET repellents and I believe non-DEET products are safer for my family."  (*Id*. Ex. F ¶ 20.)

Dr. Martin also noted that "[c]onsumers will vary in the desired use of the product—some may

intend to engage in activities that were well under the 'promised' duration—and so may place

little or no value on any duration exceeding their needs."  (*Id.* Ex. F ¶ 28.)

A survey undertaken by Dr. Pittaoulis confirms that most consumers purchased Cutter

Natural for reasons having nothing to do with the duration of protection from mosquito bites.

More than one-fifth of the consumers surveyed told Dr. Pittaoulis that they purchased Cutter

Natural because of its "natural ingredients," while nearly 11% said they purchased the Product

because of its "smell/feel" and another approximately 7% said they purchased Cutter Natural

because it was "safe/healthy."  (*Id.* Ex. G ¶ 38 & Table 3.)  And while more than one-third of

respondents said they purchased Cutter Natural to "repel insects," only 1.7% of respondents said they purchased the Product because of "duration" of protection.  (*Id.*)  Another question in the survey provided respondents a list of reasons for purchasing Cutter Natural, and nearly half said they chose the Product because it was "natural," nearly 40% said they preferred the "ease of application" and almost 22% said they purchased the Product because it was "DEET-free."  (*Id.* Ex. G ¶ 39 & Table 4.)  Only 18.1% of consumers said they purchased the Product because of "the length of time it works."  (*Id.*)

But Weir did not consider *any* other measures of efficacy beyond duration and, in fact, stands by his use of duration as the sole indicator of efficacy without citing any support for his position.  This is precisely the sort of *ipse dixit* testimony that Rule 702 was designed to combat. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 43 (S.D.N.Y. 2016) ("'conclusions and methodology are not entirely distinct from one another' and 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## III.    WEIR'S OPINION ON ONLINE REVIEWS IS UNRELIABLE, AND HE IS NOT AN EXPERT ON SPOTTING FAKE REVIEWS.

In his untimely May 3, 2019 declaration submitted as a sur-rebuttal to United Industries' rebuttal expert report,[5] Weir opines that Dr. Martin relied on "unvetted, anonymous reviews from the internet" that are "notoriously unreliable, and are often manipulated to boost retail sales." (Rappoport Decl. Ex. H ¶¶ 28, 30.)  But Weir's opinion is unreliable, and he is also not an expert with respect to online reviews.

---

[5] United Industries filed a pending motion to strike Weir's May 3, 2019 declaration (Dkt. No. 73), as it improperly submitted as a sur-reply to United Industries' April 15, 2019 rebuttal report of Dr. Denise Martin.

First, Weir's opinion that certain of the reviews Dr. Martin referenced "are notoriously unreliable" and "often manipulated" (*Id.* Ex. C ¶ 30) is itself unreliable.  Weir based his opinion on two articles from CNBC concerning fake reviews on Amazon.com, one of which provided tips on spotting fake reviews.  (*Id.* Ex. C ¶ 30 & nn. 10-11)  These tips included "Don't rely on ratings.  Delve deeper and read the reviews.  Do they sound natural?  Are they repetitive?"  (*Id.* Ex. D at 135:1-12; *id.* Ex. P.)  But when asked whether he, in fact, "delve[d] deeper and read the reviews" that he opined were unreliable, Weir said he did not know whether reading reviews "would be something you need to do to spot a fake review or not" (*Id.* Ex. D at 135:13-20), and he admitted that he did not know whether he had "read anything that discusses" the veracity of reviews concerning Cutter Natural.  (*Id.* Ex. D at 143:8-13.)  In fact, Weir testified that he "didn't feel the need to vet" online reviews of Cutter Natural.  (*Id.* Ex. D at 146:10-15.)

Dr. Martin, by contrast, read the reviews on which she relied "closely" (*Id.* Ex. Q at 176:3-4) and "vetted the[ir] legitimacy" (*id.* Ex. Q at 214:11-13).  In particular, Dr. Martin looked to see whether certain accepted "markers" of suspect reviews were present, such as whether five star reviews all appeared on the same day or whether there was a range to the ratings that reviewers gave.  (*Id.* Ex. Q at 221:23-222:7.)  Weir did none of this; therefore, his opinion that online reviews are often unreliable amounts to nothing more than the kind of "subjective belief or unsupported speculation" prohibited under *Daubert*.  509 U.S. at 509; *see also Amorgianos*, 303 F.2d at 266 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."); *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) ("Expert opinions based on insufficient facts or data, or on unsupported suppositions is not acceptable.").

Second, Weir has not held himself out as an expert on spotting fake customer reviews; as he acknowledged at his deposition, he has never taken a course on spotting fake reviews or published an article on the subject or attempted to analyze the veracity of reviews for a given product.  (Rappoport Decl. Ex. D at 131:4-20.)  Weir is simply not qualified to opine as an expert on the legitimacy of online reviews for the Cutter Natural products.  Weir holds a B.A. in Business Economics from The College of Wooster and an M.B.A. from Northeastern University.  (*Id.* Ex. H ¶ 1.)  He has not disclosed any aspect of his educational training or his experience that qualifies him to opine on the legitimacy of online reviews.  Just because a witness "qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."  *Nimely*, 414 F.3d at 399 n.13.  Whether a proposed expert witness "has the requisite qualifications depends on his or her educational background, training, and experience in the field(s) relevant to the opinions he or she seeks to give."  *Tourre*, 950 F. Supp. 2d at 674 (citation omitted).  An expert's training and experience must be "in a field *closely related to the area to the proposed testimony*" to be sufficient under Rule 702.  *Id.* (emphasis added).

Weir provides an opinion that is unreliably based on idle speculation, and he offers no basis to qualify as an expert on online reviews.  *See Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 458 (E.D.N.Y. 2011) (excluding as "merely subjective belief" opinion of expert where a particular control was necessary but there was no evidence the expert implemented that control).  The Court should therefore strike Weir's opinions with respect to the veracity of the online reviews relied on by Dr. Martin.

**CONCLUSION**

For all of the foregoing reasons, Weir's report falls well short of the "exacting"

requirements of Federal Rule of Evidence 702 and *Daubert*, and United Industries respectfully

requests that his testimony and reports be excluded.

Dated: New York, New York
       October 7, 2019

MORRISON & FOERSTER LLP


By:   /s/ Jamie A. Levitt
          Jamie A. Levitt

Jamie A. Levitt
Steven T. Rappoport
Gerardo Gomez Galvis
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
JLevitt@mofo.com
SRappoport@mofo.com
GGomezGalvis@mofo.com

Claudia M. Vetesi
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
cvetesi@mofo.com

Ronie M. Schmelz
TUCKER ELLIS LLP
515 South Flower Street
Forty Second Floor
Los Angeles, CA 90071
Telephone: (213) 430-3400
ronie.schmelz@tuckerellis.com

Attorneys for Defendant
*United Industries Corporation*