UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

NICHOLAS PARKER, on behalf of himself and all
others similarly situated,

                       Plaintiff,

        -against-

UNITED INDUSTRIES CORPORATION,

                    Defendant.

-------------------------------------------------------------------x

No. 1:17-cv-05353-GBD-HBP

JUDGE GEORGE B. DANIELS

**ECF CASE**

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

    A.    UIC Developed Cutter Natural to Meet Consumer Demand for a DEET-Free Personal Mosquito Repellent. ........................................................................... 2

    B.    Cutter Natural Is a "Minimum Risk Pesticide" and Exempt From EPA Registration and Testing Guidelines. ........................................................... 2

    C.    ██████████████████████████████████████████ .... 3

    D.    The Efficacy of Personal Insect Repellents Is Influenced By a Number of Factors and Varies Among Individuals. ......................................................... 4

    E.    Consumers Were Satisfied with Cutter Natural and 99% Thought It Was Effective at Repelling Mosquitoes. .................................................................. 5

    F.    Plaintiff Had Limited Experience with the Product during a Labor Day Trip to an Adult Outdoor Camp in Pennsylvania. ................................................. 6

    G.    Two Years Later, Plaintiff Files this Lawsuit. ............................................... 7

LEGAL ARGUMENT ........................................................................................................... 7

I.    SUMMARY JUDGMENT LEGAL STANDARD ................................................. 7

II.    PLAINTIFF FAILS TO PROVE A FALSE OR MISLEADING STATEMENT AS HE HAS NO EVIDENCE THAT THE PRODUCT IS INEFFECTIVE FOR EVERYONE. . 9

    A.    Plaintiff Has No "Scientific Studies" Showing that the Product Fails to "Repel Mosquitoes" for all Consumers. ....................................................... 9

    B.    ███████████████████████████████████████ ....... 12

    C.    Consumer Evidence Refutes Plaintiff's Allegation that the Product Is "wholly ineffective." ........................................................................................ 13

III.    PLAINTIFF FAILS TO PROVE ANY CONSUMER DECEPTION OR THAT THE PRODUCT LABELS WERE "MATERIALLY MISLEADING" .................................. 13

i

A.      Plaintiff's Personal Experience with the Product Does Not Prove that it is Ineffective for Everyone or Support a Claim of Deception................................... 14

B.      Plaintiff's "Mosquito Expert" Testimony Does Not Address or Support a Claim of Consumer Deception............................................................................................. 15

C.      Actual Evidence Conclusively Refutes a Finding of Deception or Materiality.... 15

IV.     PLAINTIFF HAS NO EVIDENCE OF INJURY CAUSED BY THE PRODUCT'S LABELS NOR ANY THEORY OF DAMAGES TO SUPPORT HIS CLAIMS............ 17

A.      Plaintiff Fails to Prove that He Was Damaged or Suffered Any Injury. .............. 17

B.      Plaintiff Has Failed to Prove Class-Wide Injury or a Viable Damages Model. ... 18

V.      PLAINTIFF'S CONCLUSORY ALLEGATIONS FAIL TO PROVE ANY OF THE ELEMENTS OF HIS FRAUD CLAIM............................................................................. 20

A.      Plaintiff Has Not Shown Any Misrepresentation of a Material Fact.................... 21

B.      Plaintiff Has Not Established the Key Element of Scienter. ............................... 22

C.      Plaintiff Has Not Shown Justifiable Reliance....................................................... 22

D.      Plaintiff Cannot Establish Injury For His Fraud Claim. ....................................... 23

VI.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.......................... 23

VII.    CONCLUSION.................................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   888 F. Supp. 2d 478 (S.D.N.Y. 2012)................................................................20, 22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................8

*Anwar v. Fairfield Greenwich Ltd.*,
   306 F.R.D. 134 (S.D.N.Y. 2015) ..........................................................................23

*AUSA Life Ins. Co. v. Ernst & Young*,
   206 F.3d 202 (2d Cir. 2000), *aff'd*, 39 F. App'x 667 (2d Cir. 2002)....................20

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016)...................................................................24

*Butala v. Agashiwala*,
   916 F. Supp. 314 (S.D.N.Y. 1996)........................................................................21

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................................8

*Century Pac., Inc.* v. *Hilton Hotels Corp*,
   528 F. Supp. 2d 206 (S.D.N.Y. 2007)...................................................................21

*City of N.Y. v. Smokes–Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009)..................................................................................8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).................................................................................................19

*Conn. Nat'l Bank v. Fluor Corp.*,
   808 F.2d 957 (2d Cir. 1987)..................................................................................21

*DiBartolo v. Abbott Labs.*,
   914 F. Supp. 2d 601 (S.D.N.Y. 2012)...................................................................9

*DiMuro v. Clinique Labs., LLC*,
   572 F. App'x 27 (2d Cir. 2014) ............................................................................15

*Distasio v. Perkin Elmer Corp.*,
   157 F.3d 55 (2d Cir. 1998)....................................................................................7

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174 (S.D.NY. Dec. 11,
2013) ........................................................................................................................................9

*Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*,
No. 12 Civ. 01416 (GBD) (RLE), 2014 U.S. Dist. LEXIS 109226 (S.D.N.Y
Aug. 5, 2014) .........................................................................................................................18

*Fermin v. Pfizer Inc.*,
215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...................................................................................14

*Frederick v. Capital One Bank (USA), N.A.*,
No. 14-CV-5460 AJN, 2015 U.S. Dist. LEXIS 125111 (S.D.N.Y. Sept. 17,
2015) ......................................................................................................................................14

*Gaidon v. Guardian Life Ins. Co. of Am.*,
725 N.E.2d 598 (N.Y. 1999).................................................................................................21

*Hart v. BHH, LLC*,
No. 15CV4804, 2016 LEXIS 59943 (S.D.N.Y. May 5, 2016)..............................................15

*Hazelhurst v. Brita Prods. Co.*,
744 N.Y.S.2d 31 (N.Y. App. Div. 2002) ..............................................................................23

*Herzfeld v. JPMorgan Chase Bank, N.A.*,
354 F. App'x 488 (2d Cir. 2009) ..........................................................................................21

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26,
2016) ...............................................................................................................................17, 24

*Koenig v. Boulder Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014).....................................................................................8

*Kommer v. Bayer Consumer Health*,
252 F. Supp. 3d 304 (S.D.N.Y. 2017)...................................................................................24

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017)...........................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................................................8

*New World Sols., Inc. v. NameMedia Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. 2015).....................................................................................8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..................................................................................................24

*In re Parmalat Secs. Litig.*,
   477 F. Supp. 2d 637 (S.D.N.Y. 2007)......................................................................11

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
   772 F.3d 111 (2d Cir. 2014)................................................................................20

*Pasternack v. Lab. Corp. of Am.*,
   No. 10 CIV. 4426 (PGG), 2011 U.S. Dist. LEXIS 88311 (S.D.N.Y. Aug. 1,
   2011) ......................................................................................................................22

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82 (S.D.N.Y. 2010) ............................................................................14

*Red v. Kraft Foods, Inc.*,
   No. 10-CV-1028, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012)........16

*Ritchie v. N. Leasing Sys., Inc.*,
   No. 12-CV-4992 (KBF), 2016 U.S. Dist. LEXIS 40537 (S.D.N.Y. Mar. 28,
   2016) ......................................................................................................................22

