UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

NICHOLAS PARKER, on behalf of himself and all
others similarly situated,

                Plaintiff,

          -against-

UNITED INDUSTRIES CORPORATION,

                Defendant.

------------------------------------------------------------- x

No. 1:17-cv-05353-GBD-HBP

JUDGE GEORGE B. DANIELS

**ECF CASE**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
UNITED INDUSTRIES CORPORATION'S MOTION TO EXCLUDE
THE REPORTS AND TESTIMONY OF COLIN B. WEIR**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     PLAINTIFF CANNOT CREDIBLY RECAST WEIR'S BASIC CALCULATIONS AS HELPFUL EXPERT TESTIMONY................................................................. 2

II.    PLAINTIFF AGREES THAT WEIR'S CALCULATION OF STATUTORY DAMAGES IS SIMPLE MATH. ...................................................................... 6

III.   PLAINTIFF FAILS TO SHOW WHY WEIR'S TESTIMONY CONCERNING INTERNET REVIEWS IS ENTITLED TO ANY CONSIDERATION. ........................... 7

      A.    Plaintiff Cannot Rewrite Weir's Opinion Concerning Dr. Martin's Consideration of Internet Reviews. ................................................. 7

      B.    Plaintiff Fails to Show Weir's Opinion on Internet Reviews is Reliable. .............. 8

      C.    Weir's Review of a Third-Party Vetting Website Hardly Makes His Testimony Reliable. ................................................................................ 10

CONCLUSION ......................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aptive Envtl., LLC v. Vill. of E. Rockaway, N.Y.*,
2019 WL 3206132 (E.D.N.Y. July 16, 2019) .........................................................9

*Fagiola v. National Gypsum Co. AC & S.*,
96 F.2d 53 (2d Cir. 1990) ..............................................................................6

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011) ..............................................................9

*Inc. v. Wounded Warriors Family Support, Inc.*,
628 F.3d 1032 (8th Cir. 2011) .......................................................................4

*Lavalette v. Ion Media Networks, Inc.*,
2019 WL 3409899 (S.D.N.Y. July 29, 2019) ...................................................3

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*,
97 F. Supp. 3d 485 (S.D.N.Y. 2015) ...............................................................2

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,
2010 WL 2978289 (D. Conn. Apr. 9, 2010) .....................................................5

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
2019 WL 2210751 (E.D. Tex. May 22, 2019) ..................................................3

*In re Prempro Products Liability Litigation*,
514 F.3d 825 (8th Cir. 2008) ......................................................................3, 4

*Richard Parks Corrosion Tech., Inc. v. Plas-Pak Industries, Inc.*,
2015 WL 5708541 (D. Conn. Sept. 29, 2015) ..................................................5

*Schwartz v. Fortune Magazine*,
193 F.R.D. 144 (S.D.N.Y. 2000) ....................................................................5

*In re Scotts EZ Seed Litig.*,
2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ....................................................6

*U.S. National Bank Association v. James*,
741 F. Supp. 2d 337 (D. Me. 2010) ................................................................3

*United States v Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004) .............................................................................9

## PRELIMINARY STATEMENT

Plaintiff's Opposition to UIC's motion to exclude the reports and testimony of his damages expert, Colin B. Weir, confirms that Weir performed only basic calculations and is not an expert in spotting fake internet reviews.[1]

Although Plaintiff argues that Weir's testimony involves expertise because Weir supposedly marshaled sales data provided to him by UIC into a "more readily accessible format," the reality is that Weir sorted a handful of spreadsheets and then performed basic addition and multiplication.  Plaintiff tries to get around this fact by claiming—for the first time—that Weir is an expert in "gathering" information.  But there was nothing for him to gather, as UIC and a third-party produced the data he needed.  And Plaintiff concedes that Weir's statutory damages calculations contained no expert analysis whatsoever and is nothing more than a mathematical computation.  In the alternative, Plaintiff argues that Weir's testimony should be admitted as summary evidence under Rule 1006, but he fails to explain why the evidence Weir reviewed—which fits on a computer screen—cannot be conveniently examined in court, a prerequisite to admitting summary evidence.

Plaintiff argues that Weir did not opine that the internet reviews Dr. Denise Martin considered in her report were fake, only that an economist would not rely on such reviews.  But Weir's report does not actually say that—he instead attacks the reviews themselves without expertise to do so.  Plaintiff rehashes arguments about the internet reviews' reliability from his motion to exclude Dr. Martin to mask the fact that Weir's opinion—based on two CNBC articles and visiting a third-party website that monitors internet reviews—is itself wholly unreliable.