*Ritchie v. Taylor*,
   701 F. App'x 45 (2d Cir. 2017) ............................................................................22

*Rouse v. Elliot Stevens, Ltd.*,
   No. 13-CV-01443 (SN), 2016 U.S. Dist. LEXIS 152678 (S.D.N.Y. Nov. 3,
   2016) ......................................................................................................................21

*Schwartz v. Novo Industri A/S*,
   119 F.R.D. 359 (S.D.N.Y. 1988) ..........................................................................22

*Segovia v. Vitamin Shoppe, Inc.*,
   No. 14-CV-7061 (NSR), 2017 U.S. Dist. LEXIS 204828 (S.D.N.Y. Dec. 12,
   2017) ..........................................................................................................16, 17, 18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)..............................................................................................20

*In re Signature Apparel Grp. LLC*,
   577 B.R. 54 (Bankr. S.D.N.Y. 2017) ....................................................................22

*Small v. Lorillard Tobacco Co.*,
   720 N.E.2d 892 (N.Y. 1999)..................................................................................20

*Solak v. Hain Celestial Grp., Inc.*,
   No. 3:17-CV-0704, 2018 U.S. Dist. LEXIS 64270 ................................................16

*Stewart v. Riviana Foods Inc.*,
  No. 16-CV-6157 (NSR), 2017 U.S. Dist. LEXIS 146665 (S.D.N.Y. Sept. 11,
  2017) ....................................................................................................................14

*Tomasino v. Estee Lauder Cos.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..................................................................24

*Tramontana v. Home Depot U.S.A., Inc.*,
  No. 15-CV-8528 (NSR), 2018 U.S. Dist. LEXIS 163259 (S.D.N.Y Sept. 24,
  2018) ....................................................................................................................11

*United States v. Shenghur*,
  734 F. Supp. 2d 552 (S.D.N.Y. 2010)..................................................................11

*Vaccariello v. XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013) .....................................................................18, 24

*Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*,
  373 F. Supp. 2d 360 (S.D.N.Y. 2005)..................................................................22

*In re Whole Foods Mkt. Grp., Inc.*,
  No. 15 Civ 5838 (PAE), 2019 U.S. Dist. LEXIS 119006 (S.D.N.Y. July 17,
  2019) ....................................................................................................................18

*Wurtz v. Rawlings Co., LLC*,
  No. 12-CV-1182 (JMA) (AKT), 2016 U.S. Dist. LEXIS 172680 (S.D.N.Y.
  Nov. 17, 2016) .....................................................................................................15

*Wurtzburger v. Ky. Fried Chicken*,
  No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. Dec. 13,
  2017) ......................................................................................................................8

## STATUTES

New York Civil Practice Law and Rules § 901(b) ......................................................20

New York General Business Law
  § 349............................................................................................................ *passim*
  § 350............................................................................................................ *passim*

**RULES**

Fed. R. Civ. P.

9(b).....................................................................................................................................21, 22
23.............................................................................................................................................20
56(a)..........................................................................................................................................7

**OTHER AUTHORITIES**

40 C.F.R. § 152.25(f)...............................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff Nicholas Parker broadly claims that Cutter Natural Insect Repellents ("Cutter Natural" or the "Product")—a DEET-free alternative to other insect repellents—are a "complete sham" and "ineffective and worthless" for everyone because they do not repel mosquitoes.[1]  He bases his misrepresentation claim on his allegation that he used the Product's pump bottle form on Labor Day weekend in 2015 while he was at a three-day adults-only camp next to a lake in Pennsylvania.  He contends that he applied the Product as directed and still suffered "bites," although he could not say for certain whether his bites were from mosquitoes, or other insects.  Plaintiff also did not testify as to whether he reapplied the Product after engaging in activities such as sports and swimming, which would have washed off some of the Product.  The undisputed facts show that Plaintiff has failed to prove his case and United Industries Corporation ("UIC") respectfully submits that the Court should enter summary judgment in its favor on all claims.

*First*, Plaintiff has no evidence to support his overarching claim that the Product is "ineffective and worthless" for all consumers.  His very limited personal experience with the Product's pump form and his testing expert's irrelevant and unreliable testimony are insufficient to meet his burden.  Moreover, the undisputed evidence in the record shows exactly the opposite of what Plaintiff claims: ███████████████████████████████, and a consumer survey, in which 90% of consumers surveyed said they were very satisfied or satisfied with the Product's effectiveness, all show that the Product is effective and does repel mosquitoes as advertised.

*Second*, Plaintiff's claims fail because he has no evidence that reasonable consumers are likely to be deceived or that the Product's labels were materially misleading.  As such, Plaintiff has not shown that the truthful and accurate label statements would deceive a reasonable consumer.

*Third*, Plaintiff has no evidence of personal or class-wide damages or injury.  Plaintiff's vague

---

[1] Cutter Natural Insect Repellent comes in two forms:  a pump bottle and an aerosol can.  (56.1 ¶ 3.)  Use of the term "Product" refers to both forms of Cutter Natural Insect Repellent.

ny-1764579

testimony does not support a finding that the Product was "worthless" or injured him in any way.  Nor is there any evidence of class-wide damages.  Similarly, Plaintiff's damages expert fails to set forth a viable damages model that comports with Plaintiff's theory of liability.

*Fourth*, Plaintiff has no evidence to support his fraud claim and does not prove any element of this claim individually or on a class-wide basis, particularly where he fails to establish UIC's alleged fraudulent intent, a key element in any fraud action.

*Finally*, Plaintiff lacks standing to pursue injunctive relief because he does not allege he would buy the Product again.  Nor can he be "duped" again by the Product.

There are no issues of material fact, Plaintiff failed to prove his case, and UIC respectfully submits that the Court should grant summary judgment in favor of UIC as to all claims.

## STATEMENT OF FACTS

### A. UIC Developed Cutter Natural to Meet Consumer Demand for a DEET-Free Personal Mosquito Repellent.

Cutter Natural is a DEET-free personal mosquito repellent.  Many personal insect repellents marketed to U.S. consumers contain the pesticide commonly known as DEET.  (56.1 ¶ 1; Ex. A ¶ 27.)[2] UIC developed Cutter Natural, in both pump and aerosol form, for consumers who desired "DEET alternatives and different chemicals than what a typical repellent might contain."  (56.1 ¶ 3; Ex. D, 17:22-24.) ███████████████████████████████████████████████, which is known to repel mosquitoes. ███████████

### B. Cutter Natural Is a "Minimum Risk Pesticide" and Exempt From EPA Registration and Testing Guidelines.

The EPA classifies personal insect repellents that contain only those active and inert ingredients listed at 40 C.F.R. § 152.25(f) (the "Rule 25(b) List") as "Minimum Risk Pesticides."  (56.1 ¶ 4; Ex. A ¶ 23.)  "Minimum Risk Pesticides" are exempt from EPA registration requirements and are not subject

---

[2] References to "Ex. _" are to exhibits attached to the Declaration of Jamie A. Levitt In Support of Defendant's Rule 56.1 Statement, unless otherwise indicated.

to EPA testing requirements.  (56.1 ¶ 4; Ex. A ¶ 23.) ███████████████████

████████████████████████████████████████████████████████

████████████████████████ Thus, the Product is a "Minimum Risk Pesticide."  (56.1 ¶ 4;

Ex. E ¶ 12.)  Although personal insect repellents with active and inert ingredients listed in the Rule

25(b) List are exempt from EPA registration and testing requirements, over 40 states require

registration of such products, and seven states and the District of Columbia require manufacturers to

submit efficacy data with their product registration applications.  (56.1 ¶ 5; Ex A ¶ 25.) ████████

████████████████████████████████████████████████████████

██████████████████████████████

     **C.** ████████████████████████████████████████████

The labels on the Product state that it "Repels Mosquitoes For Hours" (on the front display

panel) and "keeps mosquitoes away from you and your family for up to 2 hours" (on the back panel).