---

[1] After UIC argued that Weir's Partial Efficacy Damages model was unreliable and inconsistent with Plaintiff's theory of the case, Plaintiff dropped his Partial Efficacy Damages model.  (Opp. at 1.)

Plaintiff's Opposition further demonstrates why Weir's reports and testimony are unhelpful and unreliable, and UIC respectfully submits they should be excluded.

## ARGUMENT

### I.  PLAINTIFF CANNOT CREDIBLY RECAST WEIR'S BASIC CALCULATIONS AS HELPFUL EXPERT TESTIMONY.

Plaintiff's Opposition makes two arguments as to why Weir's basic mathematical calculations are supposedly helpful to the trier of fact:  (i) Weir "compiled and aggregated" data into a "more readily accessible format," and (ii) Weir is now for the first time put forth as an expert in "gathering the information."  (Opp. at 4-10.)  As a fallback, Plaintiff argues that Weir's calculations are admissible as summary evidence under Rule 1006.  (*Id.* at 10-11.)  Each argument confirms that Weir's calculations are not expert and not useful testimony.

First, Plaintiff concedes that, unlike in other cases cited by Plaintiff where the data analyzed by the expert was in multiple different documents that had to be complied and distilled, the sales data here was contained in a few spreadsheets.  (*Id.* at 5.)  While Weir in his deposition dressed up the process for his calculations with words like "formatted," inputting" and "outputted," all he actually did was sort the data produced by UIC to yield how many units of the Product were sold in each state.  Plaintiff attempts to make this process sound complicated, focusing on the number of rows in the spreadsheets, but, at bottom, Weir's work was an exercise in summing the units sold and multiplying by the average retail price (for Full Refund Damages), summing total wholesale sales (for Unjust Enrichment Damages), and multiplying the number of units sold by certain fixed dollar amounts for statutory damages.  (Weir Decl. ¶¶ 10, 16, 14.)

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, on which Plaintiff relies, is distinguishable.  As Judge Preska explained, the expert in that case "combed through at least 100 pages of sales reports" and "compiled and aggregated data (which was provided on a

*transaction-by-transaction basis*)"—a point Plaintiff omitted from his discussion of the case.  97 F. Supp. 3d 485, 504 (S.D.N.Y. 2015) (emphasis added).  Here, the data was not reported in hundreds of sales reports or on a transaction-by-transaction basis.  Instead, the data was provided to Weir for certain time periods and, in some cases, by state, meaning much of the aggregation work was already done by the time Weir received the spreadsheets.  *Lavalette v. Ion Media Networks, Inc.*, 2019 WL 3409899 (S.D.N.Y. July 29, 2019), is equally off-base, as it involved an expert employing "the application of financial expertise to select complex data points from a highly technical 94 page [third party report]."  *Id.* at *18 (alteration in original).  None of the damages calculations Weir performed here required economic expertise or the identification of complex data points buried in a lengthy report.

   The other out-of-circuit cases on which Plaintiff relies drive home that Weir's work was nothing a layperson could not perform.  *U.S. National Bank Association v. James*, 741 F. Supp. 2d 337, 342 (D. Me. 2010), involved an expert who had to "extract" data from "the voluminous documentation" in the case; not, as here, the filtering of a handful of spreadsheets provided to Plaintiff by UIC and a third-party.  In *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 2210751, at *3 (E.D. Tex. May 22, 2019), in rebutting an expert report supporting the imposition of lost profits, the expert "identif[ied] the appropriate data to be used"—unlike here where UIC and a third-party produced the sales data Weir needed to calculate damages—and also used his "deductive reasoning" in assessing statements made by one of plaintiff's executives when making his calculations.  Here, Weir sorted a few spreadsheets and performed math.  *In re Prempro Products Liability Litigation*, 514 F.3d 825, 831 (8th Cir. 2008), is even further afield. There, a physician testified that, based on a medical study he reviewed, "the lower limit of latency for breast cancer from initiation to detection is in the range of twelve years."  *Id.*  While

Plaintiff would have the Court believe that the "simple math" referenced there was something akin to the calculations undertaken by Weir here, in fact, the expert in *Prempro* opined as to whether a patient's breast cancer was present before she began taking a certain drug, which required the expert to employ "deductive reasoning."  *Id.*  There was nothing for Weir to deduce here—his report is straightforward calculations.  And in WWP*, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011), the court refused to exclude an expert who "relied on his experience as a forensic accountant" and had "analyz[ed] a substantial amount of financial data."  Weir performed no "analysis" here—Plaintiff's counsel even admits as much (*see* Opp. at 12-13)—and none of the calculations he performed drew on his education or experience as an economist.