(56.1 ¶ 6; Ex. F.) ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

ny-1764579

In 2012, UIC decided to manufacture an aerosol form of the Product, ███████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████, UIC marketed the Product nationwide as a

DEET-free alternative personal insect repellents. ██████████████████████████

### D.   The Efficacy of Personal Insect Repellents Is Influenced By a Number of Factors and Varies Among Individuals.

Both parties agree that some people are more or less susceptible to being bitten by mosquitoes

based on their unique attributes. ████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ Plaintiff's testing expert, Scott W. Gordon, agreed that "[t]here are

a number of factors that mosquitoes use . . . to find human hosts"—specifically: "There is carbon

dioxide which is emitted from exhaling.  (56.1 ¶ 20; Ex. C, 285:11-25.)  As Dr. Gordon testified, "there is body heat, there is [sic] skin emanations, a number of chemicals that occur on the skin that are attractive to mosquitoes, lactic acid, ammonia, some fatty acids, there are literally thousands of compounds that have been associated with the human body. . . ."  (56.1 ¶ 20; Ex. C, 285:11-25.)

As Plaintiff's expert confirmed, the active ingredients in a personal insect repellent will also influence the product's effectiveness, with DEET products generally recognized as providing more and longer protection than non-DEET products.  (56.1 ¶ 22; Ex. A, ¶ 26, Ex. C, 62:23-64:11.)  But, Plaintiff's expert continued, it is common for people to be bitten by mosquitoes even after applying an insect repellent, including those that contain DEET.  (56.1 ¶ 23; Ex. C, 97:4-99:1.)

### E.  Consumers Were Satisfied with Cutter Natural and 99% Thought It Was Effective at Repelling Mosquitoes.

Since introducing Cutter Natural in June 2010, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████  Two consumers—one who purchased the Product and another who purchased Repel Natural (which also comes in pump and aerosol forms that have the exact same formulas as the Product's pump and aerosol forms)—submitted declarations attesting to their use of the Product and the fact that it was effective in repelling mosquitoes for several hours.  (56.1 ¶ 28; Ex Q.)

Furthermore, in light of Plaintiff's lack of evidence, for purposes of summary judgment, class certification and Daubert motions, UIC retained NERA Economic Consulting to conduct a consumer survey regarding consumers' experience and satisfaction using the Product.  (Declaration of Melissa Pittaoulis ("Pittaoulis Decl.") ¶ 7.)  The results were overwhelming:  89.8% of respondents were either "very satisfied" or "satisfied" with Cutter Natural.  (Pittaoulis Decl. ¶ 8.)  Moreover, 98.6% of

ny-1764579

consumers thought the Product was either "extremely" effective at repelling mosquitoes (54.6%) or "somewhat" effective (44%) at repelling mosquitos.  (*Id.*)

### F.     Plaintiff Had Limited Experience with the Product during a Labor Day Trip to an Adult Outdoor Camp in Pennsylvania.

Plaintiff grew up in Colorado where he was a "big outdoorsman" who often applied insect repellent.  (56.1 ¶ 29; Ex. N, 37:21-24, 40:23-41:4.)  Plaintiff frequently used Cutter brand and other insect repellents containing DEET because he was susceptible to mosquito bites, a "common occurrence" whenever he engaged in outdoor activities.  (56.1 ¶ 30; Ex. N, 42:22-43:4, 43:15-23, 46:7-47:23.)  Over Labor Day weekend in 2015, Plaintiff attended a summer camp for adults in the mountains of northeastern Pennsylvania called "Camp No Counselors" (the "Camp").  (56.1 ¶ 31; Ex. N, 44:23-45:4.)[3]  At the Camp, Plaintiff participated in outdoor activities such as hiking, playing Capture the Flag, swimming in a lake, and sitting by a campfire in the evenings.  (56.1 ¶ 33; Ex. N, 54:12-25, 56:4.)

Before attending the Camp, Plaintiff alleges he purchased a pump form of the Product.  (56.1 ¶ 34; Ex. N, 44:23-25, 49:11-23, 62:19-21.)  Plaintiff testified that he purchased the Product knowing it was a DEET-free product, even though he "knew that DEET was effective at repelling insects."  (56.1 ¶ 35; Ex. N, 48:14-23.)  While at the Camp, Plaintiff vaguely alleges he applied the Product as directed on the label.  (56.1 ¶ 36; Ex. N, 56:8-57:3.)  Plaintiff also alleges he was bitten after applying the Product, though he could not recall exactly where on his body, and that the Product is therefore "a complete sham," "ineffective," and "worthless."  (56.1 ¶ 37; Ex. N, 59:7-12; Compl. ¶ 3.)  Plaintiff admits, however, that he does not know if he was bitten by mosquitoes or other insects.  (56.1 ¶ 39; Ex. N, 60:19-21.)  He also did not testify as to whether he reapplied the Product after swimming, after

---

[3] The Camp is located in northeastern Pennsylvania but markets itself as being located in the New York area.  *See* https://www.campnocounselors.com/new-york (last visited Sept. 27, 2019) (describing the Camp as the "ultimate summer camp for you to live our [sic] your Wet Hot American Summer dreams" and listing amenities and outdoor activities offered including, sports, swimming pool, hikes, open bars, among others).  Plaintiff could not "recall the exact location" of the Camp and incorrectly described it as located in "Upstate New York."  (56.1 ¶ 32; Ex. N, 45:2-4.)

sweating during the Camp's many outdoor activities or while outside in the evening.  (56.1 ¶ 38; Ex. N, 56:12-14.)  Nor did he testify as to how long after applying the Product he was bitten, including whether it was less than two hours after he applied the Product.

### G.      Two Years Later, Plaintiff Files this Lawsuit.

Rather than complain to UIC about the Product, Mr. Parker waited almost two years after his 2015 Labor Day trip to file a lawsuit in July 2017.  (56.1 ¶ 44; Ex. N, 12:7-16.)  It was not until Plaintiff spoke with the law firm where his college friend and then-roommate works—Bursor & Fisher—that he decided to file this suit.  (56.1 ¶ 44; Ex. N, 11:13-13:24; 31:13-23.)  Mr. Parker did no research into the Product other than read online reviews.  (56.1 ¶ 45; Ex. N, 91:15-92:16.)  Indeed, the basis for his claim that the Product is "ineffective" and "worthless" comes from class counsel.  (56.1 ¶ 45; Ex. N, 100:14-101:5.)

The gravamen of Plaintiff's complaint is that because, he claims, the Product is *entirely worthless for everyone*, UIC misrepresented that the Product is an "insect repellent" and that it "repels mosquitoes for hours."  (Compl. ¶¶ 3, 40, 44.)  In the alternative, he alleges that UIC failed to disclose that the Product is purportedly ineffective.  (*Id*. ¶ 51.)  Plaintiff asserts five claims: (1) New York General Business Law § 349; (2) New York General Business Law § 350; (3) Unjust Enrichment; (4) Breach of Express Warranty; and (5) Fraud.  Plaintiff seeks declaratory relief, compensatory, statutory, and punitive damages, and restitution.  (Compl., Relief Demanded.)