Second, Plaintiff asserts that Weir is "[a]n [e]xpert [i]n [g]athering" the information used to calculate damages here.  (Opp. at 9.)  But Weir nowhere holds himself out as an expert in information gathering, and Plaintiff cites nothing in the record—be it Weir's report, his C.V., or his deposition transcript—to support this newfound claim.  And Weir was not even retained to "gather" data—he was asked to "provide a framework for the calculation of damages and the harm suffered by the Classes."  (Weir Decl.¶ 5.)  Plaintiff provides no explanation as to what information Weir supposedly "gathered," which is hardly surprising given Weir based his calculations off information that was *provided to him* by UIC and a third party.  (*See* Weir Decl. ¶ 17 ("The Defendant has produced sales data in this litigation, including its wholesale sales, and the Point of Sale ('POS') data for three retailers (Walmart, Home Depot, and Lowe's) as well as retail sales data from Nielsen."); *id.* ¶¶ 19, 21 ).

Plaintiff attempts to circumvent UIC's cited authority, but in so doing he simply confirms that courts in this Circuit exclude expert testimony that amounts to "basic calculations."

4

*Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000).  Plaintiff suggests that the court excluded the expert in *Schwartz* because her expertise was in "making calculations of the net worth of parties involved in divorce proceedings," as opposed to calculating potential sales commissions, but the court actually excluded the proposed testimony because it was not based on "specialized knowledge, but rather involved basic calculations."  *Id.*  No "specialized knowledge" was necessary here to calculate Weir's Full Refund damages (or his Unjust Enrichment or Statutory Damages), in which he merely multiplied the number of sales by the average retail price.  (Weir Decl. ¶ 10.)  Meanwhile, the calculation that the court in *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Industries, Inc.* found to be "simple calculations" was an "[a]nalysis of the sales data and computation o[f] the total excess profit realized" by a group of defendants, not unlike the damages calculations Weir performed here.  2015 WL 5708541, at *5 (D. Conn. Sept. 29, 2015).  Likewise, the adding up of invoices and interest calculation performed in *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289, at *3, 5-6 (D. Conn. Apr. 9, 2010), is not substantially different from the work Weir performed here, which involved summing up retail sales, calculating an average price for the Product and multiplying those two numbers.

Recognizing that Weir's expertise was not necessary to perform his damages calculations, Plaintiff argues that his "declaration and conclusions" should be admitted under Rule 1006 as "'a summary . . . or calculation to prove the content of voluminous writings.'" (Opp. at 10 (quoting Fed. R. Evid. 1006).)  But Rule 1006 requires that for summary evidence to be permitted, the contents of the "voluminous writings . . . cannot be conveniently examined in court."  Here, the spreadsheets of sales data produced by UIC can be entered into evidence and reviewed by the trier fact with relative ease on a computer screen, unlike in *Fagiola v. National*

*Gypsum Co. AC & S.*, 96 F.2d 53, 55 (2d Cir. 1990), where the summary evidence was drawn from a review of "several boxes of documents."  Plaintiff's effort to have Weir's testimony admitted through the back door of Rule 1006 should therefore be rejected.