## LEGAL ARGUMENT

## I.      SUMMARY JUDGMENT LEGAL STANDARD

There is no doubt that Plaintiff failed to present any facts that support any of his legal theories and that summary judgment is appropriate.  Fed. R. Civ. P. 56(a) (Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *see also Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998) (summary judgment is appropriate here because "the evidence is insufficient to support the

non-moving party's case"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986) (approving summary judgment if non-moving party provides insufficient evidence as to an essential element of its case on which it bears the burden of proof).  To defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but rather must show that there is "significant probative evidence" on which a reasonable factfinder could decide in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted).  Plaintiff fails to do that here.

As set forth below, in the absence of compelling proof of, among other things, misrepresentation, consumer deception, or damages, Plaintiff simply has not proven any of the elements of any of his claims.  For his claims under New York General Business Law ("NY GBL") §§ 349 and 350, Plaintiff failed to prove, as he had the burden to do, that UIC "engaged in (1) consumer oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of N.Y. v. Smokes–Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 329 (S.D.N.Y. 2015) (citation omitted).  "A claim of false advertising under GBL § 350 must meet all of the same elements as a claim under GBL § 349."  *Wurtzburger v. Ky. Fried Chicken*, No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881, at *5 (S.D.N.Y. Dec. 13, 2017).  Plaintiff offers no evidence that he was deceived, let alone that members of the public were materially misled, or that the label statements caused actual injury.  Likewise, he has provided no basis for his fraud, express warranty, or unjust enrichment claims nor does he have standing to assert a claim for injunctive relief. [4]

---

[4] In addition to failing to show a material misstatement or injury, Plaintiff's unjust enrichment claim fails because it is duplicative of his other claims.  (*See* Compl. ¶ 40 ("Defendant misrepresented that Cutter Natural was an 'insect repellent' that 'repels mosquitos for hours.'").  An unjust enrichment claim "cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'"  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (dismissing unjust enrichment claims involving products allegedly mislabeled as "Fat Free" as duplicative of plaintiffs' other express warranty and NY GBL § 349 claims) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790-91 (2012)).  And Plaintiff's claim for breach of express warranty also fails because he does not, and cannot, show that he was in privity with UIC.  *See, e.g., Koenig*, 995 F. Supp. 2d at 290 (dismissing express warranty

## II.    PLAINTIFF FAILS TO PROVE A FALSE OR MISLEADING STATEMENT AS HE HAS NO EVIDENCE THAT THE PRODUCT IS INEFFECTIVE FOR EVERYONE.

The foundation of Plaintiff's Complaint is that the Product is "ineffective for everyone" with "no exceptions." (Aug. 14, 2019 Class Certification Hr'g Tr., Rappoport Declaration In Support of Gordon Daubert ("Rappoport Decl.")[5] Ex. A, at 14:1-2; Compl. ¶ 3.)  Because the undisputed facts belie this sweeping claim, Plaintiff has failed to prove any of his causes of action and summary judgment in UIC's favor on all claims is appropriate on this basis alone.  Plaintiff contends that UIC misrepresented that the Product (1) is an "insect repellent" and (2) that it "repels mosquitoes for hours." (Compl. ¶¶ 2, 10.)  He contends that had he known the statements on the labels were false, he would not have purchased the Product, or would have paid "a substantially reduced price." (*Id.* ¶ 10.)  But Plaintiff's claims are without merit or support.  Plaintiff relies on two flawed made-for-litigation "scientific studies" and on two articles that are neither relevant nor reliable.  ███████████ ███████████████████████████ undermines Plaintiff's theory that the Product is "ineffective for everyone" with "no exceptions" and instead proves the Product *is* effective for consumers and certainly not *totally ineffective for everyone.*

### A.    Plaintiff Has No "Scientific Studies" Showing that the Product Fails to "Repel Mosquitoes" for all Consumers.

Contrary to Plaintiff's assertions, he has no "scientific studies" showing that the Product is "ineffective for everyone" without exception.  As described in the concurrently filed Motion to Exclude the Expert Report and Testimony of Scott W. Gordon, the tests upon which Plaintiff's expert relies to

---

claim with prejudice because "Plaintiffs have failed to allege that they were in privity with Defendants"); *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174, at *15-16 (S.D.NY. Dec. 11, 2013) (dismissing all "breach of warranty claims, express and implied, for failure to plead privity or agency"); *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (unless the plaintiff claims to have suffered personal injuries, privity is "an essential element of a cause of action for express warranty." (citation omitted)).  Here, Plaintiff claims that he purchased a pump form of the Product from a Home Depot store (Compl. ¶ 10), but does not, and cannot, show that he was in privity with UIC or that UIC ever dealt with him, which is an additional ground for granting summary judgment on the express warranty claim.
[5] References to "Rappoport Decl. Ex. _" are to exhibits attached to the Declaration of Steven T. Rappoport, filed in support of Defendant's *Daubert* motions, filed concurrently.

support his opinion that the Product is "ineffective" for all consumers are not relevant and his opinion is

not reliable.  (Mem. of Law ISO UIC's Mot. to Exclude the Report and Testimony of Scott W. Gordon

(hereinafter "Gordon Daubert") at 12.)

*First*, the testing performed by Dr. Gordon himself is inadmissible because Dr. Gordon has an

irreconcilable conflict of interest.  Specifically, (i) Dr. Gordon conducted a test using his own

laboratory, Biogents AG, where he is an employee and in which he has an ownership interest and (ii) he

is being paid $150 per hour even though his testimony only matters if the study produced favorable

results for Plaintiff.  (Rappoport Decl. Ex. E ¶¶ 15, 19, 23, Exhibit G, at 4.)  Dr. Gordon is therefore

biased and his Biogents AG testing cannot be credited.  (Gordon Daubert, at 12.)

*Second*, three of the four tests on which Dr. Gordon relies in reaching his conclusion that the

Product is ineffective purportedly follow protocols established by the World Health Organization

("WHO") or the Environmental Protection Agency ("EPA") that, as shown *supra* at p. 1, do not apply.

(Gordon Daubert at 3, 10-11.)[6]  Thus, these tests are irrelevant and cannot be used to prove any

misrepresentation claim concerning the Product's efficacy.

*Third*, Dr. Gordon's opinion is also unreliable because two of the four tests on which he relies,

his BGC test and the third-party i2L test, did not actually follow the WHO or EPA protocols to which

he attempts to hold UIC's testing.  (Gordon Daubert, at 12-15.)  Among other things, the third-party i2L

testing commissioned by Plaintiff's counsel for purposes of this litigation, permitted Plaintiff's counsel

to make revisions to the testing protocol.  (Rappoport Decl. Ex. D at 11.)  And, the testing protocol

itself was manipulated by Plaintiff's counsel to require testing subjects to exercise, which Dr. Gordon

admits increases their attractiveness to mosquitoes.  (Gordon Daubert at 13-14 (Ex. C, 110:2-7).)  As

such, the i2L testing was not conducted pursuant to industry standards and was biased to obtain results

---

[6] Gordon relies on four tests—two performed by him in his lab (AIC and BGC tests) and two performed by third-parties (i2L and New Mexico State University).  All but the BGC test purportedly followed either the WHO or EPA protocols; the BGC test followed its own protocol.  (*See* Gordon Daubert, at 12.)  Further, Gordon testified that the BGC test has never been used in the United States.  (Ex. C, 211: 4-8.)