## II.   PLAINTIFF AGREES THAT WEIR'S CALCULATION OF STATUTORY DAMAGES IS SIMPLE MATH.

Plaintiff concedes that Weir provided no "analysis" in calculating statutory damages and, instead, merely "tall[ied] up the number of unit sales," which he then multiplied by the appropriate dollar amount under the statute.  (Opp. at 13.)  Thus, it is inconceivable that Weir's testimony concerning statutory damages could be the subject of expert testimony.  Plaintiff argues that UIC was incorrect in saying that the only reason Judge Briccetti did not exclude Weir's testimony concerning statutory damages in *EZ Seed* was because Weir had provided "analysis" of how sales translate into violations.  (Opp. at 12.)  But Judge Briccetti explained that while Weir's work in multiplying sales data by statutory amounts was "hardly a complicated analysis," he would allow Weir's testimony because it would "assist the trier of fact in understanding how he calculated the number of 'violations' . . . and how that translates into a total damages amount."  *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *11 (S.D.N.Y. Aug. 8, 2017).  If Plaintiff is arguing, despite Judge Briccetti's description of Weir's work in *EZ Seed*, that Weir provided no "analysis" there, going so far as to attach Weir's report from *EZ Seed* as an exhibit here to show the absence of any analysis, then it is clear Weir analyzed nothing here, either.  Plaintiff cites no case supporting his position that basic calculations qualify as expert testimony, and since there is now plainly no dispute that Weir did nothing more than basic calculations of statutory damages here, Weir's testimony should be excluded.

ny-1811753

III.    **PLAINTIFF FAILS TO SHOW WHY WEIR'S TESTIMONY CONCERNING INTERNET REVIEWS IS ENTITLED TO ANY CONSIDERATION.**

      A.    **Plaintiff Cannot Rewrite Weir's Opinion Concerning Dr. Martin's Consideration of Internet Reviews.**

Plaintiff argues that Weir did not testify that "any specific review is fake *per se*, but rather that the overall category of anonymous internet reviews are not sufficiently reliable for economists" to use in reaching expert opinions.  (Opp. at 14.)  But this assertion simply ignores and, indeed, rewrites the substance of Weir's expert report.  Nowhere does Weir state in his Rebuttal Declaration that no economist would rely on internet reviews of a product; indeed, Plaintiff does not even offer a cite to Weir's Rebuttal Declaration to support his new argument.  In fact, the five paragraphs Weir spends discussing Dr. Martin's use of reviews from the websites of Amazon, Walmart, Home Depot and Google do nothing but attack the reviews themselves, asserting that they are "unvetted, anonymous reviews from the internet," that "[r]ecent reporting concludes that 'Amazon is flooded with thousands of fake five-star reviews,'" and that "[t]he problem has become so widespread that the U.S. Federal Trade Commission has begun investigating the problem of companies paying to generate fake positive reviews."  (Weir Rebuttal Decl. ¶ 28, 30.)  At most, Weir asserts (incorrectly) that "Martin does not appear to have vetted any of these reviews or review sites" (*id.* ¶ 31), but he never asserts that it is improper for an economist to consider the reviews.  Thus, while Plaintiff argues that "Weir is undoubtedly qualified to say what experts in his own field would rely on" (Opp. at 14), Weir never actually states in his Rebuttal Declaration whether experts might rely on internet reviews such as those on which Dr. Martin relied.

Plaintiff then attempts to turn the tables on Dr. Martin's testimony by arguing that if Weir is not qualified to opine on whether the reviews Dr. Martin considered are fake, neither is Dr. Martin.  (Opp. at 14-15.)  But Dr. Martin does not rely on the internet reviews for their truth (*i.e.*,

that Cutter Natural is effective); rather, she considered the reviews as market evidence demonstrating "individualized and often positive valuations of the Cutter Natural products," which is inconsistent with Plaintiff's theory of the case and Mr. Weir's Full Refund (and Unjust Enrichment) Damages model.  (Martin Decl. ¶ 20.)  Plaintiff has never disputed Dr. Martin's qualifications to provide that opinion.

**B.    Plaintiff Fails to Show Weir's Opinion on Internet Reviews is Reliable.**

Plaintiff says that "Weir did not just cite news articles for his opinion that anonymous internet reviews are unreliable" (Opp. at 15), but he cites no evidence—Weir's Rebuttal Declaration, Weir's deposition, or anything else—to support that assertion.  The fact is, Weir cited only two CNBC articles in his report, and Plaintiff's argument that these articles referred to "published scientific studies and quotes from U.S. governmental agencies regarding the reliability of such reviews" is beside the point.  (*Id.*)  There is no evidence that Weir reviewed the studies cited in those articles or conducted any other diligence before rendering his opinion, and Plaintiff cites none.  Thus, any attempt to imbue Weir's opinion concerning the reviews Dr. Martin considered with legitimacy fail as the evidence reflects that Weir relied solely on the two CNBC articles in forming his opinion.