10

that would satisfy its sponsor—Bursor & Fisher. *See In re Parmalat Secs. Litig.*, 477 F. Supp. 2d 637, 641 (S.D.N.Y. 2007) (expert's findings and conclusions unreliable when they were based on both documents from others with "motives" to "shift responsibility to others" and on an insufficient factual investigation); *United States v. Shenghur*, 734 F. Supp. 2d 552, 554-56 (S.D.N.Y. 2010) (finding expert's methodology unreliable where expert's conclusions were obscured by his methodology and bias infected his interpretation of test results). Dr. Gordon's test would likewise be unreliable based on his opinion because it failed to follow the WHO protocols to which he holds UIC testing. For example, Dr. Gordon's test used older mosquitoes and also placed subjects' arms in smaller cages than those prescribed by the WHO protocol. (Gordon Daubert, at 4.)

Finally, Plaintiff's citation to a *Consumer Reports* article in his Complaint cannot support a finding that the Product has no efficacy. (Compl. ¶ 5.) Indeed, the *Consumer Reports* article provides no testing methodology whatsoever. Despite the parties' attempts to subpoena documents and information from the publisher of the article, the publisher refused to comply with either subpoena. (Decl. of M. Ruttinger In Supp. of Mem. of Law In Opp'n to Pl.'s Mot. for Class Certification, ECF No. 58, ¶ 10; *see Tramontana v. Home Depot U.S.A., Inc.*, No. 15-CV-8528 (NSR), 2018 U.S. Dist. LEXIS 163259, at *17-19 (S.D.N.Y Sept. 24, 2018) (excluding expert's testimony as unreliable where there was no scientific methodology on which the expert's theory could be tested).) But even if the underlying study on which *Consumer Reports* relied was available for review, the article would still not support Dr. Gordon's opinion because it reports that the Product *does* show some efficacy against mosquitoes. (Decl. of Y. Kopel In Supp. of Mem. Pl.'s Mot. for Class Certification, ECF No. 48, Ex. 15.)[7]

---

[7] Dr. Gordon also relies on a journal article from New Mexico State University that fails to support his opinion. This is because that study used a Y-tube olfactometer device which. ███████████████████████████████████

███████   (Rappoport Decl. Ex. L, ¶ 16.)

Plaintiff cannot rely on Dr. Gordon's testimony, studies on which he relied, or the *Consumer Reports* article cited in the Complaint to support his "totally ineffective for everyone" claims.

**B.**  ███████████████████████████████████████████████████

Plaintiff bears the burden of proving his claim that the Product is wholly ineffective for *all* consumers, and, as discussed above, he has failed to do so. Indeed, the only admissible "scientific studies" show the opposite.

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████ These results support UIC's claims that the Product's pump version "repels mosquitoes for hours" and "keeps mosquitoes away from you and your family for up to 2 hours." (56.1 ¶¶ 6, 16; Ex. F, Ex. A.)

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

██ These results similarly support the claims of repellency on the Product's aerosol form. (56.1 ¶ 16; Ex. A ¶ 31.)

As discussed in the Gordon Daubert Motion, the Product is a "Minimum Risk Pesticide," and not subject to EPA and WHO testing guidelines for personal mosquito repellents. (Gordon Daubert, pp. 7-8) Thus, Dr. Gordon's opinion that the studies do not comply with irrelevant EPA and WHO

12

testing guidelines is itself irrelevant (Rappoport Decl. Ex. E, ¶ 56) and does not undermine the veracity

or relevance of UIC's testing.

For these reasons, the undisputed facts in the record contradict Plaintiff's claim that the Product

is ineffective for everyone, without exceptions.

### C.     Consumer Evidence Refutes Plaintiff's Allegation that the Product Is "wholly ineffective."

Plaintiff's broad claim is further refuted by UIC's consumer survey, which shows that ***89.8%*** of

consumers who purchased Cutter Natural were "very satisfied" or "satisfied" with the Product's

efficacy.  (Pittaoulis Decl. ¶ 8.)  And unlike Plaintiff's one-time experience with the pump form of the

Product four years ago, 87% of the survey respondents are repeat purchasers of Cutter Natural who

have extensive experience with its efficacy.  (*Id.* ¶ 37.)  The survey results are not surprising.  Since

introducing the Product's pump form in 2010, ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████

In sum, not only does Plaintiff lack any evidence to support his position that the Product does

not work for anyone at all, but the evidence in the record shows exactly the opposite— ███████████

█████████████████ and consumers are overwhelmingly satisfied with its performance.

Accordingly, Plaintiff has not shown any misrepresentations or omissions on the Product's labels and

summary judgment must be granted for this reason alone in UIC's favor on all claims.

## III.    PLAINTIFF FAILS TO PROVE ANY CONSUMER DECEPTION OR THAT THE PRODUCT LABELS WERE "MATERIALLY MISLEADING"

To survive summary judgment on his claims, including his GBL §§ 349 and 350 and express

warranty claims, Plaintiff had to, but failed to, show that UIC's packaging was "likely to mislead a

reasonable consumer acting reasonably under the circumstances." *See Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 U.S. Dist. LEXIS 146665, at *22 (S.D.N.Y. Sept. 11, 2017) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)).  "The term 'likely' indicates that deception must be probable, not just possible." *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) (citation omitted).  Moreover, a few isolated examples of deception are insufficient to sustain a class-wide claim. *See Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 AJN, 2015 U.S. Dist. LEXIS 125111, at *27 (S.D.N.Y. Sept. 17, 2015) ("In order to fall within § 349, the challenged practices 'must have a broad impact on consumers at large[]'" (citation omitted)).

Moreover, Plaintiff failed to submit evidence of class-wide deception—such as expert evidence or consumer surveys—to support his claim. *See Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 94-95 (S.D.N.Y. 2010) ("'[T]o satisfy the commonality requirement in a class action alleging deceptive acts and practices [under GBL § 349] . . ., the proof must show that *each* plaintiff was reasonably deceived by the defendant's misrepresentations . . . .'" (citation omitted)).

### A. Plaintiff's Personal Experience with the Product Does Not Prove that it is Ineffective for Everyone or Support a Claim of Deception.

The gravamen of Plaintiff's deception claim is that the Product is ineffective for all consumers, and as such, consumers were deceived about its efficacy.  (Compl. ¶ 3.)  Plaintiff's claim is based on his limited, personal experience with the Product's pump form during a Labor Day weekend trip to the Camp.  His testimony, however, does not support his claim in any way.

As an initial matter, Plaintiff cannot say for certain whether he actually suffered mosquito bites, or whether he was bitten by other insects.  (56.1 ¶ 39, Ex. N, 60:19-21.)  But even if he could establish that he was bitten by mosquitoes, Plaintiff never explains whether he reapplied the Product after engaging in various water-based activities, or after sweating while participating in outdoor games and activities, both of which would affect the Product's ability to repel mosquitoes.  (56.1 ¶¶ 33, 38, 41; Ex. A, ¶¶ 18-21, Ex. N, 54:12-25, 56:4, 56:12-14.)  The Camp advertises fun for adults, including foam

pool parties, an open bar by the lakefront, outdoor games and numerous daytime and evening activities. (*See* https://www.campnocounselors.com/new-york.)  Plaintiff does not allege how and if he applied or reapplied the Product during his stay at the Camp nor how long after applying the Product he was bit, including whether he was bit less than two hours after he applied the Product.