Plaintiff then resorts to challenging the testimony of Dr. Martin by arguing that UIC bears the burden of showing that the internet reviews are admissible.  (Opp. at 15-16.)  But Plaintiff ignores basic evidence rules.  Even assuming UIC was seeking to move the internet reviews on which Dr. Martin relied into evidence, all it would need to do is authenticate them, which Dr. Martin has done already with respect to reviews from Amazon and Walmart (Declaration of Steven T. Rappoport, dated Dec. 16, 2019, Ex. Y at 209:9-20; 306:20-307:5), and which she could do at trial for reviews from Home Depot and Google.  Nothing more is

ny-1811753

needed for the reviews to be admitted as evidence on which she relied. *See United States v Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) ("Once Rule 901's requirements are satisfied, 'the evidence's persuasive force is left to the jury.'" (citation omitted)).  Furthermore, the reviews are not being used for their truth but rather "to show the existence of market evidence of effectiveness" (ECF No. 117 at 11), and, therefore, they are not hearsay. *See GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 647 (S.D.N.Y. 2011) (explaining that "online reviews have some probative value as to consumer perceptions of [] products' quality" and therefore may be admitted "for the fact that the online comments were made"); *Aptive Envtl., LLC v. Vill. of E. Rockaway, N.Y.*, 2019 WL 3206132, at *1 n.1 (E.D.N.Y. July 16, 2019) ("The third-party online reviews and complaints are considered only for the fact that the online comments were made; not for the truth of the matters stated therein.").  The string of cases Plaintiff cites to the contrary are each distinguishable, as shown in UIC's brief in opposition to Plaintiff's *Daubert* motion.  (*See* ECF No. 117 at 11-12.)

Finally, nothing in the Federal Rules precludes Dr. Martin from considering and disclosing internet reviews and, indeed, Federal Rule of Evidence 703 permits an expert to rely on otherwise inadmissible "facts or data" if reasonable to do so.  Although Plaintiff attempts to cast doubt on Dr. Martin's reliance by citing testimony where she could not vouch for the legitimacy of particular reviews and asserting that Dr. Martin "did nothing to actually vet the legitimacy of even a single review" (Opp. at 18), the record reflects that Dr. Martin read the reviews on which she relied "closely" (ECF No. 103-18 at 176:3-4) and "vetted the[ir] legitimacy" (*id.* 214:11-13).  In particular, Dr. Martin looked to see whether certain accepted "markers" of suspect reviews were present, such as whether five-star reviews all appeared on the same day or whether there was a range to the ratings that reviewers gave.  (*Id.* 221:23-222:7.)

9

As Plaintiff concedes, Dr. Martin also visited "third-party websites that estimate the reliability of the reviews on a site," something Plaintiff asserts Weir did as well.  (Opp. at 18.)

### C.     Weir's Review of a Third-Party Vetting Website Hardly Makes His Testimony Reliable.

Plaintiff does not dispute that Weir did not read any of the internet reviews he opines are unreliable and instead argues that because Weir supposedly reviewed one of the "third-party websites" visited by Dr. Martin, which "estimate the reliability" of internet reviews, he sufficiently vetted the internet reviews on which he opined.  (Opp. at 18.)  Whatever the merits of the website Weir visited, the fact remains that Weir does not assert that he read the internet reviews at issue to consider, for instance, whether they sounded natural, were repetitive, or contained other markers of unreliability, despite the fact that the very articles he cited to in his Rebuttal Declaration suggested doing so.  (*See* ECF No. 103-4 at 135:13-25.)  Because Weir did not conduct this barest amount of diligence on the reviews on which he opined, his opinion as to their reliability should be excluded.

### CONCLUSION

For all of the reasons set forth above and in UIC's other papers in support of its motion to exclude Weir, the Court should exclude the reports and testimony of Colin B. Weir.

Dated: New York, New York
      December 16, 2019

MORRISON & FOERSTER LLP


By:   */s/ Jamie A. Levitt*
      Jamie A. Levitt

Jamie A. Levitt
Steven T. Rappoport
Gerardo Gomez Galvis
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
JLevitt@mofo.com
SRappoport@mofo.com
GGomezGalvis@mofo.com

Claudia M. Vetesi
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
cvetesi@mofo.com

Ronie M. Schmelz
TUCKER ELLIS LLP
515 South Flower Street
Forty Second Floor
Los Angeles, CA 90071
Telephone: (213) 430-3400
ronie.schmelz@tuckerellis.com

Attorneys for Defendant
*United Industries Corporation*