Plaintiff's testimony about his limited experience with the Product's pump form is not evidence that the Product is ineffective to repel mosquitoes within 30 minutes (or any other timeframe).  His testimony cannot support an individual claim of deception, much less a class-wide claim of deception. *See Wurtz v. Rawlings Co., LLC*, No. 12-CV-1182 (JMA) (AKT), 2016 U.S. Dist. LEXIS 172680, at *28-29 (S.D.N.Y. Nov. 17, 2016) (defendants were entitled to summary judgment because plaintiffs failed to prove the statements were neither misleading nor deceptive).[8]

### B.  Plaintiff's "Mosquito Expert" Testimony Does Not Address or Support a Claim of Consumer Deception.

Plaintiff points to the declaration of his "mosquito expert," Dr. Gordon, to show that the Product is ineffective and that its allegedly misleading labels resulted in consumer deception.  But, as set forth above, and as described in the Gordon Daubert motion, Dr. Gordon's declaration is flawed, unreliable, and inadmissible.  Moreover, *none* of his testimony addresses whether Plaintiff himself was deceived, much less whether other consumers were deceived by, label statements regarding the Product's efficacy.

### C.  Actual Evidence Conclusively Refutes a Finding of Deception or Materiality.

Most notably, Plaintiff's testimony demonstrates that the statements at issue in this case were not "material" to his purchasing decision.  Plaintiff admits that a number of factors went into his

---

[8] In addition, Plaintiff lacks standing to pursue claims against the Product's aerosol form because he never purchased it. This Court explained that "in a class action, the named plaintiffs must themselves have standing to sue; it is not sufficient to show that 'an injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Hart v. BHH, LLC*, No. 15CV4804, 2016 LEXIS 59943, at *5-6 (S.D.N.Y. May 5, 2016) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Applying this black-letter law, the Second Circuit has approved the dismissal of consumer claims concerning unpurchased products.  *See, e.g., DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal of claims regarding unpurchased products).

ny-1764579

decision to purchase the Product, including reasons unrelated to the Product's statement that it "repels mosquitoes for hours."  As Plaintiff testified, he purchased the Product because he "had been using Cutter for a long time" and "trust[ed] in the Cutter brand."  (56.1 ¶ 35; Ex. N, 62:5-15, 81:5-8.) Plaintiff also purchased the Product because of his previous experiences with Cutter's DEET products, which he had purchased in the past, and *assumed* the Product "would work just as well" as Cutter's DEET repellent.  (56.1 ¶ 35; Ex. N, 62:13-15.)

Nor has Plaintiff proven that UIC's statements were misleading.  As such, he has failed to prove that reasonable consumers were deceived by UIC's truthful statements, and his GBL §§ 349 and 350 claims, and all his other claims, must fail.  *See Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 U.S. Dist. LEXIS 64270, at *12 ("[T]he Court finds nothing misleading about Defendant's truthful and accurate characterization of the Product."); *see id.*, (citing cases finding that a "true representation" is not misleading and would not deceive a reasonable consumer); *Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 U.S. Dist. LEXIS 164461, at *2-3 (C.D. Cal. Oct. 25, 2012) (holding as a matter of law that the "true representation" on the packaging would not deceive a reasonable consumer).

UIC's evidence also shows that the statements at issue were not material to purchasing decisions and did not deceive consumers.  ██████████████████████████ ████████████████, and belies any claim that consumers were deceived by any misrepresentation.  ██ ████████████████████████████ And, as noted above in Section II.C, UIC's consumer survey shows that 89.8% of consumers who purchased the Product were "very satisfied" or "satisfied" with its efficacy.  (Pittaoulis Decl. ¶ 8. ████████████████████████████████ ██████████████████████████████████████████████ Thus, because the Product worked for consumers, Plaintiff cannot show a "deceptive act" that "caused some actual injury."  *See Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2017 U.S. Dist. LEXIS 204828, at *10 (S.D.N.Y. Dec. 12, 2017) ("A plaintiff seeking redress through NY GBL § 349 must show that

the defendant engaged in a material deceptive act or practice that caused actual . . . harm.") (citation omitted).

Finally, NERA's consumer survey shows a wide variety of reasons consumers purchased the Product, demonstrating that the statements at issue here were not "material" to consumers' purchasing decisions.  Notably, 49.5% of respondents purchased Cutter Natural because they trusted the brand. (Pittaoulis Decl. ¶ 39.)  Similarly, 42% purchased the Product because it "Repels mosquitoes the natural way," and 38.9% because of ease of application.  (*Id.* ¶ 39.)  Further, 40.3% of respondents purchased it because they recognized the Cutter brand.  (*Id.*)  And, *no* respondent stated that any specific label claim was the reason they decided to purchase Cutter Natural.  (*Id.*)

## IV.   PLAINTIFF HAS NO EVIDENCE OF INJURY CAUSED BY THE PRODUCT'S LABELS NOR ANY THEORY OF DAMAGES TO SUPPORT HIS CLAIMS.

Plaintiff has not proven that he has an individual claim of damage or injury caused by the statements on the Product labels.  Nor has he met this burden with regard to the putative class.

### A.   Plaintiff Fails to Prove that He Was Damaged or Suffered Any Injury.

Under GBL §§ 349 and 350, a plaintiff must prove that she "suffered injury as a result of the allegedly deceptive act or practice." *Segovia*, 2017 U.S. Dist. LEXIS 204828, at *7 (S.D.N.Y. Dec. 12, 2017) (citation omitted).  This "typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *18 (S.D.N.Y. Oct. 26, 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)).

Here, Plaintiff failed to prove that he was injured.  As explained in Section III(A), his use of the Product was extremely limited, and he offers nothing more than vague testimony that he used the Product's pump form over Labor Day weekend at the Camp where he engaged in various day and evening outdoor activities, and where he could have been bitten by several different types of insects. (56.1 ¶¶ 33, 39; Ex. N, 54:1-56:25.)

Moreover, as his own expert testified, it is common for people to be bitten by mosquitoes even after using a personal insect repellent (including an insect repellent that contained DEET).  (56.1 ¶ 23; Ex. C, 97:19-98:2.)  Given that Plaintiff visited the Camp in the late summer and that it is located next to a lake, it is not unusual that mosquitoes would be particularly active in that location and during that time, and that individuals using mosquito repellent would still be bitten.  Further, as Dr. Gordon testified, each person has unique "host" attributes that make him or her more susceptible to mosquito bites.  (56.1 ¶ 20; Ex. C, 285:17-286:6.)  There is no evidence that Plaintiff does not have unique "host attributes" that would make him more susceptible to mosquito bites.  Indeed Plaintiff *conceded* he was susceptible to mosquito bites, a "common occurrence" whenever he engaged in outdoor activities.  (56.1 ¶ 30; Ex. N, 42:22-43:4, 43:15-23, 46:7-47:23.)  As such, Plaintiff's personal experience with the Product is insufficient to allege that he was injured by purchasing an allegedly wholly worthless product.  *See Segovia*, 2017 U.S. Dist. LEXIS 204828, at *10 ("Plaintiff must prove that Defendant's deceptive act caused some actual injury."); *In re Whole Foods Mkt. Grp., Inc.*, No. 15 Civ. 5838 (PAE), 2019 U.S. Dist. LEXIS 119006, at *34 (S.D.N.Y. July 17, 2019) ("[I]f [plaintiff] 'fail[s] to identify sufficient evidence to permit a jury to find that [he] suffered any injury from the alleged violation,' [defendant] 'is entitled to summary judgment.'") (citation omitted).  There is no evidence that Plaintiff got anything less than what he paid for.

## B.  Plaintiff Has Failed to Prove Class-Wide Injury or a Viable Damages Model.

Plaintiff also does not have any evidence of class-wide damages or injury under any of his claims.  *See Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (denying class certification where plaintiff was "unable to show injury . . . on a class-wide basis" under GBL § 349); *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, No. 12 Civ. 01416 (GBD) (RLE), 2014 U.S. Dist. LEXIS 109226, at *40 (S.D.N.Y Aug. 5, 2014) (dismissing GBL § 349 claim where plaintiff failed to provide evidence of injury or harm to the public).  Instead, Plaintiff offers Dr. Gordon's

testimony, which as described above, is fundamentally flawed.  (*See supra* at pp. 10-12; Gordon Daubert at 12-15.).)

Plaintiff also offers the testimony of a damages expert, Colin Weir, but Dr. Weir does not opine on whether the Product is worthless and/or if consumers were economically injured purchasing the Product.  Instead, Weir *assumes* that the Product is wholly ineffective (ignoring the evidence in the record to the contrary) and calculates a full refund for all consumers, which would result in a windfall. And his alternative theory calculating damages based on the Product's "partial efficacy" does not correlate with his theory of liability, which is that the Product is completely worthless.  As explained in the Motion to Exclude the Testimony of Colin Weir, Weir thus provides several flawed damages models—none of which are relevant or admissible.  (*See* Mem. of Law In Supp. of UIC's Mot. to Exclude the Report and Testimony of Colin Weir (hereinafter "Weir Daubert") at 4-6.).

First, Weir's Full Refund Damages model is based on the assumption that the Product is wholly worthless for everyone.  (Rappoport Decl., Ex. C, ¶ 9.)  But as discussed in Section III(A), Plaintiff has failed to meet his burden in proving that the Product is ineffective for everyone.  As such, Weir's damages model is not viable (nor is his straight mathematical calculation useful to the Court).  Weir's total refund theory would result in compensating individuals who suffered no harm and in overcompensating individuals who could have, but are not alleged to have, suffered only partial harm. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (damages theory must measure only those damages attributable to Plaintiff's theory of liability).

Second, Weir's backup Partial Efficacy Damages and Unjust Enrichment Damages models do not comport with Plaintiff's theory of liability that the Product is wholly worthless.  (Rappoport Decl. Ex. A, 54:24-25; 57:14-22.)  These models therefore flunk *Comcast*, which requires Plaintiff's theory of damages to correlate with the theory of liability.  569 U.S. at 34.  Even more, Weir fails to provide any viable method for calculating the partial efficacy model, as he provides no explanation of his

19

methodology for arriving at this model or support for it in the academic literature or scientific

methodology.  (Weir Daubert, at 2-3.)

Finally, Weir's "statutory damages" model fails because he provides *no* analysis of how sales of

the Product translate into "violations."  (*Id.* at 13.)  Instead, he states that statutory damages can be

calculated as set forth in a table.  (Rappoport Decl. Ex. C, ¶¶ 28-29.)  But he provides no explanation

for this calculation, instead providing a few instances of multiplication.[9]

Plaintiff failed to establish injury as to himself or the putative class, nor does he provide a

damages theory that comports with the theory of his case and all his claims fail accordingly.

## V.     PLAINTIFF'S CONCLUSORY ALLEGATIONS FAIL TO PROVE ANY OF THE ELEMENTS OF HIS FRAUD CLAIM.

In addition to the deficiencies above, Plaintiff fails to establish any element of his fraud claim

individually or on a class-wide basis.  "To recover damages for fraud under New York law, a plaintiff

must prove: (1) a misrepresentation or a material omission of fact which was false and known to be

false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable

reliance of the other party on the misrepresentation or material omission; and (4) injury."  *Abu Dhabi*

*Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012), *aff'd sub nom.,*

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014); *see also AUSA*

*Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000), *aff'd*, 39 F. App'x 667 (2d Cir. 2002).

At the summary judgment stage, "[e]ach element of the fraud claim must be shown by clear and

---

[9] Plaintiff's request for statutory damages does not remedy his failure to provide evidence of common injury.  The Court of Appeals has made clear that deception alone is not an injury, and that *actual* injury is required to bring a claim under GBL § 349.  *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897-98 (N.Y. 1999).  Plaintiff's proposal to have statutory damages stand in for evidence of class-wide injury would gut *Small's* actual injury requirement.  Moreover, as courts have observed, an award of class-wide statutory damages pursuant to GBL§§349 and 350 would be grossly excessive and in violation of N.Y. State policy, which disallows recovery of statutory damages in class actions. New York Civil Practice Law and Rules § 901(b) prohibits class actions seeking to recover "a penalty, or minimum measure of recovery created or imposed by statute," unless that statute explicitly authorizes recovery through a class action, which Sections 349 and 350 do not.  UIC acknowledges that Rule 23 conflicts with Section 901(b) to the extent it does not contain any such restriction.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 393-94 (2010).  The result is "an undesirable situation in view of *Erie* principles."  *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 502 (E.D.N.Y. 2017).

convincing evidence." *Century Pac., Inc.* v. *Hilton Hotels Corp*, 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 607 (N.Y. 1999) ("The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence.").

Rule 9(b) also requires that these elements be pled with particularity, which Plaintiff wholly fails to do.  Plaintiff failed to "specifically plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *See Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (citation and internal quotation marks omitted); *see also Butala v. Agashiwala*, 916 F. Supp. 314, 321 (S.D.N.Y. 1996) ("The plaintiff must also explain how the misrepresentations were fraudulent.").

### A.      Plaintiff Has Not Shown Any Misrepresentation of a Material Fact.

Plaintiff failed to prove that the Product misrepresents a material fact.  This element is narrowly defined so that "[n]ot every misrepresentation or omission rises to the level of fraud." *Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 F. App'x 488, 489 (2d Cir. 2009) (citing *Gaidon*, 725 N.E.2d at 607).  Rather, "'[a] misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person considering whether to enter into the transaction.'" *Rouse v. Elliot Stevens, Ltd.*, No. 13-CV-01443 (SN), 2016 U.S. Dist. LEXIS 152678, at *18 (S.D.N.Y. Nov. 3, 2016) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999)).

Plaintiff cannot establish that UIC misrepresented the Product's efficacy as advertised.  *Supra* Section III.A.  To the contrary, the evidence in the ███████████████████████ ██████████████████████████████ and a survey—shows the Product is effective and that it repels mosquitoes as indicated by its labels.  Further, and as discussed above, Plaintiff's evidence to the contrary is flawed and inadmissible.  (Gordon Daubert at 3-4.)  Accordingly, Plaintiff has failed to establish a misrepresentation as to a material fact as to himself or the putative class.

**B.     Plaintiff Has Not Established the Key Element of Scienter.**

Plaintiff has not shown the intent needed to prove fraud.  "'The key element in any fraud action is scienter, and it is always difficult to prove scienter.'"  *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363 (S.D.N.Y. 1988) (citation omitted); *see also Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 U.S. Dist. LEXIS 40537, at *30-33 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom., Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017).  Under New York law, "[t]o establish scienter plaintiff must show an intentional or reckless misstatement made with the intent that plaintiff rely upon it." *Pasternack v. Lab. Corp. of Am.*, No. 10 CIV. 4426 (PGG), 2011 U.S. Dist. LEXIS 88311, at *21 (S.D.N.Y. Aug. 1, 2011).  Thus, "plaintiff must establish that fraudulent intent existed in the mind of the defendant." *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 89 (Bankr. S.D.N.Y. 2017) (citation omitted).

Plaintiff has no evidence that UIC knew the Product allegedly misrepresented its efficacy as advertised or that UIC sold the Product with the intent to deceive consumers as to the Product's efficacy.  To the contrary, the evidence shows that UIC knew that the Product is effective and that it does repel mosquitoes as advertised.  (*See, e.g.*, *supra* Section III(A)(2), (3).)  Accordingly, there is no dispute of material fact regarding UIC's intent, and Plaintiff fails to establish the necessary element of scienter.  Further, Plaintiff's vague claim regarding UIC's alleged knowledge of the falsehood of its representations—that there were studies about the repellent—fails to give rise to a strong inference that UIC had an intent to defraud.  This mere conclusory allegation of fraud is thus insufficient to meet the particularity requirements of Rule 9(b) and the elements of fraud.

**C.     Plaintiff Has Not Shown Justifiable Reliance.**

In addition to proving both a misrepresentation and scienter, Plaintiff must show that he justifiably relied on the false and misleading statements to his detriment.  *Abu Dhabi Commercial Bank*, 888 F. Supp. 2d at 484.  Further, "[t]he requirement of reliance is satisfied only if the reliance is reasonable." *Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y.

2005).  As discussed above, Plaintiff fails to prove that UIC made any material misrepresentation

regarding performance of the Product.  Moreover, Plaintiff does not allege that his reliance was the but-

for cause of his purchase, as he admitted that he had used other Cutter products and knew the brand.

(Parker Dep., at 62:5-15; 81:5-8.)

Similarly, Plaintiff submits *no* evidence of class-wide reliance, which is necessary to support a

fraud claim on behalf of a class.  *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 144

(S.D.N.Y. 2015) (courts cannot "presume, as a matter of law, that the element of reliance is satisfied for

each putative class member." (citation omitted)). ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  Thus, consumers whose purchases

are motivated by these factors rely differently on the Product's labels than consumers who do not have

concerns about products containing DEET.  *See, e.g.*, *Hazelhurst v. Brita Prods. Co*., 744 N.Y.S.2d 31,

33 (N.Y. App. Div. 2002) ("[R]eliance may not be presumed where, as here, a host of individual factors

could have influenced a class member's decision to purchase the product.").

     **D.**    **Plaintiff Cannot Establish Injury For His Fraud Claim.**

Finally, as shown above, Plaintiff has not proven any injury cognizable as to himself or the

putative class.  Plaintiff's use of the Product was limited, he does not recall key facts, including how

often he reapplied the Product, and he does not know whether he was even bitten by mosquitoes, much

less that it happened within thirty minutes of his application of the Product.  As such, Plaintiff got

exactly what he paid for—a mosquito repellent.  (Ex. N, at 60:19-21, 56:12-15, 56:22-25, 57:2-6, 59:7-

12, 60:6-9, 76:6-10.)  Plaintiff also does not offer any evidence of class-wide injury.

**VI.**    **PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.**

Plaintiff cannot claim future deception and thus does not have Article III standing to assert

claims for injunctive relief.  Article III requires that "(1) the plaintiff must have suffered an injury-in-

fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the

ny-1764579

injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). "A plaintiff seeking to represent a class must personally have standing." *Id.* (citation omitted). Further, to obtain injunctive relief, a plaintiff must establish a real or immediate threat of future injury. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239. Plaintiff cannot meet any of these requirements.

First, Plaintiff's conclusory claim that he would consider buying the Product again fails to rise to the level of a real and immediate threat of injury. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (plaintiff's allegations that he "would consider purchasing Honest's products in the future[]" were "insufficient to allege future injury"); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *12-13 (S.D.N.Y. Oct. 26, 2016) (finding no likelihood of future injury where plaintiff alleged he would be willing to purchase the product's current formulation if defendant corrected its advertising) (citation omitted).

Second, Plaintiff cannot allege future deception or injury because he is "keenly aware" of the alleged misrepresentations. *See Vaccariello*, 295 F.R.D. at 68. In *Vaccariello*, the court found that plaintiff could not satisfy the injury-in-fact requirement for injunctive relief because he was aware of defendant's practices, and was thus "very unlikely to suffer from being billed without his knowledge." *Id.*; *see also Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309-10 (S.D.N.Y. 2017) ("[B]y stating that he would not have bought the Inserts had he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that he will not buy the Inserts, or be misled by Defendants' marketing, again in the future"); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 255-56 (E.D.N.Y. 2014) (no standing where plaintiff has demonstrated that she was unlikely to purchase products again).

## VII.    CONCLUSION.

As set forth above and in the accompanying Daubert motions, UIC respectfully requests that

summary judgment be granted in its favor on all counts in the complaint.

Dated: New York, New York                 MORRISON & FOERSTER LLP
       October 7, 2019


                                 By:   /s/ Jamie A. Levitt
                                     Jamie A. Levitt
                                     250 West 55th Street
                                     New York, NY 10019
                                     Telephone: (212) 468-8000
                                     Facsimile:  (212) 468-7900
                                     Email:  jlevitt@mofo.com

                                   Claudia M. Vetesi (*Pro Hac Vice*)
                                   425 Market Street
                                   San Francisco, CA 94105
                                   Telephone:  (415) 268-7000
                                   Facsimile:  (415) 276-7500
                                   Email:  cvetesi@mofo.com

                                   Ronie M. Schmelz
                                   TUCKER ELLIS LLP
                                   515 South Flower Street
                                   Forty Second Floor
                                   Los Angeles, CA 90071
                                   Telephone: (213) 430-3400
                                   ronie.schmelz@tuckerellis.com

                                   *Counsel for Defendant United Industries Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, a copy of the foregoing Defendant's Memorandum of Law In Support of Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated:   New York, New York
        October 7, 2019

MORRISON & FOERSTER LLP

By:    /s/ Jamie A. Levitt
    Jamie A. Levitt
    250 West 55th Street
    New York, NY 10019
    Telephone: (212) 468-8000
    Facsimile:  (212) 468-7900
    Email:  jlevitt@mofo.com

    Claudia M. Vetesi (*Pro Hac Vice*)
    425 Market Street
    San Francisco, CA 94105
    Telephone:  (415) 268-7000
    Facsimile:  (415) 276-7500
    Email:  cvetesi@mofo.com

    Ronie M. Schmelz
    TUCKER ELLIS LLP
    515 South Flower Street
    Forty Second Floor
    Los Angeles, CA 90071
    Telephone: (213) 430-3400
    ronie.schmelz@tuckerellis.com

    *Counsel for Defendant United Industries Corporation*

ny-1764579